# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF SOUTH CAROLINA; THE FAMILY UNIT, INC.; and GEORGE HOPKINS,<br><br>          Plaintiffs,<br><br>  vs.<br><br>MARCI ANDINO, in her official capacity as Executive Director of the South Carolina State Election Commission; HOWARD M. KNAPP, in his official capacity as Director of Voter Services of the South Carolina State Election Commission; JOHN WELLS, in his official capacity as Chair of the South Carolina State Election Commission; and JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL and SCOTT MOSLEY, in their official capacities as members of the South Carolina State Election Commission,<br><br>          Defendants. | Case No. 2:20-cv-03537-RMG |

## MOTION TO INTERVENE BY SPEAKER LUCAS AND PRESIDENT PEELER

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, Representative James H. ("Jay") Lucas, in his capacity as Speaker of the South Carolina House of Representatives (hereinafter "Speaker Lucas"), and Senator Harvey Peeler, in his capacity as President of the South Carolina Senate (hereinafter "President Peeler"), respectfully move to intervene as defendants in the above-captioned action, which improperly seeks to create new remedies to cure signature

deficiencies on absentee ballots. In essence, Plaintiffs ask this Court to add a new section to the South Carolina Election Code, which is exclusively a legislative function.

## STANDARD FOR INTERVENTION

Rule 24(a) (2) provides that "[o]n timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Similarly, Rule 24(b) (1) (B) permits intervention as a matter of the Court's discretion when the movant "has a claim or defense that shares with the main action a common question of law or fact." In either instance, "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

## ARGUMENT

**I.   Legislative leadership is entitled to intervene as a matter of right, as only the South Carolina General Assembly can assert and defend the interests that are committed to the Legislature's exclusive jurisdiction by the South Carolina Constitution.**

In order for Speaker Lucas and President Peeler to intervene as a matter of right, they must show that this application is timely, that they have "an interest in the subject matter of the underlying action," that they are unable to protect that interest if not allowed to intervene, and that heir interest is "not adequately represented" by the existing litigants. *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). They readily meet these criteria.

   **a.   This Motion is Timely.**

The complaint was filed on October 2, 2020. This motion is filed one week later and just two days after the issuance of summons to the named defendants. This motion also precedes any

action taken by the Court in this case. As such, this motion is timely under the requirements of Rule 24.

      **b.    Speaker Lucas and President Peeler Have Important Interests in the Subject Matter of this Litigation.**

The South Carolina Constitution exclusively commits the subject matter of this litigation, i.e. voting, to the South Carolina General Assembly—not to private litigants, not to the executive branch, and, respectfully, not to the federal or state judiciary. *See* S.C. Const. art. II, § 10 ("The General Assembly shall provide for the nomination of candidates, regulate the time, place and manner of elections, provide for the administration of elections and for absentee voting, insure secrecy of voting, establish procedures for contested elections, and enact other provisions necessary to the fulfillment and integrity of the election process."). Further, the South Carolina Constitution delegates the authority to make new laws exclusively to the Legislature. See S.C. Const. art. III, § 1.A. ("The General Assembly ought frequently to assemble for the redress of grievances and for making new laws, as the common good may require.").

As the leaders of the South Carolina Legislature, Speaker Lucas and President Peeler have a significant interest in upholding South Carolina's constitutional structure, as well as its election laws. In this regard, the Legislature has an interest in preventing uncertainty and mass confusion that would necessarily follow from adding new provisions to the Election Code through the litigation process—with the prospect of appeals, stays, and other procedural devices—on the eve of the next election. *See generally Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (reiterating that "[t]his Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election," in part because of a need to avoid "judicially created confusion" regarding elections).

3

The Legislature also has an interest in ensuring that federal–state comity remains intact and separation-of-powers norms are properly preserved, as the Plaintiffs are asking the Court to create a new provision of state election law. The right to cure a deficient absentee ballot has never been a part of South Carolina's Election Code. While some 18 states have statutory provisions that allow voters to cure signature defects,[1] South Carolina is not, and never has been, one of those states. It is the purview of the South Carolina Legislature, as it has been for the legislatures in those other states, to enact this sort of provision.

This lawsuit is especially overreaching in light of the fact that circumstances surrounding COVID-19 have been present for seven months now. On September 16, 2020, Governor Henry McMaster signed into law House Bill 5305, which authorized absentee voting without a qualification requirement.[2] Yet the Plaintiffs in this case waited until October 2, 2020 to file their complaint. This delay cannot be attributed to the State, the Legislature, or COVID-19.

Policy judgments, such as whether to require a right to cure deficient signatures on absentee ballots, are political, not legal, questions that are rightly addressed by (and constitutionally committed to) the South Carolina General Assembly. *See, e.g., Coalition for Good Governance v. Raffensperger*, Case No. 1:20-cv-1677-TCB, 2020 U.S. Dist. LEXIS 86996, at *6–10 (N.D. Ga. May 14, 2020) (dismissing claims regarding Georgia's absentee voting as the plaintiffs' present here because "they present a nonjusticiable political question"); *Duggins v. Lucas*, Case No. 27996, 2020 S.C. LEXIS 137, at *2 (Sept. 23, 2020) (dismissing a challenge to South Carolina's Election Code because evaluating any changes needed to that law in light of COVID-19 was within

---

[1] Ariz. Rev. Stat. §16-550, CA Elect Code § 3019, Colo. Rev. Stat. §1-7.5-107.3, Flor. Stat. § 101.68, Georgia Code § 21-2-386, Haw. Rev. Stat. § 11-106, 10 ILCS 5/19-8, Iowa Code § 53.18(2), Mass. Gen. Laws ch 54 § 94), Minn. Stat. § 203B.121, Mont. Code §§ 13-13-241 & 245, Nev. Rev. Stat. 293.325, N.J.S.A. 19:63-17, Ohio Rev Code § 3509.06, Ore. Rev. Stat. § 254.431, RI Gen L § 17-20-26, Utah Code Ann. § 20A-3-308(7), and Wash. Admin. Code 434-261-050.
[2] Act No. 143. https://www.scstatehouse.gov/sess123_2019-2020/bills/5305.htm.

the purview of the General Assembly); *Bailey v. S.C. State Election Comm'n*, 844 S.E.2d 390, 392–94 (S.C. 2020) (dismissing a challenge to South Carolina's Election Code in the wake of the COVID-19 pandemic as a nonjusticiable political question).

Accordingly, Speaker Lucas and President Peeler undoubtedly have a material interest in this case that justifies intervention as a matter of right.

### c. Absent Intervention, Speaker Lucas and President Peeler are Unable to Protect their Interests.

If the Court denies intervention, the Legislature will be unable to protect the Senate's and the House's interests outlined above. In particular, there is no way for the General Assembly to protect its policy judgments if the Court accepts the Plaintiffs' invitations to make additions to the South Carolina Election Code through litigation. Nor will they be able to assert and protect the interests associated with election laws that are unique to the General Assembly; namely, the exclusive authority to draft such laws that is vested in the Legislature by the South Carolina Constitution.

### d. No Other Party Adequately Represents the Interest of Speaker Lucas and President Peeler.

Finally, none of the existing parties can adequately represent Speaker Lucas' or President Peeler's interests in this litigation. None of the existing defendants is an elected official, and none has any responsibility with respect to establishing laws that govern South Carolina's elections. Yet, the core of the Plaintiffs' case is based on alleged remarks and past conduct by the existing defendants that, in the Plaintiffs' view, provide a basis for the Court to accept the Plaintiffs' invitation to make additions to South Carolina's election law for purposes of the upcoming election. In light of that posture, Speaker Lucas and President Peeler cannot passively rely on the existing defendants to assert arguments that preserve and protect the General Assembly's exclusive

role when it comes to establishing the State's election laws. Nor are the existing defendants charged with defending the constitutionality of state laws or the political judgments and processes of the South Carolina General Assembly. By contrast, Speaker Lucas and President Peeler are. *See* 2019–20 Appropriations Act § 91.26 (vesting the President of the Senate and the Speaker of the House of Representatives with the authority to seek to intervene in federal litigation in cases where the constitutionality of a state statute or "any action of the Legislature" is challenged).

The Court has previously recognized that such legislation authorizes intervention as a matter of right for state legislative leaders. *See, e.g., SCE&G v. Whitfield*, Case No. 3:18-cv-1795-JMC, 2018 U.S. Dist. LEXIS 120174, at *11 (D.S.C. July 18, 2018) ("Additionally, if a state statute or legislative act gives legislative leaders authority to defend legislative enactments, then the legislative leaders are able to intervene as a matter of right.").

Accordingly, Speaker Lucas and President Peeler have a right to intervene as defendants in this matter, and respectfully request that the Court allow them to do so pursuant to Rule 24(a)(2).

**II.    Alternatively, legislative leadership should be permitted to intervene because the interests they seek to assert and defend are put squarely at issue by the Plaintiffs' requests that the Court add a new provision the South Carolina Election Code.**

If the Court does not believe that Speaker Lucas and President Peeler have a right to intervene, the Court should still permit them to intervene. As this Court has recognized in other litigation regarding the State Election Code during this same election cycle, Rule 24(b) "should be construed liberally in favor of intervention." *Thomas v. Andino*, Case No. 3:20-cv-1552-JMC, 2020 U.S. Dist. LEXIS 81630, at *8 (D.S.C. May 8, 2020) (quoting *Savannah Riverkeeper v. U.S. Army Corps of Eng'rs*, Case No. 9:12-610-RMG, 2012 U.S. Dist. LEXIS 200026, at *7 (D.S.C. Aug. 14, 2012)). Permissive intervention should be allowed when a motion is timely filed, when the movant asserts a common question of law or fact to that already presented in the case, and when the intervention will not unduly delay the litigation. *SCE&G*, 2018 U.S. Dist. LEXIS

120174, at *9. As explained above, this motion is timely filed, as this case is barely a week old, and the addition of legislative leadership at the outset of litigation will not cause any delay or prejudice any of the other litigants. Likewise, Speaker Lucas' and President Peeler's position in this case arises exclusively from the same laws that are presented in the complaint, as the Plaintiffs ask the Court to create new remedies to cure signature deficiencies on absentee ballots. The Legislature's interests in this case—defending the South Carolina Election Code, in particular, and the primacy of the General Assembly in setting the state's election laws as required by the South Carolina Constitution, in general—are squarely within the scope of the issues that the Plaintiffs have presented to the Court.

Accordingly, Speaker Lucas and President Peeler should be permitted to intervene in these cases to protect the South Carolina General Assembly's interests that are at issue in, and jeopardized by, this litigation, just as the Court has previously permitted. *See, e.g., Thomas v. Andino*, Case No. 3:20-cv-1552-JMC, 2020 U.S. Dist. LEXIS 154244, at *17–18 (D.S.C. Aug. 24, 2020) (permitting Speaker Lucas and President Peeler to permissively intervene in litigation challenging other aspects of the State Election Code due to COVID-19); *Middleton v. Andino*, Case No. 3:20-cv-1730-JMC, 2020 U.S. Dist. LEXIS 152138, at *16–17 (D.S.C. Aug. 21, 2020) (same).

**III.    If this motion is granted, Speaker Lucas and President Peeler intend to seek dismissal of these matters as presenting issues that are not proper for judicial resolution, particularly on the eve of an election, and to defend the legality of the challenged statutes if the Court believes that this case is properly before it.**

Pursuant to Rule 24(c), Speaker Lucas and President Peeler set forth here their position in these matters if the Court grants this motion. *See SCE&G*, 2018 U.S. Dist. LEXIS 120174, at *6 n.4 (providing that a potential intervenor need not attach a proposed pleading to its motion to intervene as long as the motion "provides notice to the court and the parties of his intention in the

case"). Speaker Lucas and President Peeler intend to seek dismissal of this case on the following grounds:

### a.     Standing and Mootness

Plaintiffs have no standing to bring this case. There is no constitutional right to vote by absentee ballot, much less a right to cure a defective signature.

The issue in this case is also moot following the Supreme Court of the United States' decision earlier this week. *Andino v. Middleton*, 592 U.S. ___, ___ (Oct. 5, 2020). The Supreme Court carved out the following exception: "any ballots cast before this stay issues and received within two days of this order may not be rejected for failing to comply with the witness requirement." *Id.* This exception provides sufficient redress for the issues about which Plaintiffs complain and, thus, their lawsuit is moot.

### b.     Nonjusticiable issues

The issues of this case are exclusively committed to the South Carolina General Assembly for resolution. *See* S.C. Const. art. II, § 10 ("The General Assembly shall provide for the nomination of candidates, regulate the time, place and manner of elections, provide for the administration of elections and for absentee voting, insure secrecy of voting, establish procedures for contested elections, and enact other provisions necessary to the fulfillment and integrity of the election process."). However, the Plaintiffs are asking the Court to substitute its policy judgment, under the guise of a constitutional analysis, regarding the right to cure defective absentee ballots in South Carolina's elections. The Supreme Court has been clear that federal courts must stay out of such challenges to state election laws, particularly when they arise on the eve of an election. *Purcell v. Gonzalez*, 549 U.S. 1 (2006). It reiterated that point just earlier this week when it stayed

an order from the District of South Carolina that had enjoined enforcement of the witness requirement in light of COVID-19. *See Andino v. Middleton*, 592 U.S. ___, ___ (Oct. 5, 2020) (Kavanaugh, J., concurring) (explaining that the District of South Carolina's injunction must be stayed because federal courts should not second-guess the judgment of state officials when setting election laws during the current pandemic, and because "for many years, this Court has repeatedly emphasized that federal courts ordinarily should not alter state election rules in the period close to an election."). As such, Speaker Lucas and President Peeler would move this Court to dismiss this case.

c.     **Constitutionality of South Carolina Election Code**

Speaker Lucas and President Peeler will raise as a final ground for dismissal that South Carolina's election laws withstand constitutional muster as written. Plaintiffs here ask this Court to issue "injunctions enjoining the Defendants from enforcing S.C. Code Ann. § 7-15-420 to the extent that it fails to provide absentee voters with pre-rejection notice and a hearing or other opportunity to resolve signature-related deficiencies." (ECF No. 1, at 20). Besides this being an inappropriate use of this Court's injunctive relief powers, this statute, as written, is reasonable, non-discriminatory, and essential to the orderly conduct of an election, and thus, constitutional as applied.

## CONCLUSION

For the reasons explained above, Speaker Lucas and President Peeler respectfully request that the Court grant this motion and allow them to intervene in this case.

## CERTIFICATION OF CONSULTATION

The undersigned certifies that prior to filing this motion, she emailed counsel for the Plaintiffs to request their position regarding the substance of this motion and said counsel has not

yet responded. In light of the exigent circumstances of the impending election, the proposed Intervenor-Defendants are proceeding with this Motion to Intervene.

Respectfully submitted,

        NEXSEN PRUET, LLC

        /s Susan P. McWilliams
        Federal Bar No. 3351
        smcwilliams@nexsenpruet.com
        Mark C. Moore
        Federal Bar No. 4956
        mmoore@nexsenpruet.com
        1230 Main Street, Suite 700
        Columbia, SC 29201
        (803) 253-8221

*Attorneys for Representative James H. ("Jay") Lucas, in his capacity as Speaker of the South Carolina House of Representatives*

        WOMBLE BOND DICKINSON (US) LLP

        s/M. Todd Carroll
        Federal Bar No. 9742
        todd.carroll@wbd-us.com
        Kevin A. Hall
        Federal Bar No. 5375
        kevin.hall@wbd-us.com
        1221 Main Street, Suite 1600
        Columbia, SC 29201
        (803) 454-6504

*Attorneys for Senator Harvey Peeler, in his capacity as President of the South Carolina Senate*

October 9, 2020
Columbia, South Carolina