**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| |
|---|
| LEAGUE OF WOMEN VOTERS OF SOUTH CAROLINA; *et al.*, |
| Plaintiffs, |
| v. |
| MARCI ANDINO, *et al.*, |
| Defendants. |

Case No. 2:20-cv-03537-RMG

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO MOTIONS TO INTERVENE**

Plaintiffs League of Women Voters of South Carolina, The Family Unit, Inc., Albertus Clea, and George Hopkins (collectively, "Plaintiffs") submit this memorandum of law in opposition to the motion to intervene of Harvey Peeler, President of the South Carolina Senate, ("President Peeler") and James H. Lucas, Speaker of the South Carolina House of Representatives ("Speaker Lucas") (together, the "Movants"). *See* ECF No. 14.

**INTRODUCTION**

The Movants have no right to intervene in this case because they have no protectable interest in the underlying issues and even if they did, those interests are already fully represented by the current defendants. Further, time is of the essence in this matter, and consideration of the motion will delay the resolution of important questions of law involving the fundamental right to vote. Movants should not be permitted to intervene in this case and to further delay consideration of these issues.

1

**ARGUMENT**

**I.     President Peeler and Speaker Lucas Are Not Entitled to Intervene as of Right**

A party seeking to intervene as of right must meet four requirements: "(1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation." *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). If the moving party "fails to satisfy *any* one of the requirements, then intervention as of right is defeated." *N.C. State Conference of NAACP v. Cooper*, 332 F.R.D. 161, 165 (M.D.N.C. 2019) (citation omitted) (emphasis added). Because the Movants cannot satisfy all of these requirements, the Court must deny their attempt to intervene as a matter of right.

**A. President Peeler and Speaker Lucas Do Not Have a Protectable Interest in the Underlying Subject Matter**

To intervene as of right, the moving parties must have a protectable interest in the subject matter of the litigation. This does not mean the Movants can have *any* interest in the subject matter: "the Supreme Court has recognized that 'what is obviously meant is a significantly protectable interest.'" *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)) (alteration and ellipsis omitted). A moving party must demonstrate more than a general interest in the subject matter of the litigation because such an interest "does not constitute protectable interest within the meaning of Rule 24(a)(2)." *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-CV-00066, 2018 WL 5621982, at *3 (W.D. Va. Oct. 30, 2018) (quoting *Dairy Maid Dairy, Inc. v. United States*, 147 F.R.D. 109, 111 (E.D. Va. 1993))). Rather, the intervenors must "stand to gain or lose by the direct legal operation of the district court's

2

judgment." *Teague*, 931 F.2d at 261.  Given the relief Plaintiffs seek only operates on the State Election Commission, not on the General Assembly, that is not the case here.

The Movants suggest that they have an interest in this litigation based solely on their role as leaders of the South Carolina legislature, arguing in particular that they have a significant interest in upholding South Carolina's election laws and ensuring that no new provisions are added to the Election Code through litigation.  *See* ECF No. 14 at 3–4.  This argument misconstrues Plaintiffs' requested relief, which does not seek to overturn any provision of South Carolina's existing election laws, nor to add a new provision to the Election Code.  Instead, Plaintiffs simply request that the South Carolina Election Commission—which implements election laws across the state—require county election officials to provide absentee voters with pre-rejection notice and an opportunity to cure signature-related deficiencies.  This is within the Election Commission's power already, as the statutory scheme governing absentee ballots charges the Commission with "carrying out the provisions of this chapter [15]" and requires the Commission "must have drafted, printed, and distributed all forms that are required to make it possible for persons eligible to vote by absentee ballot."  S.C. Code Ann. § 7-15-10.  In carrying out these duties, S.C. Code Ann § 7-15-20 requires Article 3 of Chapter 15 be construed liberally, including the section which governs the signature on ballot return-addressed envelopes.

Movants' argument also contravenes well-settled law.  The mere fact that a state law—or its manner of implementation—is challenged does not give legislators a right to intervene.  More is needed, such as when "the executive declines to defend the constitutionality of the legislation." *S.C. Elec. & Gas Co. v. Whitfield*, No. 3:18-cv-01795-JMC, 2018 WL 3470660, at *4 (D.S.C. July 18, 2018) (quoting *Fisher-Borne v. Smith*, 14 F. Supp. 3d 699, 703 (M.D.N.C. 2014)) (alterations omitted).  For example, in *North Carolina State Conference of NAACP v. Cooper*, the court denied

intervention to state representatives in a case challenging the constitutionality of a state voting law, holding that the movants "failed to demonstrate that they have a significantly protectable interest in likewise defending the constitutionality of [the law] sufficient to warrant a right to intervene." 332 F.R.D. at 168. Here, however, the existing Defendants are vigorously defending the case.

This rule makes sense. If legislators' power to pass bills gave rise to an interest sufficient to support intervention as a matter of right, then legislators would have the right to participate in every case involving a constitutional challenge to a state statute. As noted above, this litigation does not challenge the legislature's law-making powers generally, or pertaining to election law specifically. Further, judicial review of challenged statutes is already an integral part of both the South Carolina and federal constitutional structures. For this reason, Movants' intervention in this case is not required to uphold South Carolina's constitutional structure, as Movants claim. ECF No. 14, at 3. The legislators' constitutional power to make new laws and revise existing ones does not entitle them to intervene as of right when the state is already defending the case through another arm of the state. *See One Wis. Inst., Inc. v. Nichol*, 310 F.R.D. 394, 397–98 (W.D. Wis. 2015) (legislators, voters, and local election officials denied intervention in challenge to various Wisconsin election laws).

Movant's reliance on the political question doctrine, *see* ECF No. 14 at 4-5, is also misplaced. Judge Childs recently rejected a similar political question argument in the witness signature case – a ruling that was not overturned or contradicted by the Supreme Court. *Middleton v. Andino*, No. 3:20-cv-1730, 2020 WL 5591590, at *23-24 (D.S.C. Sept. 18, 2020), *stayed on other grounds*, No. 20A55, --- S. Ct. ----, 2020 WL 5887393 (Oct. 5, 2020); *see also Tex. Democratic Party v. Abbott*, No. 20-50407, 2020 WL 5422917, at *7-8 (5th Cir. Sept. 10, 2020). Here, Plaintiffs ask for an analysis of whether absentee voting and notice-and-cure procedures

4

violate the due process clause of the Fourteenth Amendment and the fundamental right to vote, both of which employ a well-established legal standard. *See*, *e.g.*, *Middleton*, 2020 WL 5591590, at *24; *see also* ECF No. 21-1 at 12-17 (citing *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see also*, *Democracy N.C. v. N.C. State Bd. of Elections*, No. 1:20-CV-457, 2020 WL 448063, at *13-14 (M.D.N.C. Aug. 4, 2020).

Whether state election officials provide absentee voters with pre-rejection notice and an opportunity to cure signature-related deficiencies in their ballots is not a political question best left to legislative policy, as movants argue, but is instead a legal question about the procedural rights that must be afforded to individuals once they have been granted the right to vote absentee. The cases Movants cite in support of their argument are therefore inapposite. *Duggins v. Lucas* and *Bailey v. S.C. State Election Commission*, for example, addressed the decision of the General Assembly to reverse legislative course entirely and allow for absentee ballots for all voters, which required a significant change to the election laws and was inconsistent with the statutes as they existed before legislative action was taken. *See* – S.E.2d --, 2020 WL 5651772, at *1 (S.C. 2020); 430 S.C. 268, 275-6 (2020). The relief requested in this case, on the other hand, requires no changes to the Election Code and no involvement from the General Assembly.

### B. Denial of the Motions Would Not Impede President Peeler and Speaker Lucas's Ability to Protect Their Interests

Because the Movants have "failed to demonstrate that they have a significantly protectable interest sufficient to warrant intervention as of right, it necessarily follows that Proposed Intervenors 'cannot show that this case threatens to impair any such interests.'" *Cooper*, 332 F.R.D. at 168 (quoting *One Wisconsin Inst. Inc. v. Nichol*, 310 F.R.D 394, 397 (W.D. Wis. 2015)). Further, as described below, their interests are already adequately represented.

### C.  President Peeler and Speaker Lucas's Interests Are Already Adequately Represented by Existing Parties

A movant seeking to intervene as a defendant alongside the government in a challenge to the constitutionality of a state statute must make a "very strong showing" of inadequacy of representation.  *Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013).  When evaluating adequacy, there is a nearly insurmountable presumption of adequate representation where the existing defendants include a government agency.  *Stuart*, 706 F.3d at 352.  This means that "'the putative intervenor must mount a strong showing of inadequacy.'"  *Cooper*, 332 F.R.D. at 168 (quoting *Stuart*, 706 F.3d at 352).[1]  There is also a presumption of adequate representation when an existing party has the same ultimate objective as a proposed intervenor.  *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976); *see Students for Fair Admissions Inc., v. Harvard Coll.*, 807 F.3d 472, 475 (1st Cir. 2015).

The Movants can rebut these strong presumptions against them only with a showing of "adversity of interest, collusion, or nonfeasance."  *Stuart*, 706 F.3d at 353-54. Differences of opinion on strategic decisions are not sufficient.  *See id*. (citing *Saldano v. Roach*, 363 F.3d 545, 555 (5th Cir. 2004) ("Simply because the [intervenor] would have made a different [litigation] decision does not mean that the Attorney General is inadequately representing the State's

---

[1]  In *N. C. State Conf. of NAACP v. Berger*, 970 F.3d 489, 506 (4th Cir. 2020), the court held that the heightened standard of a "strong showing" set out in *Stuart* "does not apply where another governmental branch, *at least where authorized to do so by state statute*, seeks intervention." (emphasis added). No such authorizing statute exists in this case, making *Berger* inapposite. In any case, as the *Berger* court made clear, even where the *Stuart* presumption does not apply, Proposed Intervenors are still required to "rebut the presumption of adequacy by establishing either adversity of interest, collusion or nonfeasance." *Id*. *See also Middleton v. Andino*, No. 3:20-CV-01730-JMC, 2020 WL 4915566, at *5 (D.S.C. Aug. 21, 2020) (Noting differences between South Carolina law and the statute analyzed in *Berger*, including that "South Carolina law allows legislators to simply 'seek' intervention under the federal rules" and "suggests a lower concern that legislators' potential interests will not be adequately represented by the current parties").

interest.")); *see also Cooper*, 332 F.R.D. at 170 (declining to find an "adversity of interests" where the existing state defendants simply might "not employ the same approach" as the movant legislators). While the Movants may have a "fervent desire to protect the statute, 'stronger, more specific interests do not adverse interests make.'" *United States v. North Carolina*, No. 1:13CV861, 2014 WL 494911, at *3 (M.D.N.C. Feb. 6, 2014) (quoting *Stuart*, 706 F.3d at 353).

Here, the action is being defended by a government agency, the State Election Commission. It is the South Carolina Election Commission, not the General Assembly, that determines how the State's election laws are enforced. For instance, the South Carolina Election Commission voted on October 7, 2020 to prohibit county election officials from allowing voters to "cure" absentee ballots that are received without witness signatures. Zak Koeske, *SC won't accept absentee ballots that lack witness signature*, The State, Oct. 8, 2020, https://www.thestate.com/article246299550.html. It is irrelevant that none of the existing defendants is an elected official, or has responsibility for establishing South Carolina's election laws, or defending the constitutionality of state laws or the political judgments and processes of the South Carolina General Assembly, because South Carolina's existing election laws—and the signature requirements set out therein—have not been challenged by Plaintiffs. This litigation does not threaten the General Assembly's power to draft or amend laws, and therefore does not require intervention by Movants to protect that power. The Movants fail to make the "very strong showing" of inadequacy required to warrant intervention. *Stuart*, 706 F.3d at 351. As a result, they have no right to intervention and the motion should be denied.

Finally, the Movants' reliance on *Whitfield* to support the proposition that they have the right to intervene is misguided. In *Whitfield*, the Court held that Speaker Lucas did not have an ability to intervene as of right, in part because the litigation was not challenging whether legislation

7

was "duly and lawfully enacted." *See* 2018 WL 3470660, at \*4 (quoting *Roe v. Casey*, 464 F. Supp. 483, 486 (E.D. Pa. 1978)). That remains true here.

Further, Movants have cited no state statute or legislative act giving them the authority to defend legislative enactments in federal court. Speaker Lucas's explanation of 2019–20 Appropriations Act § 91.26 overstates that provision's effects. The Movants assert that the General Assembly gave them the unqualified right to intervene in federal litigation pertaining to state law. *See* ECF No. 14 at 6. However, the right in that statute only applies to state court actions: "91.26. (LEG: Lawsuit Intervention by Legislature) The President of the Senate, on behalf of the Senate, and the Speaker of the House of Representatives, on behalf of the House of Representatives have an unconditional right to intervene on behalf of their respective bodies *in a state court action*." *Id.* (emphasis added). The statute then states that intervention by the legislature in a federal case must accord with the Federal Rules of Civil Procedure: "In a federal court action that challenges the constitutionality of a state statute, the validity of legislation, or any action of the Legislature, the Legislature *may* seek to intervene, to file an amicus brief, or to present argument *in accordance with federal rules of procedure*." *Id.* (emphasis added). *See also Middleton v. Andino*, No. 3:20-CV-01730-JMC, 2020 WL 4915566, at \*5 (D.S.C. Aug. 21, 2020) (Noting that the statute "allows legislators to simply 'seek' intervention under the federal rules[.]"). The proviso does not change the analysis here. This Court is not obligated to grant intervention. Rather, in federal court, the Movants bear the same burden of any other party seeking intervention under Rule 24(a).

## II.    The Court Should Not Permit President Peeler and Speaker Lucas to Intervene

Federal Rule of Civil Procedure 24(b) allows a court to permit a party to intervene "[o]n timely motion" if it "has a claim or defense that shares with the main action a common question

8

of law or fact."  Here again, the moving party must satisfy a set of requirements: "(1) the motion is timely; (2) the defenses or counterclaims have a question of law or fact in common with the main action; and (3) intervention will not result in undue delay or prejudice to the existing parties."  *United States v. North Carolina*,  2014 WL 494911, at *2-3.[2]

Here, the last factor—undue delay and prejudice to the existing parties—demands that the request for permissive intervention should be denied.  Permissive intervention would delay the resolution of this case, including Plaintiff's request for a preliminary injunction, which involves questions of law relevant to the upcoming November 3, 2020 general election.  Opposition to Plaintiff's request for preliminary injunction is due on October 16, and Plaintiffs' reply on October 19, with a hearing scheduled for October 21.  Intervention would disrupt this schedule, leaving very little time before the upcoming November election to settle the issues that have been raised by Plaintiffs' request.  It would also unnecessarily burden the resources of the Court and the parties, particularly given that the existing State Defendants are already vigorously defending the case. *See Stuart*, 706 F.3d at 350, 355 (denying permissive intervention where the addition of multiple intervenors would "complicate routine scheduling orders, prolong and increase the burdens of discovery and motion practice ... and delay trial") (internal citation & quotation marks omitted).

To the extent the Movants wish to simply "present their views" without consuming additional time and resources of the Court and parties, the proper vehicle is to act as *amicus curiae. Stuart*, 706 F.3d at 355.  This "alternative avenue[] of expression reinforces our disinclination to drive district courts into multi-cornered lawsuits by indiscriminately granting would-be intervenors party status and all the privileges pertaining thereto." *Id*.

---

[2] As to the second factor, as Plaintiffs note above, the legal interests Movants would seek to vindicate are qualitatively different from the legal interests at issue in this case.

## CONCLUSION

The Movants have no right to intervene, and they should not be permitted to do so. Their motions should be denied in their entirety.

Dated: October 13, 2020                    Respectfully submitted,

                                                          __s/ Susan K. Dunn_____

Julianne J. Marley                         Susan K. Dunn (Fed. Bar #647)
Rhianna Hoover                             sdunn@aclusc.org
DEBEVOISE & PLIMPTON LLP                    Shirene C. Hansotia (Fed. Bar #12558)
919 Third Avenue                           shansotia@aclusc.org
New York, NY 10022                         AMERICAN CIVIL LIBERTIES UNION
(212) 909-6000                             FOUNDATION OF SOUTH CAROLINA
                                           P.O. Box 20998
*Of Counsel for Plaintiffs*                Charleston, South Carolina 29413-0998
                                           Telephone: (843) 282-7953
                                           Facsimile: (843) 720-1428

                                           Ezra Rosenberg*
                                           erosenberg@lawyerscommittee.org
                                           John Powers^
                                           jpowers@lawyerscommittee.org
                                           LAWYERS' COMMITTEE FOR CIVIL
                                           RIGHTS UNDER LAW
                                           1500 K Street NW, Suite 900
                                           Washington, DC 20005
                                           Phone: (202) 662-8389
                                           Fax: (202) 783-0857

                                           Catherine Amirfar^
                                           camirfar@debevoise.com
                                           DEBEVOISE & PLIMPTON LLP
                                           919 Third Avenue
                                           New York, NY 10022
                                           (212) 909-6000

                                           Tara Ganapathy^
                                           tganapathy@debevoise.com
                                           DEBEVOISE & PLIMPTON LLP
                                           801 Pennsylvania Avenue NW

10

Washington, DC 20004
202-383-8000

*pro hac vice motion forthcoming

^pro hac vice motion pending

Counsel for Plaintiffs