IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| League of Women Voters of South Carolina; The Family Unit, Inc.; Albertus Clea; and George Hopkins, | ) ) ) ) | Civil Action No. 2:20-cv-03537-RMG |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| Marci Andino, in her official capacity as Executive Director of the South Carolina State Election Commission; Howard M. Knapp, in his official capacity as Director of Voter Services of the South Carolina State Election Commission; John Wells, in his official capacity as Chair of SC State Election Commission; and JoAnne Day, Clifford J. Edler, Linda McCall, and Scott Moseley, in their official capacities as Members of the South Carolina State Election Commission, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | REPLY IN SUPPORT OF MOTION TO INTERVENE |
| Defendants. | ) ) | |

## ARGUMENT

The Plaintiffs have asked this Court to ignore an order that the Supreme Court of the United States issued ***just last week*** prohibiting the Federal Judiciary from altering existing South Carolina election law, especially this close to Election Day. In so doing, they pretend that their requested relief—namely, to have the Court create a brand new set of procedures and impose on county election commissions overwhelming administrative tasks that are found nowhere in state law— would not actually change South Carolina's election law.

The Court should dismiss this case. *Andino v. Middleton*, 592 U.S. ___ (Oct. 5, 2020). But it should also permit Speaker Lucas and President Peeler to intervene in this matter, as every

argument the Plaintiffs assert in opposition to intervention is directly rebutted by on-point authority. Indeed, the Plaintiffs' opposition to intervention frequently reads as if they are discussing a case other than the one at bar. For instance:

**Interest in Subject Matter:** Speaker Lucas and President Peeler seek to intervene in this litigation because the Plaintiffs are asking the Court—not the General Assembly—to add a layer of "cure" provisions and procedures to the South Carolina Election Code when a voter fails to follow existing law regarding casting an absentee ballot by mail. Because drafting the State Election Code is exclusively committed to the South Carolina General Assembly as a matter of constitutional law, the State's legislative leadership has a significant interest in protecting its role in the structure of government. S.C. Const. art. II, § 10.

In opposition, the Plaintiffs argue that Speaker Lucas and President Peeler do not have any true interest in this case because the Plaintiffs do not seek "to add a new provision to the Election Code. Instead, Plaintiffs simply request that the South Carolina Election Commission—which implements election laws across the state—require county election officials to provide absentee voters with pre-rejection notice and an opportunity to cure signature-related deficiencies." (Opp. at 3 (Dkt. No. 29).) The amended complaint provides more detail of their requested relief:

> [S]pecifically, Plaintiffs request that Defendants direct county election officials to review absentee ballot envelopes and provide pre-rejection notice to voters by first-class mail and, where available, by email or phone, of any signature-related deficiency; and permit voters whose absentee ballots are deficient on this ground to cure the deficiency up to three days following the election. Alternatively, Plaintiffs request that the Defendants instruct election officials to expand the existing process through which voters may cure certain deficiencies in their provisional ballots up to the statutorily-mandated meetings on the Friday following the election to include absentee ballot deficiencies based on missing or mismatched signatures; and that the Defendants update their election guides, manuals, guidance, instructional materials, etc., to conform with the revised procedures.

(Am. Compl. "Wherefore"(b) (Dkt. No. 20).)

Of course, demanding such new "requirements" of local election officials and creating a new batch of procedures would "add a new provision to the Election Code." It is false to suggest otherwise.[1] And because such judicial revisions and additions would improperly alter South Carolina's election laws outside of the legislative process, Speaker Lucas and President Peeler have a significant interest in the subject matter of this litigation; namely, protecting and preserving the Legislature's exclusive role in establishing the State Election Code.

The Plaintiffs' illusory posturing here is strikingly similar to that of the South Carolina Progressive Network in a case that was recently presented to Judge Lewis. There, the Network sought a judicial order that would extend South Carolina's statutorily prescribed voter-registration deadline, and it argued that such relief would not actually alter the State Election Code. Judge Lewis summarily dispatched such a demonstrably-untrue argument:

> Nevertheless, in the Network's reply, it maintains "'the factors that animated the Supreme Court's concern in *Purcell* [*v. Gonzalez*, 549 U.S. 1 (2006),] are not present' here because 'the injunction at issue here does not involve any change at all to the actual election process.'" But, this is simply not so. No discussion is merited. Period.

*S.C. Progressive Network Educ. Fund v. Andino*, Case No. 3:20-cv-3503-MGL, 2020 U.S. Dist. LEXIS 188047, at \*17 (D.S.C. Oct. 9, 2020) (internal citations omitted).

The Court should be equally dismissive of the Plaintiffs' argument here, as it is untrue that the relief sought by the Plaintiffs would leave the status quo in place regarding the State Election

---

[1]  Amazingly, the Plaintiffs repeat this fiction—that they do not wish to alter South Carolina's election laws through this litigation—throughout their opposition memorandum. (*See, e.g.*, Dkt. No. 29 at 5 ("The relief requested in this case, on the other hand, requires no changes to the Election Code and no involvement from the General Assembly."); *id.* at 7 (arguing that "South Carolina's existing election laws . . . have not been challenged by Plaintiffs").) It is impossible to square the Plaintiffs' actual pleadings with their opposition to the motion to intervene.

Code. Speaker Lucas and President Peeler, as the leadership of the South Carolina General Assembly, have an interest in the subject matter of this litigation that indisputably justifies intervention, either as a matter of right or permissively—just as this Court has previously held with respect to other requests for the Judiciary to alter South Carolina's election laws. *E.g.*, *Thomas v. Andino*, Case No. 3:20-cv-1552-JMC, 2020 U.S. Dist. LEXIS 154244, at *17–18 (D.S.C. Aug. 24, 2020); *Middleton v. Andino*, Case No. 3:20-cv-1730-JMC, 2020 U.S. Dist. LEXIS 152138, at *16–17 (D.S.C. Aug. 21, 2020).

**<u>Not Adequately Represented:</u>** The Court should likewise reject the Plaintiffs' argument that Speaker Lucas's and President Peeler's interests in this litigation are adequately represented by the existing defendants. The only defendants presently in this case are in an entirely different branch of state government, and they have no responsibility whatsoever for creating or modifying the South Carolina Election Code.

To be sure, the current defendants cannot lawfully do what the Plaintiffs have requested. Only the General Assembly can establish South Carolina's election laws. S.C. Const. art. II, § 10. Only the General Assembly can enact new state laws. *Id.* art. III, § 1.A. And only the General Assembly can suspend parts of South Carolina's election laws. *Id.* art. I, § 7.

In light of the General Assembly's comprehensive, constitutionally-vested authority, the Plaintiffs' argument that "[i]t is the South Carolina Election Commission, not the General Assembly, that determines how the State's election laws are enforced" (Dkt. No. 29, at 7) "is simply not so. No discussion is merited. Period." *S.C. Progressive Network*, 2020 U.S. Dist. LEXIS 188047, at *17.

Nor should the Court credit the Plaintiffs' argument that Speaker Lucas and President Peeler "have cited no state statute or legislative act giving them the authority to defend legislative

enactments in federal court." (Dkt. No. 29, at 8.) In their motion, Speaker Lucas and President Peeler specifically cited Section 91.26 of the current Appropriations Act, which vests legislative leadership with the authority to seek intervention in federal litigation any time the constitutionality of a state law or "any action of the Legislature" is challenged. (Dkt. No. 14, at 6.)[2]

The General Assembly vested its leadership with this authority directly in response to the Court's observation in *SCE&G v. Whitfield*, Case No. 3:18-cv-1795-JMC, 2018 U.S. Dist. LEXIS 120174, at *11 (D.S.C. July 18, 2018), that such legislation authorizes intervention by legislative leaders "as a matter of right." The phrasing of the statute with respect to federal matters—"may seek to intervene"—is not a reflection of a lack of authority or a subordinate interest for legislative leadership when a state law is challenged in federal court. Instead, it is an acknowledgment of federal–state comity and separation-of-powers concerns when it comes to the General Assembly's ability to prescribe intervention in courts other than in South Carolina's state courts. Any suggestion to the contrary is incorrect.

At bottom, though the existing defendants may ultimately request that the Court deny the Plaintiffs' requested relief, their perspective on this matter comes from a different branch of state government that does not have the constitutionally-assigned duty of actually creating state election law, nor are they directly accountable to the people for those decisions. Accordingly, the existing defendants do not adequately represent Speaker Lucas's and President Peeler's interests in this matter, making intervention as a matter of right appropriate.

---

[2]    The need to protect the Legislature's role in the constitutional structure makes it obvious that simply filing an amicus brief will not do here. If the Court grants any part of the relief sought by the Plaintiffs and writes new procedures into the State Election Code's absentee-voter provisions, the General Assembly must be in a position to seek immediate review of such a decision.

**Timeliness of Motion:** The Plaintiffs' final argument against intervention reveals yet another fundamental defect in their case. South Carolina has had the current version of its witness requirement for absentee voting—without any of the procedures that the Plaintiffs now ask the Court to graft onto it—for ___nearly forty years___. 1982 S.C. Acts No. 280. Despite the law's decades-long existence, the Plaintiffs waited until ___just one month___ before Election Day to file this case.[3]

In light of the Plaintiffs' inexplicable delay, it is simply not credible to suggest that Speaker Lucas's and President Peeler's motion to intervene—which was filed only two days after the Court issued summonses for this case—will cause prejudicial delay or is somehow untimely. Any delays associated with this case will not be the result of a motion to intervene, but instead are the result of the Plaintiffs waiting until October 2nd to ask the Court to write brand new procedures to govern a November 3rd election.

As Judge Lewis explained when rejecting the South Carolina Progressive Network's requested relief on an ___identical timeline___:

> The Network filed its last-minute lawsuit against Defendants at 4:14 P.M. on Friday, October 2, 2020; and it filed its eleventh hour motions for a temporary restraining order and preliminary injunction at 5:04 P.M. on the same date. Unfortunately for the Network, this bad timing is dispositive. Put differently, the untimeliness of those filings has ultimately led to the Network's undoing in this action. This, alone, is fatal to its claims. Consequently, it is fair to say the Network's lawsuit began, and effectively ended, when it filed its lawsuit.

*S.C. Progressive Network*, 2020 U.S. Dist. LEXIS 188047, at *15.

The motion to intervene is timely under any analysis, and the Court should reject the Plaintiffs' futile attempt to blame anyone but themselves for delays associated with this matter.

---

[3]   Despite the national trend by some to parlay Covid-19's presence into election-related litigation designed to have the Judiciary rewrite existing state election laws—a trend that the Supreme Court has repeatedly shut down—the Plaintiffs' allegations here bear no true connection to Covid-19 at all, making the untimeliness of their complaint even more inexcusable.

## CONCLUSION

Courts should liberally authorize intervention so that issues are fully disposed of and the interests of all "apparently concerned persons" are considered. *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). Accordingly, the Court should grant this motion, allow Speaker Lucas and President Peeler to intervene in this case, and summarily dismiss it, consistent with the Supreme Court's guidance in *Middleton*.

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

By: /s/ M. Todd Carroll
  Federal Bar No. 9742
  todd.carroll@wbd-us.com
  Kevin A. Hall
  Federal Bar No. 5375
  kevin.hall@wbd-us.com
  1221 Main Street, Suite 1600
  Columbia, South Carolina 29201
  803-454-6504

*Attorneys for Senator Harvey Peeler, in his capacity as President of the South Carolina Senate*

NEXSEN PRUET, LLC

By:/s/ Susan P. McWilliams
  Federal Bar No. 3351
  smcwilliams@nexsenpruet.com
  Marc C. Moore
  Federal Bar No. 4956
  mmoore@nexsenpruet.com
  1230 Main Street, Suite 700
  Columbia, SC 29201
  (803) 253-8221

*Attorneys for Representative James H. Lucas, in his capacity as Speaker of the South Carolina House of Representatives*

October 14, 2020
Columbia, South Carolina

7