**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF SOUTH CAROLINA; THE FAMILY UNIT, INC.; ALBERTUS CLEA and GEORGE HOPKINS, <br><br> Plaintiffs, <br><br> vs. <br><br> MARCI ANDINO, in her official capacity as Executive Director of the South Carolina State Election Commission; HOWARD M. KNAPP, in his official capacity as Director of Voter Services of the South Carolina State Election Commission; JOHN WELLS, in his official capacity as Chair of the South Carolina State Election Commission; and JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL and SCOTT MOSLEY, in their official capacities as members of the South Carolina State Election Commission, <br><br> Defendants. | Case No. 2:20-cv-03537-RMG <br><br><br> **RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND OPPOSITION TO PLAINTIFFS' SECOND MOTION TO AMEND COMPLAINT** |

Representative James H. ("Jay") Lucas, in his capacity as the Speaker of the South Carolina House (hereinafter "Speaker Lucas") and Senator Harvey Peeler, in his capacity as President of the South Carolina Senate (hereinafter "President Peeler"), as Intervenor Defendants in this matter (collectively "the Intervenors"), submit this Opposition to Plaintiffs' Motion for Preliminary Injunction and Opposition to Plaintiffs' Second Motion to Amend Complaint. Pursuant to this Court's Order entered on October 15, 2020 [ECF No. 42], the Intervenors state here that they oppose Plaintiffs' motion to amend their complaint, as this will be the third complaint in two weeks

and the second motion for preliminary injunction. This opposition is premised on the fact that these motions are untimely and, for the reasons stated herein below, are futile. It is the Intervenors' position, supported by the Supreme Court and other authority cited herein, that regardless of how many amended complaints and amended motions for preliminary injunction are filed, Plaintiffs are not entitled to the relief sought. Accordingly, Plaintiffs' Motion for Preliminary Injunction should be denied and this case dismissed.[1]

### **INTRODUCTION**

As of the date of this filing, the November General Election occurs in just 18 days. Any change to South Carolina's election laws at this stage would patently disrupt the status quo. Consequently, such a change would not only cause confusion, but also impact the finality and certainty of the General Election. The Supreme Court has repeatedly advised federal courts ***not*** to change election rules on the eve of an election. This advice is premised on the well-reasoned notion that "[c]ourt orders affecting elections . . . can . . . result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam) (*Purcell*, or the *Purcell* principle). So any change as advocated by Plaintiffs here would defy *Purcell* and the Supreme Court's precedents. *Andino v. Middleton,* No. 20A55, 2020 WL 5887393 (U.S. Oct. 5, 2020) (Kavanaugh, J., concurring).[2] Put succinctly by the Ninth Circuit in an Order issued just ten days ago, staying an order requiring the state of Arizona to create a new process for curing unsigned ballots, just as

---

[1] The Intervenors further adopt and incorporate herein by reference all arguments made by the South Carolina State Election Commission ("SEC") Defendants.

[2] Amazingly, Plaintiffs fail to acknowledge or even mention the *Andino* decision from the Supreme Court, staying an injunction against the witness requirement for absentee ballots, even when discussing *Purcell*. Plaintiffs' Mem. In Support of Motion for Preliminary Injunction, ECF 21-1, at 28.

Plaintiffs ask this Court to do, "as we rapidly approach the election, the public interest is well served by preserving Arizona's existing election laws, rather than by sending the State scrambling to implement and to administer a new procedure for curing unsigned ballots at the eleventh hour." *Arizona Democratic Party v. Hobbs*, No. 20-16759, 2020 WL 5903488, at *2 (9th Cir. Oct. 6, 2020), (citing *Republican Nat'l Committee v. Democratic Nat'l Committee*, 140 S.Ct. 1205, 1207 (2020) (per curiam)).

That the Supreme Court meant what it said in *Purcell* has been demonstrated by the number of times this year when, presented with a case in which the district court granted injunctive relief in election-related matters close to the election date, the Supreme Court stayed the district court's order. For example, in *Republican National Committee*, 140 S.Ct. at 1207, citing *Purcell*, the Court stayed the district court's order granting a preliminary injunction requiring Wisconsin to count absentee ballots postmarked after the state's presidential primary. "By changing the election rules so close to the election date . . . the District Court contravened this Court's precedents and erred by ordering such relief. This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Id*. A second example is *Merrill v. People First of Alabama*, No. 19A1063, 2020 WL 3604049 (U.S. July 2, 2020) (per curiam) (staying, without explanation, the district court's order enjoining the Alabama witnesses and photo identification requirement for absentee voting). Then as noted above, on October 5, 2020, the Supreme Court entered yet another stay, this time of the district court's order enjoining enforcement of the South Carolina witness requirement for absentee voting. *Andino*, 2020 WL 5887393, at *1. In his concurrence, citing *Purcell*, Justice Kavanaugh stated that the Supreme Court "has repeatedly emphasized that federal courts ordinarily should not alter state election rules in the period close to an election." *Id*. (Kavanaugh, J., concurring).

Guided by *Purcell*, Circuit Courts of Appeal across the country have likewise rejected attempts by district courts to implement such relief as is requested by Plaintiffs here.[3]  For example, less than two months before the upcoming presidential election, an Arizona district court ordered the state to create and to institute a new procedure that would grant voters who failed to sign their ballots up to five days after voting has ended to correct the error. *Arizona Democratic Party v. Hobbs*, No. CV-20-01143-PHX-DLR, 2020 WL 5423898, at *14 (D. Ariz. Sept. 10, 2020).  This decision was followed by the Ninth Circuit's decision noted above, *Arizona Democratic Party*, 2020 WL 5903488, at *1 (9th Cir. Oct. 6, 2020).  The Fifth Circuit has also granted a stay of a district court order that required the state to implement a remedial plan for notice and cure of defective absentee ballots. *Richardson v. Texas Sec'y of State*, No. 20-50774 (5th Cir. Sept. 11, 2020) *staying Richardson v. Texas Sec'y of State*, No. SA-19-CV-00963-OLG, 2020 WL 5367216, (W.D. Tex. Sept. 8, 2020).

"Simply put, a stay preserves the status quo and promotes confidence in our electoral system—assuring voters that all will play by the same, legislatively enacted rules." *New Georgia Project*, 2020 WL 5877588, at *4 (concluding that Georgia's Election-Day absentee ballot deadline

---

[3] It is important to note that there is no fundamental right to absentee voting. *McDonald v. Board of Election Comm'rs*, 394 U.S. 802, 807-809 (1969) (the "claimed right to receive absentee ballots" is not "the right to vote"). As the Sixth Circuit and other courts have emphasized, "there is no constitutional right to an absentee ballot." *Mays v. LaRose*, 951 F.3d 775, 792 (6th Cir. 2020) (citing *McDonald*, 394 U.S. at 807-809); *see also Tex. Democratic Party v. Abbott*, 961 F.3d 389, 403-04 (5th Cir. 2020) (citing *McDonald*, 394 U.S. at 807-11); *Griffin v. Roupas*, 385 F.3d 1128, 1129 (7th Cir. 2004) (upholding a district court's motion to dismiss a claim on behalf of "working mothers who contend that because it is a hardship for them to vote in person on election day, the United States Constitution requires Illinois to allow them to vote by absentee ballot."); *New Ga. Project v. Raffensperger*, No. 20-13360, slip op. at 5 (11th Cir. Oct. 2, 2020) (because there is no right to vote absentee, a challenge to an absentee deadline "does not implicate the right to vote at all."). Voters simply do not have a constitutional right to correct ballot infirmities that were caused by the inattention or inaction of those same voters. *See Burdick v. Takushi,* 504 U.S. 428, 433 (1992) ("It does not follow, however, that the right to vote in any manner . . . [is] absolute.")).

is "easily" justified by the State's interests in "conducting an efficient election, maintaining order, quickly certifying election results, and preventing voter fraud").

South Carolina does not have a statutory scheme for notice or cure of a deficient absentee ballot. In fact, South Carolina's absentee voting law has never included any notice or cure provision. Nonetheless, in an eleventh hour series of filings, Plaintiffs urge this Court to ignore the teachings of *Purcell* and the 2020 cases in which that principle has been reaffirmed by the Supreme Court and numerous other Circuit and district courts. Plaintiffs are asking this Court to usurp the legislative authority of the South Carolina General Assembly and to concoct a never-before-enacted notice and cure provision for the General Election. Respectfully, this Court should decline to do so and dismiss this action.

## ARGUMENT

**I.** **The Court should dismiss this case because whether to include a cure provision in South Carolina's Election Code is exclusively a legislative function, not a judicial one.**

The Elections Clause of the Constitution of the United States directs that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives shall be prescribed in each State by the Legislature thereof." Art. I, sec. 4. Likewise, the Electors Clause of the Constitution directs that "[e]ach State shall appoint, in Such Manner as the Legislature thereof may direct, a Number of [Presidential] electors." Art. II, sec. 1. The South Carolina General Assembly has fulfilled these solemn responsibilities by enacting, and updating as needed, a balanced, comprehensive election code.

Indeed, just a month ago, in response to the current pandemic, the General Assembly made several important revisions to the Election Code by passing House Bill 5305, 123rd Gen. Assemb. (S.C. 2020) ("HB 5305"). These revisions were the result of the General Assembly's legislative

and policy-making functions and resulted in revisions that took into consideration the legitimate State interests of making voting accessible and safe for all qualified voters while ensuring the integrity of the election process with safeguards against irregularities, including fraud. This balance is a delicate one: if standards for voting are too strict, eligible voters may be unable to vote; but if standards are too lax, election outcomes can be compromised and confidence in the process eroded. The General Assembly understands that South Carolinians trust and expect their elected legislators to consider, and reconcile, these interests in order to sustain public confidence and encourage participation in the democratic process.

Here, Plaintiffs' Motion, which seeks the creation of an entirely new statute applicable to certain absentee voters, presents a nonjusticiable political question, and, therefore, the Court should deny the motion and dismiss this case. This is so because, indisputably, the duty and authority for enacting new laws and deciding whether to alter existing laws belongs exclusively to the General Assembly:

> The General Assembly shall provide for the nomination of candidates, regulate the time, place and manner of elections, provide for the administration of elections and for absentee voting, insure secrecy of voting, establish procedures for contested elections, and enact other provisions necessary to the fulfillment and integrity of the election process.

S.C. Const. art. II, § 10. The Intervenors, as representatives of the House and the Senate, have a fundamental interest in equal, fair, and consistent enforcement of South Carolina's election laws. Precisely because "[v]oting is of the most fundamental significance under our constitutional structure," *Burdick*, 504 U.S. at 433, states must have in place a system that balances election security with access to the ballot box. *See also Crawford v. Marion County Election Bd.*, 553 U.S. 181, 196-97 (2008) ("There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters;" "public confidence in the integrity of the electoral

6

process has independent significance, because it encourages citizen participation in the democratic process."). With too little security, legitimate votes might be diluted by fraudulent votes. With too much security, voter participation might suffer unnecessarily. Because there is not one single solution, the General Assembly must account for numerous circumstances when weighing, as a matter of public policy, competing demands for security and access. *See Bailey v. S.C. State Election Comm'n,* 430 S.C. 268, 275, 844 S.E.2d 390, 394 (2020) (holding "that whether any change should be made to the [election] law [in response to the COVID-19 pandemic] is a political question for the Legislature likewise to answer."). This Court should follow the South Carolina Supreme Court's lead and dismiss this matter because it presents non-justiciable political question, which can be properly addressed only by South Carolina's legislative branch. While it is certainly true that the Court generally has authority, and even an obligation to resolve constitutional challenges, it should not be misled by the Plaintiffs' attempt here to graft an entirely new provision affecting absentee voting onto the laws already evaluated and enacted by the General Assembly and claim that to do otherwise amounts to a Constitutional violation.

At its core, the decision to enact a cure provision for absentee ballots (as discussed below, only 18 of 50 states have one) is a policy judgment that this Court is neither equipped nor authorized to make. Just last year, the United States Supreme Court explained that an issue—even when packaged as a constitutional claim—amounts to a non-justiciable political question when the case presents "a lack of judicially discoverable and manageable standards for resolving it." *Rucho v. Common Cause*, 139 S.Ct. 2484, 2496 (2019) (quoting *Baker v. Carr*, 369 U.S. 186, 226 (1962)); *see Rucho*, 139 S.Ct. at 2498–2508 (vacating pursuant to the political question doctrine decisions of district courts in North Carolina and Maryland that evaluated those states' congressional districting plans against numerous constitutional challenges); s*ee also*

7

*Coalition for Good Governance v. Raffensperger*, Case No. 1:20-cv-1677-TCB, 2020 U.S. Dist. LEXIS 86996, at *6–10 (N.D. Ga. May 14, 2020) (dismissing claims regarding Georgia's absentee voter laws in light of COVID-19 because "they present a nonjusticiable political question" and "there are no judicially discoverable and manageable standards for resolving it").

## II.    Federal Courts should not alter election rules this close to an election.

The Supreme Court of the United States has counseled the federal courts that "Court orders affecting elections…can…result in voter confusion and consequent incentive to remain away from the polls.  As an election draws closer, that risk will increase." *Purcell*, 549 U.S. at 4-5. The Supreme Court has repeated this admonition in several cases this year where plaintiffs have moved for preliminary injunctions months before the November Election. *See, e.g., Republican Nat'l Comm.,* 140 S.Ct. at 1207 (citing to the *Purcell* principle, staying the district court's order granting a preliminary injunction requiring Wisconsin to count absentee ballots postmarked after the state's presidential primary, and stating, "By changing the election rules so close to the election date ... the District Court contravened this Court's precedents and erred by ordering such relief. This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."), *Merrill v. People First of Alabama*, at *1 (staying a district court's preliminary injunction related to absentee voting requirements).

Earlier this month, the Supreme Court stayed a South Carolina district court's enjoining enforcement of the South Carolina witness requirement for absentee voting. *Andino*, 2020 WL 5887393, at *1. Justice Kavanaugh, in his concurrence, stated that the Supreme Court "has repeatedly emphasized that federal courts ordinarily should not alter state election rules in the period close to an election." *Id.* (Kavanaugh, J., concurring) (citing *Purcell*). "By enjoining South

Carolina's witness requirement shortly before the election, the District Court defied that principle and this Court's precedents," wrote Justice Kavanaugh. *Id.*

Then, just one week ago, District Court Judge Lewis issued an order dismissing a "last-minute lawsuit" challenging another provision of the election code. *South Carolina Progressive Network Education Fund, v. Andino, et al.*, No. CV 3:20-03503-MGL, 2020 WL 5995325, at *5 (D.S.C. Oct. 9, 2020) (hereinafter "*Progressive Network*"). Judge Lewis noted that the plaintiff's "untimeliness" in that case was "dispositive" and "fatal to its claims." *Id.* Judge Lewis found the plaintiff was unable to show a likelihood of success on the merits because a "Court is unable to order the change in election law [plaintiff] seeks so close to the November 3, 2020, election." *Id.* at *6.

Plaintiffs pretend that they are not asking this Court to alter South Carolina law. They argue that their requested relief does not run afoul of the Supreme Court's admonition in *Purcell* against altering election rules as the election draws closer, because, they claim, it comprises "relatively minor expanded circumstances" that have only a minimal impact on election officials, and does not run the risk of causing voter confusion before an impending election. ECF No. 21-1 at 23. The plaintiff in *Progressive Network* made a similar, nonsensical argument claiming that the relief it sought did not involve any change to the actual election process. *See Progressive Network* at *6. But, as Judge Lewis wrote, "this is simply not so. No discussion is merited. Period." *Id.*

Furthermore, Plaintiffs allege that their requested relief (which they describe as "modest") will only have a minimal impact on election officials and does not run the risk of confusing voters. ECF No. 20 at ¶¶ 5 and 6.  In truth, what Plaintiffs seek is a court-created, wholly new, person-driven voter-contact scheme, whereby:

> county election officials [will] review absentee ballot envelopes and
> provide pre-rejection notice to voters by first-class mail and, where

> available, by email or phone, of any signature-related deficiency as
> soon as is practicable; and permit voters whose absentee ballots are
> deficient on this ground to cure the deficiency up to three days
> following the election—the time period already provided under
> South Carolina law for voters to cure certain deficiencies in
> provisional ballots.

*Id.* at 6. It defies credulity to argue that 18 days (or less) before what is expected to be one of the largest national elections with the highest number of absentee voters to suggest this "pre-rejection notice" scheme will have "minimal impact" and is "modest" relief.  Moreover, Plaintiffs ignore entirely that the provisional ballots to which they refer are ballots about which there is some question regarding the voter's qualifications, for example where a voter's casts a ballot in the wrong precinct or the voter's identification cannot be verified.  *See* S.C. CODE ANN. § 7-13-710. Plaintiffs further ignore the fact that their proposal could have a monumental impact on the finality and certainty of the election, both of which are important State interests here. Providing notice and opportunity to cure deficient ballots could jeopardize having timely election results throughout South Carolina. As the Supreme Court stated with a case extending absentee deadlines, alterations that extend past the deadline would be an "extraordinary relief and would fundamentally alter the nature of the election." *Republican Nat'l Comm.* at 1208.

**III.     Legislating from the bench is improper and injunctive relief is inappropriate.**

The Supreme Court has explained that courts should "avoid judicial policymaking or *de facto* judicial legislation." *Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S.Ct. 2335, 2351 (2020) (noting "the confined role of the Judiciary in our system of separated powers—stated otherwise, the presumption manifests the Judiciary's respect for Congress's legislative role by keeping courts from unnecessarily disturbing a law apart from invalidating the provision that is unconstitutional.").

Here, Plaintiffs complain about the absence of a law requiring that County election officials provide notice and opportunity to cure a defective absentee ballot. To date, only 18 states have enacted such a law.[4]  And in each case, the law has been enacted *by the State legislature*, just like with any other piece of legislation.  Respectfully, it is not the purview of the judiciary to create by judicial fiat the legislation that Plaintiffs request.

Further, injunctive relief is simply not appropriate in these circumstances. "[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir.1991) (internal quotation marks omitted). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir.1999) ("The purpose of a preliminary injunction is to "preserve[ ] the status quo pending a final trial on the merits.").

Plaintiffs ask this Court to issue "preliminary and permanent injunctions enjoining the Defendants from enforcing S.C. CODE ANN. § 7-15-420 to the extent that it fails to provide absentee voters with pre-rejection notice and a hearing or other opportunity to resolve signature-related deficiencies." ECF No. 20 at 21 (emphasis provided).  This is not a logical or appropriate use of this Court's injunctive powers because, in fact, what Plaintiffs seek is a new provision of South Carolina Election Code, a "pre-rejection" cure procedure administered by County election officials. Indeed, Plaintiffs are not requesting preservation of the status quo (i.e., the absence of a

---

[4] Ariz. Rev. Stat. §16-550, CA Elect Code § 3019, Colo. Rev. Stat. §1-7.5-107.3, Flor. Stat. § 101.68, Georgia Code § 21-2-386, Haw. Rev. Stat. § 11-106, 10 ILCS 5/19-8, Iowa Code § 53.18(2), Mass. Gen. Laws ch 54 § 94), Minn. Stat. § 203B.121, Mont. Code §§ 13-13-241 & 245, Nev. Rev. Stat. 293.325, N.J.S.A. 19:63-17, Ohio Rev Code § 3509.06, Ore. Rev. Stat. § 254.431, RI Gen L § 17-20-26, Utah Code Ann. § 20A-3-308(7), and Wash. Admin. Code 434-261-050.

cure provision), but rather judicial enactment of a cure provision never before included in the South Carolina Code of Laws. Any fair reading of Plaintiffs' pleadings and motion reveals that in order to preserve the status quo, this Court must decline to enter an injunction.

**CONCLUSION**

For the reasons explained above, Speaker Lucas and President Peeler respectfully request that the Court deny Plaintiffs' motion for preliminary injunction.

NEXSEN PRUET, LLC

s/Susan P. McWilliams
Susan P. McWilliams        Fed. ID No. 3351
smcwilliams@nexsenpruet.com
Mark C. Moore              Fed. ID No. 4956
mmoore@nexsenpruet.com
1230 Main Street, Suite 700
Columbia, SC 29201
(803) 253-8221

*Attorneys for Rep. James H. ("Jay") Lucas, in his capacity as Speaker of the South Carolina House of Representatives*

WOMBLE BOND DICKINSON (US) LLP

s/ M. Todd Carroll
M.  Todd Carroll          Fed. ID No. 9742
Todd.carroll@wbd-us.com
Kevin A. Hall             Fed. ID No. 5375
Kevin.hall@wbd-us.com
1221 Main Street, Suite 1600
Columbia, SC 29201
(803) 454-6504

October 16, 2020          Attorneys *for Sen. Harvey Peeler, in his capacity as*
Columbia, South Carolina  *President of the South Carolina Senate*