UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| League of Women Voters, *et al.*,<br>Plaintiff,<br>v.<br>Marci Andino, *et al.*,<br>Defendants. | No.: 2:20-cv-03537-RMG<br><br>**Declaration of Marci Andino** |

My name is Marci Andino. I am over the age of eighteen and fully competent to make this declaration. Under penalty of perjury, I declare the following based upon my personal knowledge:

1. I am currently employed as the Executive Director for the South Carolina Election Commission ("Commission") and have served in that capacity since 2003.

2. Pursuant to S.C. Code Ann. § 7-3-20(C)(1), my duties include, *inter alia*: supervising county boards of voter registration and elections (county boards) in the conduct of voter registration and elections to ensure their compliance with state law, federal law, and agency policies and procedures; maintaining the statewide voter registration database; and serving as the statutorily designated "chief state election official" responsible for implementing, coordinating, and enforcing the state's responsibilities under the National Voter Registration Act of 1993, 52 U.S.C. §§ 20501 *et seq.*, and the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301 *et seq.*

3. When a voter receives an absentee ballot by mail, that voter receives three things in addition to the ballot:

A. A "ballot herein" envelope: The ballot itself is put in this envelope by the voter to maintain the secrecy of the ballot. *See* Ex. A.

B. A "ballot return" envelope: The "ballot herein" envelope is put in this envelope, and the voter's oath, line for the voter's signature, and lines for the witness's signature and address are on this envelope. *See* Ex. B.

C. Instructions: These are step-by-step directions for completing and returning an absentee ballot. Twice in these instructions, voters are told they must sign the voter's oath and have a witness to that signature. *See* Ex. C.

4. The Commission does not interpret Title 7 of the South Carolina Code to allow for a voter to "cure" a failure to comply with the signature and witness requirements for absentee ballots returned by mail.

5. For example, guidance and instructions issued to county boards in the agency's April 2019 Voter Registration & Elections Handbook includes the processing of absentee ballots returned by mail that are unsigned or unwitnessed and "will ultimately NOT be counted." *See* Ex. D at 58–59 (emphasis in original). There is nothing in this guidance or instructions about a "cure" procedure.

6. On October 7, 2020, the Commission instructed county boards of voter registration and elections that State law does not provide any "cure" provision for absentee ballots that have been returned by mail without complying with the signature and witness requirements. This instruction was given in response to

questions the agency was receiving from county boards after the United States Supreme Court's decision in *Middleton*. County boards were inquiring whether voters whose unwitnessed absentee ballots are returned after the *Middleton* order's October 7 deadline could be given the opportunity to fix or remedy the missing signature.

7. In 2016, 2,954 absentee ballots were rejected. Of these, 261 were rejected for missing the voter's own signature, and 1,575 were rejected for missing the witness signature. The remaining ballots were rejected for being returned after 7:00 PM on Election Day.

8. In 2018, 2,450 absentee ballots were rejected. Of these, 145 were rejected for missing the voter's signature, and 802 were rejected for missing the witness signature. The remaining ballots were rejected for being returned after 7:00 PM on Election Day.

9. Given how close we are to Election Day, it would be difficult to implement a new, uniform, secure process across all 46 counties for curing failures to comply with the signature and witness requirements.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 16, 2020.

Marci Andino

# *Exhibit A*

BALLOTS HEREIN

**<u>Ballots Only</u> in this envelope**
**Do Not place <u>any</u> other documents**
**including identification in this envelope**

# *Exhibit B*

Absentee Ballots for ____________________ County

______________________________, South Carolina
(County Seat)

OFFICIAL ELECTION MAIL®
Authorized by the U.S. Postal Service

ADDITIONAL POSTAGE REQUIRED

**County Board of Voter Registration**

______________________________

**NAME**

______________________________

**ADDRESS**

______________________________

# Voters Oath

I hereby swear (or affirm) that I am duly qualified to vote at this election according to the Constitution of the State of South Carolina; that I have not voted during this election; and that the ballot or ballots with which this oath is enclosed is my ballot and that I have received no assistance in voting my ballot that I would not have been entitled to receive had I voted in person.

..............................................................................

Signature of Voter

Date on this .............................. day of .................... 20 ....................

..............................................................................

Signature of Witness

..............................................................................

Address of Witness

# *Exhibit C*

# Instructions for Voting Absentee

1. Mark your ballot(s). Leave the stub attached..
2. Fold your ballot(s) so that the contents cannot be seen without unfolding.
3. Place your folded ballot in the enclosed envelope labeled "Ballots Herein" and seal that envelope.
4. Place your "Ballots Herein" envelope(s) in the return-addressed envelope.
5. Read the "Voters Oath" on the back of this return-addressed envelope.
6. Sign your name, or make your mark, and write the date on the back of this envelope in the presence of a witness.
7. Your witness **must** then sign the back of this envelope and list his or her complete address, including street, city, state and zip code.
8. Return your absentee ballot to your county voter registration office by the closing of the polls on election day.

You may return your absentee ballot in person, by mail or by authorizing another person to return your ballot for you. If you wish someone to return your ballot for you, you must complete the enclosed authorization form. This form is to be returned to your county voter registration office along with your absentee ballot. Please do not place this authorization form in the absentee ballot return envelope.

**IMPORTANT**

To have your ballot counted:

1. Sign the oath on the return-addressed envelope. If you cannot write, someone may assist you in marking your ballot and witnessing your mark.
2. Have your witness sign and list his or her complete address. Your witness does not have to be a registered voter.
3. Return your absentee ballot to your voter registration office by the time the polls close on election day.

# *Exhibit D*

SOUTH CAROLINA
ELECTION COMMISSION

# VOTER REGISTRATION & ELECTIONS HANDBOOK

**April 2019**

This documentation contains confidential information, which is proprietary to the South Carolina State Election Commission. The use, reproduction, distribution or disclosure of the documentation, in whole or in part, without the express written permission of the South Carolina State Election Commission is prohibited. If this documentation becomes published, the following notice shall apply:

***COPYRIGHT© 2006 South Carolina State Election Commission***

***1122 Lady Street, Suite 500***

***Columbia, SC 29201***

***Phone 803.734.9060 Fax 803.734.9366***

***All Rights Reserved.***

# Document Information

| Attribute | Value |
|---|---|
| *Agency:* | South Carolina State Election Commission |
| *Division:* | Voter Services Division |
| *Document Main Title:* | Voter Registration & Elections Handbook |
| *Document Sub-Title:* | Policy and Procedure |
| *Document Version:* | 201904 |
| *Version Date:* | April 3, 2019 |
| *Taxonomy:* | 1. – Title<br>1.1 – Chapter<br>1.1.1 – Section<br>1.1.1.1 - Subsection |
| *Document Status:* | RELEASED |
| *Authors* | ▪ Kelley Rhodes<br>▪ Chris Whitmire |

# Document Purpose

The Election Commission (SEC) Voter Registration & Elections Handbook contains reference materials and instructions for use by county staff in supporting county elections.

# Acronyms

The following acronyms are used throughout this document:

| Acronym | Definition |
|---|---|
| Board | County Board of Voter Registration and Elections |
| CBC | County Board of Canvassers |
| County Office | County Voter Registration and Elections Office |
| DMV | Department of Motor Vehicles |
| DSIT | Department of State Information Technology |
| ElectionNet | Intranet used by SC voter registration and election officials |
| EVAT | Electronic Voting Accessibility Tool |
| EVRL | Electronic Voter Registration List |
| FWAB | Federal write-in ballot used by UOCAVA voters |
| HAVA | Help America Vote Act |
| IRV | Instant Runoff Voting - Process used for UOCAVA voters to rank candidates in case there is a subsequent runoff |
| MEC | Municipal Election Commission |
| NVRA | National Voter Registration Act |
| PDF | Portable Document Format |
| PLT | Polling Location Technician - individual trained to address common technical polling place issues assigned to multiple polling locations |
| SEC | State Election Commission |
| SIC | Statement of Intention of Candidacy |
| SICPP | Statement of Intention of Candidacy/Party Pledge form |
| SWAB | Special write-In ballot used when regular ballots are not available |
| UOCAVA | Uniformed and Overseas Citizens Absentee Voting Act |
| VREMS | Voter Registration and Election Management System |

# Contents

**DOCUMENT INFORMATION** .......... 2

**DOCUMENT PURPOSE** .......... 2

**ACRONYMS** .......... 3

**1. DUTIES OF THE STATE ELECTION COMMISSION** .......... 12

**1.1 RESPONSIBILITIES OF THE OFFICE** .......... 12

**1.2 VOTER SERVICES DIVISION** .......... 13

1.2.1 Cancellation of Voter Registration .......... 13
1.2.2 Reports of Death .......... 13
1.2.3 Report of Criminal Convictions .......... 14
1.2.4 Confirmation Card Mailing .......... 14
1.2.5 Notification of Persons Removed From Voter Lists and Appeal .......... 14
1.2.6 Statewide Voter Registration Database Support .......... 14
1.2.7 Voting System Support .......... 15
1.2.8 Intranet .......... 15
1.2.9 Maintaining Voter History .......... 15

**1.3 ADMINISTRATION & FINANCE DIVISION** .......... 15

1.3.1 Sale of Lists and Jury Lists .......... 15
1.3.2 Election Supplies .......... 16

**1.4 PUBLIC INFORMATION & TRAINING DIVISION** .......... 16

1.4.1 Training Services .......... 16
1.4.2 Public Information .......... 17

**2. COUNTY BOARDS** .......... 18

**2.1 APPOINTMENT & TERMS** .......... 18

**2.2 BOARD MEMBER OATH** .......... 18

**2.3 OVERALL VOTER REGISTRATION DUTIES OF THE BOARD** .......... 19

**2.4 OVERALL ELECTION DUTIES OF THE BOARD** .......... 19

**2.5 TRAINING & CERTIFICATION OF BOARD MEMBERS** .......... 19

**2.6 POLITICAL PARTICIPATION** .......... 20

**2.7 MEETINGS** .......... 20

**2.8 SECURITY OF VOTING EQUIPMENT, VREMS, AND MATERIALS** .......... 20

**3. CONDUCTING VOTER REGISTRATION** .......... 22

**3.1 HOURS AND LOCATIONS FOR VOTER REGISTRATION** .......... 22

**3.2 ADDITIONAL VOTER REGISTRATION SITES** .......... 22

**3.3 Agency Based Voter Registration Applications** .......... 23

**3.4 Deputy Registrars** .......... 23

**3.5 Voter Registration Cut-Off Date** .......... 24

**3.6 Registration for 17-Year-Old Residents** .......... 24

**3.7 Registration in a New County** .......... 25

**3.8 Duration of Registration** .......... 25

**3.9 Qualification for Voter Registration** .......... 25

**3.10 Definition of Domicile** .......... 26

**3.11 Voting by Proxy/ Power of Attorney** .......... 27

**3.12 Confirming Voter Qualifications** .......... 27
3.12.1 Voter Registration Challenges .......... 27
3.12.2 Appealing a Board Decision .......... 28

**3.13 Identification for Those Registering In-Person** .......... 28

**3.14 Identification Required to Vote** .......... 28

**3.15 Voter Registration Applications – In Office** .......... 29

**3.16 Motor Voter Registration** .......... 30

**3.17 Voter Registration by Mail** .......... 30
3.17.1 Voter Registration by Fax & Email .......... 31
3.17.2 Additional ID Required When Registering To Vote By Mail, Fax, & Email .......... 32
3.17.3 National Voter Registration By Mail Application .......... 32

**3.18 Voter Registration Online** .......... 33

**3.19 Registration for Military & Overseas Citizens** .......... 33

**3.20 Notice of Disposition of Application** .......... 34

**3.21 Student Registration** .......... 34

**3.22 Registration of Discharged Military** .......... 35

**3.23 Registering Homeless Persons** .......... 35

**3.24 Conviction Procedures** .......... 35

**3.25 Voter Registration Notification** .......... 37

**3.26 Duplicate Social Security Numbers** .......... 38

**3.27 Moving From One Precinct to Another within a County** .......... 38

**3.28 Registrants Previously Registered in another State** .......... 38

**3.29 Physically Disabled or Illiterate Persons** .......... 39

**3.30 Reissue of Lost, Defaced, or Destroyed VR Cards** .......... 39

**3.31 Voter Registration Records** .......... 39

**3.32 Auditing and Statistical Reports** ........ **40**

**3.33 Establishing Elections** ........ **40**

**3.34 Voter Registration Lists** ........ **41**
3.34.1 Official Voter Lists for Primary, General, Special & Municipal Elections ........ 41
3.34.2 Custody of Lists and Return After Election ........ 41

**3.35 VREMS System Codes** ........ **42**
3.35.1 Gender ........ 42
3.35.2 Race ........ 42
3.35.3 Voter Status ........ 42
3.35.4 Status Reason ........ 42
3.35.5 Election Type & Level ........ 43
3.35.6 Election Level ........ 44
3.35.7 County Codes ........ 44

**4. VOTING LOCATIONS / PRECINCTS** ........ **45**

**4.1 Where Voters Vote** ........ **45**

**4.2 Voter's Change of Address** ........ **45**

**4.3 When New Precincts Are Established** ........ **46**

**4.4 Transfer of Voters with a Precinct Change** ........ **46**

**4.5 Changing the Polling Place Location** ........ **47**

**4.6 Barrier–Free Precincts** ........ **48**

**4.7 Polling Places Used In an Emergency Situation** ........ **48**

**5. ABSENTEE VOTING** ........ **50**

**5.1 Providing Absentee Ballots** ........ **50**

**5.2 Blank Absentee Ballots** ........ **50**

**5.3 Voters Qualified to Vote by Absentee Ballot** ........ **51**

**5.4 Requirement for and Time of Application** ........ **52**

**5.5 Absentee Voting – by Mail** ........ **53**
5.5.1 Who May Request Applications ........ 53
5.5.2 Voting by Proxy/ Power of Attorney ........ 54
5.5.3 Electronic Transmission of Absentee Applications ........ 54
5.5.4 Absentee Voting by Military and Overseas Citizens (UOCAVA Voters) ........ 55
5.5.5 Special Write-In Absentee Ballots ........ 56
5.5.6 Mailing Absentee Ballots ........ 57
5.5.7 Return of Absentee Ballots ........ 58
5.5.8 Securing Absentee Ballots ........ 60

**5.6 Absentee Voting – In Person** ........ **60**
5.6.1 Pre-Election Procedures ........ 60

5.6.2 Daily Opening Procedures ........ 61
5.6.3 Voting Operations ........ 61
5.6.4 Provisional Ballot Procedures for In-Person Absentee Voting on Voting Machines ........ 62
5.6.5 Daily Closing Procedures ........ 62
5.6.6 Closing of Absentee Precinct at the End of Election ........ 63

**5.7 Recording Absentee Application and Ballot Requests ........ 64**

**5.8 Absentee Voters Noted on Registration List ........ 64**

**5.9 Retention of Absentee Materials ........ 65**

**5.10 Tabulating and Reporting Absentee Ballots ........ 66**
5.10.1 Voter Dies after Submitting Absentee Ballot ........ 66

**5.11 Voter Checking Status of Absentee Ballot on Internet ........ 67**

**5.12 General Procedures for Absentee Voting Machines ........ 67**

**6. PETITIONS ........ 70**

**6.1 Candidate Nominating Petitions ........ 70**
6.1.1 Petition Form Requirements ........ 70
6.1.2 Number of Signatures Required ........ 71
6.1.3 Filing Locations for Candidate Petitions ........ 71
6.1.4 Filing Deadlines for Candidate Petitions ........ 72
6.1.5 Accepting Candidate Petitions ........ 73
6.1.6 Deadline to Validate Candidate Petitions ........ 74

**6.2 Political Party Certification Petitions ........ 75**

**6.3 Ordinance by Initiative Petition ........ 75**

**6.4 Petitions to Change Form of Government ........ 76**

**6.5 Sunday Sale of Alcohol Petitions ........ 76**

**6.6 Accepting Petitions ........ 77**
6.6.1 Receiving Authority ........ 77
6.6.2 Deadlines ........ 77
6.6.3 Initial Examination of the Petition ........ 78
6.6.4 Petition Receipts ........ 78
6.6.5 Copies of Petitions ........ 78

**6.7 Signature Verification & Petition Certification ........ 79**
6.7.1 Observers ........ 79
6.7.2 Procedure for Verifying Petition Signatures ........ 80
6.7.3 Petition Check Worksheet ........ 83
6.7.4 Petition Certification ........ 83

**7. CANDIDATE NOMINATION AND CERTIFICATION ........ 84**

**7.1 Methods of Nomination for Partisan Office ........ 84**

**7.2 Nomination by Political Party ........ 84**

7.2.1 Filing with Multiple Parties (Fusion Candidates) ............ 84
7.2.2 Filing for Multiple Offices ............ 85
7.2.3 When a Candidate's Name May Not Be Placed on Ballot ............ 85
7.2.4 Substitution of Candidates for Party Nomination ............ 86
7.2.5 Substitution of Party Nominees ............ 86

**7.3 FILING FOR NONPARTISAN OFFICES FOR GENERAL ELECTION ............ 87**

**8. ETHICS ............ 88**

**9. BALLOTS ............ 89**

**9.1 TYPES OF BALLOTS ............ 89**
9.1.1 Primary Ballots ............ 89
9.1.2 Primary Run-off Ballots ............ 89
9.1.3 Instant Run-off Voting (IRV) Ballots ............ 90
9.1.4 General Election Ballots ............ 90
9.1.5 Absentee Ballots ............ 90
9.1.6 Emergency / Provisional Ballots ............ 90
9.1.7 Failsafe Provisional Ballots ............ 90
9.1.8 Failsafe Ballots ............ 91

**9.2 BALLOT STANDARDS AND SPECIFICATIONS ............ 91**
9.2.1 Optical Scan Ballots ............ 91
9.2.2 Voting Machine Ballots ............ 91
9.2.3 Numbering Paper Ballot ............ 92
9.2.4 Standard Office Titles For Ballot Preparation ............ 92
9.2.5 Number of Ballots to be Printed ............ 92
9.2.6 Providing Ballot Styles To SEC Prior To Election ............ 92
9.2.7 Order of Offices and Parties on General Election Ballot ............ 93
9.2.8 Listing Of Names On the Primary Ballot ............ 93
9.2.9 Use of Candidate's Name on Ballots ............ 93
9.2.10 Location For Write-In Candidates On Ballot ............ 94

**9.3 OATH OF BALLOT PRINTER ............ 94**

**9.4 SAMPLE BALLOTS ............ 95**

**9.5 DEATH, WITHDRAWAL OR DISQUALIFICATION OF CANDIDATE AFTER NAME PRINTED ON BALLOT ............ 95**

**9.6 REPRINTING BALLOTS TO DELETE NAME OF DECEASED OR WITHDRAWN CANDIDATE ............ 97**

**9.7 LIMITATION ON WITHDRAWAL OF CANDIDATE ............ 98**

**9.8 FORM OF BALLOT WHEN QUESTIONS ARE SUBMITTED ............ 98**

**9.9 TIME FOR SUBMITTING REFERENDA QUESTIONS TO BOARD ............ 98**

**9.10 EXPLANATION OF CONSTITUTIONAL AMENDMENTS ............ 99**

**9.11 EXPLANATION OF COUNTY BALLOT QUESTION ............ 99**

**10. ELECTION PREPARATION ............ 100**

**10.1 Notice of Election** ........ 100
**10.2 Definition of Poll Managers and Clerks** ........ 100
**10.3 Number of Poll Managers and Clerks** ........ 100
**10.4 Number of Polling Location Technicians** ........ 101
**10.5 Parties Submitting Names for Poll Managers** ........ 101
**10.6 Conduct of Election Training** ........ 101
**10.7 Poll Manager's Oaths** ........ 102
**10.8 Voting Machine Instruction for Poll Managers and Clerks** ........ 102
**10.9 Approval of Statewide Voting System** ........ 102
**10.10 Demonstrations for Instruction to Voters** ........ 103
**10.11 Custodians of Voting Machines** ........ 103
**10.12 Number of Voting Machines** ........ 103
**10.13 Custody and Maintenance of Voting Machines** ........ 103
**10.14 Preparation of Voting Machines** ........ 104
**10.15 Machines and Other Equipment Are In Place and In Good Order** ........ 104
**10.16 Duty to Protect Machines** ........ 104
**10.17 Ballot Boxes** ........ 104
**10.18 Sample Ballots** ........ 105
**10.19 Official Voter List and Poll List for Primary, General, Special and Municipal Elections** ........ 105
**10.20 New Election Ordered By the Governor** ........ 105

**11. CHECKLIST FOR OPENING AND CLOSING POLLS WITH IVOTRONIC** ...... 106
**11.1 Assembling the Voting Booth** ........ 106
**11.2 Opening the Polls** ........ 108
**11.3 During Voting Hours** ........ 111
**11.4 iVotronic ADA Terminal Instructions** ........ 112
**11.5 Voting After Scheduled Poll Closing Time** ........ 113
**11.6 Closing the Polls** ........ 113

**12. ELECTION DAY / NIGHT PROCEDURES** ........ 116
**12.1 Voter Photo ID Requirement and Exception** ........ 116
12.1.1 Reasonable Impediment Exception ........ 117
**12.2 Voter Name not on VR Lists** ........ 117

**12.3 Marking the VR List for General Elections** ..... **118**

**12.4 Marking EVRL for General Elections** ..... **118**

**12.5 Marking the VR List for Primary Elections** ..... **118**

**12.6 Marking EVRL for Primary Elections** ..... **119**

**12.7 Marking the VR List for Run-Off Elections** ..... **119**

**12.8 Marking EVRL for Run-Off Elections** ..... **119**

**12.9 ABS on VR List** ..... **119**

**12.10 Additional ID May Be Required When Voting** ..... **119**

**12.11 Only One Person in Voting Booth** ..... **120**

**12.12 Procedure When Voting Machine Becomes Inoperative** ..... **120**

**12.13 Failsafe Procedures** ..... **121**
12.13.1 Voter moves within the same precinct ..... 122
12.13.2 Voter moves from one precinct to another within the same county ..... 123
12.13.3 Voter moves from one South Carolina county to another within 30 days prior to an election ..... 124
12.13.4 Voter Moves from One State to Another After the Voter Registration Deadline for a Presidential Election ..... 125
12.13.5 Election Night Failsafe Procedures ..... 126
12.13.6 Post Election Day Failsafe Procedures ..... 126

**12.14 Distributing and Displaying of Campaign Material at Polls** ..... **127**

**12.15 Tabulating and Reporting Absentee Ballots** ..... **127**

**12.16 Duplicating Optical Scan Ballots** ..... **128**

**12.17 ELECTION NIGHT** ..... **129**
12.17.1 Return of Results to Election Central ..... 129
12.17.2 Verification of Totals Before Posting to Public ..... 129
12.17.3 Procedure to Receive Information – Flow of Traffic ..... 130

**12.18 Report Unofficial Results for Statewide Elections** ..... **130**

**12.19 Recording Provisional Ballots** ..... **131**

**13. POST ELECTION PROCEDURES** ..... **131**

**13.1 Machines Will Remain Locked** ..... **131**

**13.2 Custody of Lists and Return** ..... **131**

**13.3 Accounting For Polling Place Ballots and Supplies** ..... **132**

**13.4 Retention of Election Materials** ..... **132**

**13.5 Reporting Election Results to SEC** ..... **132**

**13.6 CANVASSING OF VOTES .......... 132**
13.6.1 Meeting and Organization as the Board of Canvassers .......... 132
13.6.2 Provisional Ballot Hearing .......... 133
13.6.3 Canvassing Votes .......... 136
13.6.4 Certifying Election Results .......... 136
13.6.5 Mandatory Recounts .......... 137
13.6.6 Elections That End In a Tie Vote .......... 138
13.6.7 Majority Vote Needed To Win First Primary Election .......... 139
13.6.8 What Constitutes Majority Vote .......... 139
13.6.9 Second and Other Primaries or Run-Off Elections .......... 140
13.6.10 Determining Winners by Plurality .......... 140

**14. ALLOWABLE ELECTION EXPENSES AND REIMBURSEMENT POLICY .......... 141**

**14.1 LEGAL NOTICES .......... 141**

**14.2 BALLOTS .......... 141**

**14.3 POLL MANAGERS .......... 142**

**14.4 POLL MANAGER PAY FORM .......... 144**

**14.5 MILEAGE .......... 144**

**14.6 ROVERS .......... 144**

**14.7 DOCUMENTATION FOR REIMBURSEMENT .......... 145**

**14.8 MISCELLANEOUS PRIMARY EXPENSES .......... 146**

**14.9 EXPENSES PAYABLE BY THE COUNTY .......... 147**

**14.10 PENALTY FOR LATE SUBMISSION OF REIMBURSEMENT REQUESTS .......... 147**

**14.11 EXPEDITED FREIGHT CHARGES .......... 147**

**15. PROTESTS .......... 148**

**15.1 PROTESTS IN PRIMARIES .......... 148**

**15.2 MUNICIPAL ELECTION PROTESTS .......... 149**

**15.3 GENERAL AND SPECIAL ELECTIONS .......... 149**

**15.4 CONTINUATION OF PROTESTS .......... 150**

**15.5 APPEAL FROM DECISION OF BOARD .......... 150**

**15.6 HEARING OF APPEALS .......... 151**

**16. U.S. DEPARTMENT OF JUSTICE PRECLEARANCE .......... 152**

# 1. Duties of the State Election Commission

## 1.1 Responsibilities of the Office

The State Election Commission (SEC) is responsible for overseeing the voter registration and election processes in the State. The SEC has multiple responsibilities, including:

- Maintaining the State's computerized statewide voter registration and election management system (VREMS), which is used to validate registered voters during elections and which also serves as a source for selection of jurors in the state.
- Providing voter registration and election materials.
- Printing the lists of registered voters for all elections held in the state.
- Providing funding for various election expenses.
- Support statewide electronic voting system.
- Providing oversight, including assistance and advisory services to county and municipal election officials for elections in South Carolina.
- Training voter registration and election officials.
- Serving as the State Board of Canvassers after elections to certify election results, to declare candidates elected, and to hear protests/appeals that may arise.

The SEC is divided into three divisions:

- Voter Services
- Administration and Finance
- Public Information and Training

# 1.2 Voter Services Division

## 1.2.1 Cancellation of Voter Registration

The SEC has the sole authority to remove from the voter registration database the names of all voters who are deceased, are no longer qualified to vote in the precinct where registered, have been convicted of a disqualifying crime, have provided written request to have their names removed, or are otherwise no longer qualified to vote as provided by law.

Requests for removal from the voter registration list must be made by the voter. Such requests should be in writing to the SEC.

Registered voters cannot be removed solely for failure to vote. Voters who fail to vote in two consecutive statewide general elections, or in any other election held in the precinct in which they are registered within the period of time between the two general elections, may be sent a confirmation card. Voters can be removed from the voter registration list for failure to respond to the confirmation mailing. (7-3-20 & 7-5-330 (F))

If the Board has information that an active voter no longer lives at his registration address, the Board should submit a request in VREMS for this voter to be made inactive-moved (I-M). If the voter does not correct his address, the voter will be archived after two general election cycles.

## 1.2.2 Reports of Death

Each month, the Bureau of Vital Statistics furnishes a list of all persons at least 18 years of age who have died in South Carolina. Normally, this list is current through several months previous to the reporting month. Therefore, it may take several months after the date of death before a deceased voter's registration is canceled. (7-3-40)

If the Board has information that a voter has died and is still on the active registration list, the Board should submit a request in VREMS for this voter to be given inactive status. The voter is made inactive-deceased (I-D) and placed in archived status during annual archiving.

### 1.2.3 Report of Criminal Convictions

Each month the S.C. Court Administration and the United States District Court provide lists of all persons convicted of felonies or crimes against the election laws. This information cannot be supplied by the Board or Clerks of Court. This information is compared to the statewide voter registration database. Any voter listed on the conviction list is made inactive-convicted (I-C). The voter is sent a letter notifying him of his removal from the list of active, registered voters and is notified of his right to appeal. I-C voters are archived during the annual archiving.

### 1.2.4 Confirmation Card Mailing

Pursuant to the NVRA, not less than 90 days prior to a statewide election, the SEC may send out confirmation cards to voters who have not participated in an election during a period of time. Returned cards containing a voter response are processed accordingly. Voter records for cards returned as undeliverable are given a status of Inactive-Moved (I-M). Voter records for cards not returned after 90 days from the mailing date are given a status of Inactive-Failed to Respond (I-F), and if the voter does not vote in any election during the time period of the next two general elections, the voter record is archived.

### 1.2.5 Notification of Persons Removed From Voter Lists and Appeal

The SEC notifies each registered voter in writing who is made inactive in VREMS for reason of conviction. The notice is mailed to the address last filed with the Board. Voters have 20 days from the date the notice is mailed to appeal. Appeals of removal for conviction must be made to the SEC. If it is determined that the voter's name should not have been made inactive, the voter's registration status will be reinstated. (7-3-30)

### 1.2.6 Statewide Voter Registration Database Support

Voter Registration database support consists of providing a list of registered voters for each election held in the State, maintaining records of voter participation, removing voters from the database, making district and precinct decode changes to VREMS, providing various reports generated in VREMS, and monitoring changes needed to VREMS.

### 1.2.7 Voting System Support

Ballot definitions are created by the SEC for all elections being held using the statewide voting system, except for some ballot definitions that are created by Boards. Ballot definitions consist of entering pertinent election data such as offices and candidates, ballot content and layout, and testing. This ballot definition is then given to the Board for use in preparation of voting machines, absentee and ancillary ballot printing, and election night reporting functions.

.

### 1.2.8 Intranet

SC ElectionNET is the official Intranet website of the South Carolina election community sponsored by the SEC. SC ElectionNET contains information and useful tools to assist members of the community in administering and conducting elections and voter registration as well as other related processes. This site is maintained by staff in the Voter Services Division and contributions of various other SEC personnel.

### 1.2.9 Maintaining Voter History

After every election in the State, personnel in the Voter Services Division update records to indicate voters who participated in the election. This scheduled maintenance enables timely reporting of names of voters who participated in a particular election.

## 1.3 Administration & Finance Division

This division is responsible for payment and reimbursement of election expenses including poll manager pay for particular elections, certain Board members expenses, public notices, and other items. For specific details, refer to “Allowable Election Expenses and Reimbursement Policy” section.

### 1.3.1 Sale of Lists and Jury Lists

The SEC provides electronic and printed voter files for a fee at the request of registered voters in South Carolina. This information may include a voter’s name,

address, sex, race, VR card number, date registered, all voting districts, and voting history.

In October of each year, the SEC furnishes each County Clerk of Court a jury list as per Section 14-7-130 of the South Carolina Code of Laws. This list is made up of registered voters and people with a S.C. driver's license or identification card issued by the DMV. At the request of a municipality, the SEC furnishes a jury list made up of registered voters within city limits and people with a S. C. driver's license or identification card issued by the DMV per Section 14-25-155 of the South Carolina Code of Laws In November of each year, the SEC also furnishes the Chief Magistrate of each County a jury list made up of registered voters per Section 22-2-50 of the South Carolina Code of Laws. Additionally, the SEC provides the U. S. Federal Court with a jury file in January of every odd numbered year.

### 1.3.2 Election Supplies

The SEC warehouses a number of items necessary for the Board to function daily. These supplies include voter registration applications, VR Cards, change of address forms, authorized representative's oaths, applications for absentee ballots, various absentee envelopes, provisional ballot envelopes, petitions, petitions receipts, condensed election law books for Board members, and other election materials.

## 1.4 Public Information & Training Division

### 1.4.1 Training Services

This division is responsible for on-site training programs for Board members, staff, and municipal election commissioners, as well as a Training and Certification program for Board members and staff. This division also assists the Board with poll manager training. SEC staff, Board staff, other governmental agency staff, and professional trainers conduct training covering the various components of this program. Classes are offered on a quarterly basis and at the annual county board association conference. The Training Services division also prepares and distributes training manuals and polling place supplies.

Board members and staff must complete, within 18 months after their appointment or reappointment, the training and certification program conducted by the SEC. Following initial certification, each Director must participate in at least two training courses each year to maintain their certification. Following initial certification, each Board member and staff must participate in at least one training course each year to maintain their certification.

The Training Services division staff maintains the records of Board and staff participation in training classes and are responsible for registrations for all classes.

### 1.4.2 PUBLIC INFORMATION

The Public Information division duties include daily interaction with the general public; local, state and national media; elected officials; candidates; political parties; county voter registration and election offices; U.S. Department of Justice and others. Other responsibilities include tracking election law changes, completion of local and national surveys, production of the bi-annual Election Report, and updating the SEC web page, www.scvotes.org.

# 2. County Boards

## 2.1 Appointment & Terms

Boards may have five to nine total Board members based on enabling legislation. At least one of the Board members represents the largest political party and one represents the second largest political party as determined by the composition of that county's delegation in the General Assembly or the makeup of the General Assembly as a whole if the county's delegation is composed of only one party's members. Board members continue to hold their positions until their successors are appointed and qualified. (7-5-10 )

The Governor notifies the SEC in writing of the appointments.

Board members serve for four years from the date of appointment and continue to serve until their successors have been appointed. (7-5-10)

At their first meeting the Board will organize and appoint or elect a chairperson. The chairperson may administer oaths. (7-13-80)

## 2.2 Board Member Oath

Following their appointment Board members must take and sign the oath prescribed by Section 26 of article III of the S.C. Constitution. This oath can be given by any officer authorized to administer oaths. The oath is as follows:

> "I do solemnly swear (or affirm) that I am duly qualified, according to the Constitution of this State, to exercise the duties of the office to which I have been appointed, and that I will, to the best of my ability, discharge the duties thereof, and preserve, protect and defend the Constitution of this State and of the United States. So help me God."

This oath is immediately filed in the office of the clerk of court of common pleas in the county; or, if there is no such clerk, in the office of the Secretary of State. (7-5-10)

## 2.3 Overall Voter Registration Duties of the Board

The following lists some of the responsibilities and duties of the Board:

- Determining qualifications of all voter registration applicants.
- Creating a voter record in VREMS for all new voters
- Providing written notification of registration to qualified applicants.
- Validating signatures from petitions for candidates and new political parties.
- Completing absentee voting procedures.
- Maintaining county voter registration records.

## 2.4 Overall Election Duties of the Board

The following lists some of the responsibilities and duties of the Board:

- Establishing elections in VREMS.
- Publishing election notices.
- Appointing and training clerks and poll managers.
- Prepare voting system and equipment.
- Printing and distributing ballots.
- Providing proper number of voting machines for each polling place.
- Oversight of ballot tabulation.
- Certifying candidates and election results.
- Hearing protests of county and less than county wide elections, excluding primaries and some municipal elections.

## 2.5 Training & Certification of Board Members

Board members must complete the SEC Training and Certification Program within 18 months of initial appointment or reappointment. Following certification, each member must participate in at least one training course each year. (7-5-10)

## 2.6 Political Participation

No member of the Board or municipal election commission (MEC) may participate in political management or in a political campaign over whose election the member has jurisdiction. No member may make a contribution to a candidate or knowingly attend a fundraiser held for the benefit of a candidate over whose election the member has jurisdiction. Violation of this section subjects the member to removal by the Governor or appropriate appointive authority. (7-13-75)

## 2.7 Meetings

At least 24 hours prior to any meeting of the Board, a public notice must be posted. The notice must include the meeting date, time, and location. The notice must also include the agenda. The notice should be posted in a conspicuous public place. Some boards choose to publish these notices in the newspaper.

For the purposes of approving or refusing voter registration applications, one member of the Board constitutes a quorum. A quorum also includes any deputy registrars or clerks who have been officially deputized.

For any other function of the Board, a quorum must consist of a majority of the combined total of all current Board members. Examples of such other functions include canvass and certification hearings, monthly meetings, protest hearings, and employee hiring and firing.

For more on the rules governing public meetings, see the Freedom of Information Act, S.C. Code of Laws Title 30, Chapter 4.

## 2.8 Security of Voting Equipment, VREMS, and Materials

Using a statewide voter registration system and statewide voting system, as our State does, carries the risk of loss of confidence in the integrity of elections should there be a failure either system anywhere in the State. Security is but one attribute of the integrity of elections. Election security is the sum total of policies, procedures, accreditation guidelines, physical measures, and the system itself. The Board is responsible for the conduct and integrity of the election process. This includes the security of everything associated with elections including the voting machines, equipment, voter registration passwords, voting machine passwords, and a county security plan.

The Board must have a thorough understanding of security throughout the entire election cycle - from voter registration through election setup, equipment logistics, election day, election night, and certification to conclusion of the election. They must consider each security attribute within each stage of the election cycle. Security measures must be built into the entire election cycle. Security in elections does not just happen, it must be planned. The Board must have a comprehensive, well-planned security plan that incorporates state and federal standards as well as industry best practices.

Security has always been a part of the integrity of elections. Electronic voting devices bring additional considerations to election security. Every Board needs to understand security concepts such as threats and attacks, vulnerabilities, defenses, and risk management techniques.

Some security suggestions include:

- Understand security planning.
- Identify your own unique, prioritized list of vulnerabilities and develop your own security plan.
- Continually improve your plan as new security items and measures surface.
- Having a single point of contact
- Inventory control
- Ask for assistance from the SEC

Key resources for your security include:

- SC Election Security Guide
- ElectionNET
- Best practices toolkit from the Election Assistance Commission
- SEC Election Security Classes

# 3. Conducting Voter Registration

Records of registered voters in South Carolina are contained in a statewide voter registration and election management system maintained by the Board and the SEC. The system is housed on a mainframe computer at the DSIT in Columbia.

## 3.1 Hours and Locations for Voter Registration

State law requires that each county office be located in the county seat at the county courthouse or another location provided by the governing body of the county. The office must be open during the same hours as other county offices are normally open. (7-5-30 & 7-5-130)

County offices may open for voter registration on any additional days, or hours, if desired. Notice of time and place for these additional hours must be publicized in a newspaper of general circulation in the county. (7-5-140)

Voter registration drives throughout the county should be conducted in each county as often as time and money permit and properly trained personnel are available. Registration drives should be conducted by people who are well-trained and knowledgeable in all phases of registration procedures. Persons conducting voter registration drives must provide completed voter registration forms to the Board immediately.

Boards may cross adjoining county lines to register qualified electors if those electors work in the adjoining county, and are unable to come to their county office during normal office hours. (7-5-30)

## 3.2 Additional Voter Registration Sites

The NVRA provides for voter registration services at the following locations:

- Department of Motor Vehicles.
- Department of Social Services.
- Department of Disabilities and Special Needs.
- Department of Health and Environmental Control - WIC Program.
- Vocational Rehabilitation.

- Commission for the Blind.
- Department of Alcohol and Other Drug Abuse Services.
- Department of Mental Health.
- Department of Health and Human Services.
- S.C. Protection and Advocacy System for the Handicapped.
- Armed Forces Recruitment Offices.

Personnel in the above listed agencies are required to ask all customers/clients: "If you are not registered to vote where you live now, would you like to register here today?" Personnel must provide the same level of assistance in completing the voter registration application as they would in completing their own agency's forms.

City Halls and libraries are not required to ask all clients if they would like to register; however, they may provide voter registration by mail applications. Boards should assure that voter registration applications are available at these locations.

Online registration is available at SCVotes.org for citizens with driver's licenses or DMV issued ID cards. Registration by mail applications are also available for download on the Internet at www.scvotes.org for citizens who prefer to mail in their information.

## 3.3 Agency Based Voter Registration Applications

All agencies providing voter registration services under the National Voter Registration Act (NVRA) use an agency-based voter registration application with the exception of the Department of Motor Vehicles (DMV). DMV uses a similar application which is partially produced and printed in the DMV office.

Agency-based voter registration applications are produced by the SEC and distributed to a central location for each agency.

## 3.4 Deputy Registrars

The Board may appoint, and determine the terms of, as many deputy registrars as necessary. The deputy registrars have the same powers and duties as regular members of the Board. The clerk to each Board may be made a deputy registrar for the purpose of taking applications. (7-5-20)

Prior to their appointment, deputy registrars should be trained in their duties and responsibilities in properly completing voter registration forms. The SEC has

prepared and distributed a Certificate of Appointment for Deputy Registrars. This form should be completed and issued to each deputy upon appointment.

Because of registration by mail and voter registration drives deputy registrars are not used very often; however, the law still provides for deputy registrars.

## 3.5 Voter Registration Cut-Off Date

The last day for voters to register and be eligible to vote in a particular election is 30 days before the date of the election.

- In-person registration: For Tuesday elections, the practical deadline is usually 5:00 p.m. on the Friday before the 30-day deadline, unless the county board holds additional weekend hours.

- Online, email and fax: Applications must be received by 11:59 p.m. on the 30th day prior to the election.

- By mail: Applications must be postmarked by the deadline, or if the deadline is a weekend or holiday, by the next business day the post office is open after the 30th day before the election. If there is no post mark, it must be accepted if received within five days of the registration deadline. Any VR card issued during the 30-day period before an election should include an insert letting the voter know they cannot vote in any election for a 30 day period or with other similar language.

Voters who register after the 30 day cut off will not appear on the voter registration list for the upcoming election, but will be allowed to vote in elections 30 days after the date of the registration.

## 3.6 Registration for 17-Year-Old Residents

Any person who will become age 18 on or before the date of the next election may register to vote beginning 120 days prior to the last day to register for the election or beginning 120 days prior to the last to register for the primary, whichever is earlier. Voters who will be age 18 on or before the General Election, are eligible to register and vote in the primary election (7-5-180). When voter registration lists are produced for a Primary, any voter who will be 18 at the time of the General Election associated with the Primary will appear on the list.

## 3.7 Registration in a New County

Registered voters who move to another county within the state must register in their new county. When the Board enters the voter's information into VREMS, the system will automatically search for the previous voter registration record by social security number and date of birth. If a duplicate is found, the previous registration record will automatically carry forward to the new county. Both the social security number and date of birth must match in order for the record to carry forward. All address, status and voting history information on this voter record will be retained with the new record. The date of registration must be changed to reflect the date of application in the new county. A new paper VR card without a photo must be printed and mailed to the voter as the notification of registration.

It is not necessary to send a new plastic VR card with a photo since the name of the county is not printed on the card. The voter may continue to vote using the VR card with a photo obtained in their original county.

## 3.8 Duration of Registration

All voters remain permanently registered unless their name is removed from the active voter registration list for a legitimate reason (7-5-160) (e.g., established residency outside of county, convicted of felony, requested to be removed from VR list, deceased). Registered voters cannot be removed from the active voter registration list solely for their failure to vote or for moving within the county and not updating his address.

Voters who fail to vote may be sent a confirmation card and may eventually be made "I-F, Failed to Respond," then could eventually be archived. If an I-F voters shows up at the polls but has done nothing to lose their voter registration status, the voter must be allowed to vote. If an I-M voter appears at the polls and indicates they have remained a resident of the county since their original registration and have done nothing else to lose their voter registration status, the voter must be allowed to vote. In other words, I-M and I-F voters have been made inactive because there is a strong indication that these voters have done something to lose their voter registration status, but after positive confirmation from the voter that they have not, they will be returned to active status and allowed to vote.

## 3.9 Qualification for Voter Registration

All South Carolina residents registering to vote must meet the following qualifications:

- Be a citizen of the United States of America.

- Be 18 years of age (Become 18 on or before the next election).
- Not laboring under disabilities named in the South Carolina Constitution.
- Be a resident of South Carolina and reside in the county and polling precinct where the voter wishes to register.
- The address they list is their only legal place of residence, and they do not claim any other address as their legal residence
- Not under a current court order declaring the voter mentally incompetent
- Not be confined in any public prison resulting from a conviction of a crime.
- Not been convicted of a felony or any offense against the election laws, unless the voter has served his entire sentence, including probation and parole time, or has received a pardon. (7-5-120)

## 3.10 Definition of Domicile

Domicile is defined as person's fixed home where he has an intention of returning when he is absent. A person has only one domicile. For voting purposes, a person has changed his domicile if he has abandoned his prior home and has established a new home and has a present intention to make that place his home with no intention to leave. For voting purposes, a spouse may establish a separate domicile. Factors to consider in determining a person's domicile include the voter's: (7-1-25)

- address reported on income tax returns
- real estate interests, including the address for which the legal residence tax assessment ratio is claimed pursuant to Section 12-43-220(c)
- physical mailing address
- address on driver's license or other identification issued by DMV
- address on legal and financial documents
- address used for educational purposes, such as public school assignment and determination of tuition at institutions of higher education
- address on automobile registration
- address utilized for membership in clubs and organizations
- location of personal property
- residence of parents, spouse, and children

- temporary relocation due to medical care for the voter or a member of the voter's immediate family.

## 3.11 Voting by Proxy/ Power of Attorney

State law has no provision that allows anyone other than the voter to sign or mark voter registration forms or voting documents. These documents include, but are not limited to, voter registration applications, poll lists, absentee ballot applications, and absentee ballot envelopes (See 29 C.J.S. Elections, Section 321, Proxy Voting below).

**29 C.J.S. Elections, Section 321, Proxy Voting**: "Voting is generally held to be a personal act which cannot be performed by an agent. While the legislature may have the power to extend to voters the right or privilege of voting by proxy, it will not be deemed to have done so in the absence of a clear provision to such effect, and in the absence of such provision, the courts will enforce the common-law rule which regards voting as a non-delegable, personal trust that cannot be exercised by proxy..."

## 3.12 Confirming Voter Qualifications

County Boards are the judges of the legal qualifications of all applicants for registration. The Board may require proof of these qualifications as it considers necessary. (7-5-230)

### 3.12.1 Voter Registration Challenges

Any person may challenge a voter's registration qualifications to the Board. The challenge must be made in writing to the Board. Within 10 days, and after first giving notice to both the voter and the challenger, the Board must hold a hearing. At the hearing the Board must accept evidence and rule on whether the voter meets or fails to meet the registration qualifications. The Board should obtain a court reporter for the hearing. The Board should notify the voter and the challenger in writing of their decision.

At the hearing, the Board may consider the provisions of Section 7-1-25(D) definition of domicile, when regarding the residence or domicile of the voter. (7-5-230)

### 3.12.2 Appealing a Board Decision

Any person denied registration or restoration of his name to the voter registration database has 10 days, after the written notification of the denial, to appeal the decision of the Board. If the voter wishes to appeal the Board's decision, the voter must first file a notice of intention to appeal with the Board. Within ten days after the filing of such notice of intention to appeal, the Board must file with the clerk or court of common pleas for the county the notice of intention to appeal and any papers in its possession relating to the case, together with a report of the case if the Board deems proper. If the person wishes for the appeal to be heard by a judge at chambers, the Board must be given four days written notice of the time and place of the hearing. On such appeal the hearing shall be de novo. (7-5-240)

If an applicant wishes to appeal the decision of the court of common pleas to the Supreme Court, he must within 10 days of the written notification of the court's decision file a written notice of his intention to appeal with the office of the clerk of the court of common pleas of the county. The applicant must also within 10 days file the same notice with any member of the Board. The clerk of court of common pleas files the appeal and associated paperwork with the clerk of the Supreme Court. The Supreme Court is required to hear the case before any election in which the applicant would be entitled to vote if registered. (7-5-250)

## 3.13 Identification for Those Registering In-Person

The SEC recommends that Boards accept the same types of identification for voters registering to vote in person as are required under the Help America Vote Act of 2002 for registering to vote by mail. The following is a recommended list of acceptable IDs:

- A current and valid photo identification
- A current utility bill listing name and address
- Bank statement listing name and address
- Paycheck listing name and address
- Government document listing name and address

## 3.14 Identification Required to Vote

Voters are required to present one of five types of photo identification in order to vote in person at the polling place or absentee precinct. Voters who forget to bring their photo ID to the polling place may vote a provisional ballot that will not count unless the voter shows the photo ID to the Board prior to certification of the election. Voters

who cannot get a photo ID may vote with their paper VR card without a photo after signing an affidavit attesting to their identity and to having a reasonable impediment to obtaining a photo ID. This identification requirement is printed on the paper VR card without photo. Voters registering in person should be reminded of this requirement and offered a VR card with photo if they do not currently have one of the qualifying photo IDs. The following five forms of ID are acceptable for purposes of voting:

1. South Carolina driver's license
2. South Carolina ID card with photo issued by DMV *(Free of charge for persons older than 17)**
3. South Carolina voter registration card with photo
4. Military ID issued by the Federal Government**
5. United States Passport ***

* This includes the South Carolina Concealed Weapons Permit. (2016 AG Opinion)

** This includes all IDs issued by the U.S. Department of Defense to active personnel, retired personnel, spouses, dependents, civilian employees, contractors, visitors, etc. The Department of Veterans Affairs card is also considered a federal military ID under State law. (*AG opinion 2013)*

*** This includes both the booklet style U.S. Passport and the U.S. Passport card.

# 3.15 Voter Registration Applications – In Office

The SEC prepares and distributes "in office" voter registration applications to the Boards. This form is used only within the voter registration office by members of the Board and its deputy registrars.

Voter registration applications should be completed by a Board member, deputy, or clerk, rather than the voter. Every item on the application must be completed. When completed, the applicant should verify that all information on the application is correct. If the applicant is blind or illiterate, the application should be reread to him/her to verify all information is correct. If all information is correct, the applicant must sign the application in the presence of a board member, deputy member, or clerk.

All information from the voter registration application must be entered into VREMS and the voter registration number recorded on the application. This application must then be scanned or filed as part of the voter's permanent record.

The Board must notify the voter that one of five qualified photo ID's *(See section 3.14 )* is required to vote in-person at the Absentee precinct or their polling place. If the voter has one of the five IDs, the Board should print a standard VR card without photo unless the voter requests a photo VR card. If the voter does not have one of the five IDs, the Board must take a photograph of the voter, electronically attach the photo to the voter's record in VREMS, print a temporary VR card with a photo, and submit the information to the SEC so that a permanent VR card can be produced. This permanent VR card is printed by the SEC and mailed to the Board for mailing to the voter.

## 3.16 Motor Voter Registration

The majority of voters in the State are registered through NVRA Motor Voter agencies listed in Section3.2 3.2 Additional Voter Registration Sites. Electronic records of these requests are transmitted on a weekly basis into VREMS. In February 2019, DMV began sending an electronic signature with each voter record. The Board will process these requests upon receipt and a copy of the signature and application is stored on the voter record. For all other NVRA Motor Voter agencies, the Board will process these requests when the paper copy, signed by the voter, is received. Processing includes transferring the electronic record into an active voter record, verification that the voter is qualified, and printing of the VR card.

## 3.17 Voter Registration by Mail

South Carolina law allows voters to register to vote by mail. The Board must receive this application no later than 30 days prior to any election. If the postmark date is 30 days prior to the election, the person should be registered. If the application is received within 30 days, but is postmarked 30 days prior to the election, the postmark date would be listed as the date of registration.

If the application is not postmarked, and it is received no later than 25 days prior to the election, the person should be registered.

A registration by mail application must be rejected for any of the following reasons:

- Any portion of the application is not completed.
- Any portion of the application is illegible in the opinion of a member and clerk of the Board.
- The Board is unable to determine, from the address stated on the application, the precinct or election district in which the voter should be assigned.

Any person whose application is rejected must be notified in writing and must be given the reason for rejection. The applicant must also be informed of the right to register by appearing in person before the Board, or by submitting the information necessary to correct or complete the application.

If the Board determines that the applicant is qualified, and the application is legible and complete, the Board will mail the voter a VR card without requiring the voter to sign anything in the presence of a member of the commission, deputy member, or clerk. See the section titled "Additional ID Required When Registering to Vote by Mail".

Information printed on the paper VR card will inform the voter that one of five forms of qualifying ID *(See section 3.14 )* is required to vote at the Absentee precinct or the voter's polling place. If the voter does not have one of these acceptable forms of photo ID, they may obtain a free ID card from DMV or a VR card with photo in-person at the voter registration office.

The SEC provides voter registration by mail applications for distribution. This form is also available for download at www.scvotes.org. (7-5-155)

## 3.17.1 Voter Registration by Fax & Email

Boards may also accept voter registration by mail applications via fax and email.

This policy was instituted in May 2009 after a review of the state Uniform Electronic Transactions Act of 2004. This act provides that records may be received through electronic means to establish the legal effect of records required by law to be in writing. A 2009 S.C. Attorney General's Opinion confirms the Act applies to voter registration applications.

Receiving voter registration applications via fax and e-mail:

- Original applications must be fully completed, containing all required information including the signature of the voter. The information cannot simply be entered into the body of an email or fax cover sheet.
- To register to vote, a citizen would download a VR application from SCVotes.org, print the application, and complete the application. The citizen may then either fax the application to their county office, or scan the application and attach it to an e-mail before sending it to the county Board e-mail address.
- Each county must designate specific fax and email accounts to receive such transmissions. Only those transmissions delivered to the designated account should be accepted.

### 3.17.2 Additional ID Required When Registering To Vote By Mail, Fax, & Email

HAVA requires an individual registering to vote by mail, who has not previously registered in the county, to submit a copy of one of the following forms of identification:

- A current and valid photo identification.

**OR**

- A current utility bill.
- Bank statement.
- Paycheck.
- Government document.

All identification, other than the photo ID, must show the current and correct residential address of the voter. The photo ID need only show the voter's name and picture.

If this identification is not provided with the application, the voter registration office should include a specific request for identification when mailing the VR card. Enclosed with the VR card should be a notice for the voter to provide the office with a copy of one of the above listed forms of identification prior to election day. This notice should also include a statement that if the voter does not provide this identification prior to election day, the voter will be required to provide this identification at the polls prior to voting.

Voters who do not provide this proof of identification when registering to vote, or prior to election day, will be required to provide this ID at the polls prior to voting. This identification is in addition to the identification necessary to vote.

Identification requirements do not apply to UOCAVA citizens registering to vote using the Federal Post Card Application, citizens age 65 or older, or disabled citizens.

### 3.17.3 National Voter Registration By Mail Application

South Carolina also recognizes and accepts the National Voter Registration by Mail Application. This form is useful when registration drives are held at colleges and universities or conferences where attendees may be from other states.

## 3.18 Voter Registration Online

Citizens with a valid South Carolina driver's license or DMV issued ID card may register to vote online at www.scvotes.org. The person's identity is confirmed by SSN, driver's license number, and date of birth. Using the person's current* DMV record, personal information is transmitted electronically to VREMS for processing. Once processed, the Board must mail the voter a paper VR card without a photo.

*The voter will be registered at the address listed on the DMV record. If this address is incorrect, the voter must first change their address on the DMV record and then register to vote.

## 3.19 Registration for Military & Overseas Citizens

According to the federal Uniformed and Overseas Absentee Voting Act (UOCAVA), military and overseas citizens may register to vote using the Federal Post Card Application (FPCA), also known as Standard Form 76, as well as the Federal Write-in Absentee Ballot (FWAB).

The following persons are eligible to register via the FPCA and FWAB (7-15-110):

- Members of the United States Armed Forces
- Members of the United States Merchant Marines
- Persons serving with the American Red Cross or the U.S.O. attached to and serving with the United States Armed Forces outside of the county of their residence in South Carolina
- Members or employees of any department of the United States government serving overseas
- United States citizens residing outside the U.S.:
    - (a) Who last resided in S.C. immediately before leaving the U.S.
    - (b) Who is a child of citizens who last resided in S.C. immediately before leaving the U.S., but the child has never resided in the U.S.
    - (c) Who has met all qualifications to vote in federal elections in South Carolina even though while residing outside the United States does not have a place of residence in South Carolina. If the intent to return to South Carolina may be uncertain, the citizen must meet all state qualifications and requirements established in the Uniformed and Overseas Absentee Voting Act (UOCAVA). Public Law 99-410

Persons listed above, their spouses and dependents residing with them may register using the FPCA or FWAB.

The Board must receive this application no later than 30 days prior to any election. If postmark date is 30 days prior to the election, the postmark date should be used as the date of registration.

# 3.20 Notice of Disposition of Application

The NVRA requires that all persons who apply to register to vote be notified of the outcome of their application. If the application is approved, the VR card serves as the notice of outcome. If the application is not approved, the Board must complete the Notice of Disposition of Application postcard and send it to the applicant.

# 3.21 Student Registration

Students may register to vote where they attend college if that is where they reside. Residency is defined in Section 7-1-25. (see 3.20)

An Informal Opinion of the S.C. Attorney General dated October 16, 2001 provides guidance for student registration (emphasis added):

> "…**A student cannot be held to a higher standard of residency than any other applicant.** However, just as in any other case in which the local board questions the qualifications of the voter, the board can inquire further to ensure that the student meets the residency requirements of Section 7-1-25…"
>
> "…We would caution against one practice… **A student applicant should not be denied registration solely because the student lists a dormitory as his address.** This practice has been challenged in other jurisdictions and struck down as violative of the U.S. Constitution. While this fact may be a basis for further investigation by the voter registration board, a student certainly may live in a dormitory and satisfy the requirements of Section 7-1-25…"
>
> "…The statutory inclusion of the definition of domicile in Section 7-1-25 reflects a change in S.C. law toward a less stringent standard of residency for applicants. As always, the intent of the applicant is critical for determining residency. However, as opposed to the previous standard, in which the applicant must have intended to remain in the community permanently or indefinitely, **the standard now requires the applicant to have only a present intention to remain in the community.** With respect to college students, we would expect the statutory amendment to reduce barriers to registration…"

Many Boards accept as proof of residence any one of the additional ID documents for mail-in voter registration applications listed in the Help America Vote Act of 2002. This list appears on the mail-in voter registration application:

"…a copy of a current, valid photo ID or a copy of a current utility bill, bank statement, paycheck, or other government document that shows your name and address in this county."

Many college students who live on campus receive their mail at a campus post office box. These students must register at the physical address of their dormitory. The student's P.O. Box can be provided for mailing and contact purposes.

## 3.22 Registration of Discharged Military

Any person who has been discharged or separated from service in the United States Armed Forces and returned home too late to register may register to vote at the county office, up to 5:00 p.m. on the day of the election. At that time, the voter will be given a registration notification and a statement to the managers of the precinct in which the voter is entitled to vote allowing the voter to cast a ballot. (7-5-150)

## 3.23 Registering Homeless Persons

Being homeless does not deem an individual ineligible to vote. Homeless persons must register at the place that best fits the definition of "domicile," "a person's fixed home where he has an intention of returning when he is absent" (S.C. Code of Laws § 7-1-25(A)). Though not a traditional residence (such as a house), the following satisfy the requirements to be a domicile: in a homeless shelter, at a relative's house where the homeless individual frequently visits even though he may not sleep there, or any other place whether or not it has a street address. If the voter registers at a place that does not have an address at which the voter can receive mail, the county office should have the voter provide an address at which he can receive mail. Therefore, the place an individual calls "home" is irrelevant to his eligibility to vote (10-27-1992 AG Opinion).

## 3.24 Conviction Procedures

Pursuant to § 7-3-20 and 7-3-60 of the Code of Laws of South Carolina, the SEC receives information regarding persons convicted of felonies or crimes against the election laws from various sources, including:

- S.C. Court Administration

- U.S. Attorney's Office
- U.S. Department of Justice
- U.S. Federal Courts

**Voter Removal due to Conviction**

When the Voter Services division receives the conviction file from SC Court Administration, the following steps are taken to place the voter in the status of "inactive due to a conviction":

- The conviction file is compared to the VREMS database of voters
- Voters who match are given the status of inactive due to a conviction
- Convicted felons are notified by letter that their status has been changed. A copy is also forwarded to the Board.

Voters with this status are not printed on any election lists and will not be allowed to vote until they have served their sentence including all probation and parole time. A person placed on Administrative Monitoring with the Department of Probation, Parole and Pardon Services is deemed to have completed his or her sentence.

**Re-registering voters after Conviction Removal**

The following process should be followed for a voter who desires to register to vote after being removed due to conviction. The voter must have served the entire sentence for the conviction, including probation and parole:

- The voter must submit a current voter registration application to his county Board.
- The Board makes the final determination of whether a voter is eligible to re-register.
- The Board may ask a voter for proof if the Board has reason to believe the voter has not completed his sentence.
- If the Board determines that a voter is qualified to register, the voter should be entered into VREMS with a current registration date.
    - If a voter's archived record is available in VREMS, the Board must reinstate the voter record and update the registration date to the date of the new application. If the voter's address has changed, the Board should enter the new address in the voter's record.

Note on Administrative Monitoring

Administrative monitoring is program administered by the S.C. Department of Probation, Parole and Pardon Services (DPPPS). Individuals placed on

administrative monitoring have completed their sentence and are eligible to register and vote under State law, unless otherwise disqualified.

One of the statutory conditions for placement in the administrative monitoring program is completion of the individual's term of supervision (e.g., probation, parole, community supervision, etc.). S.C. Code §§ 24-21-5(1), 24-21-100. By completing their term of supervision, such individuals have served their sentence "including probation and parole time" for purposes of S.C. Code § 7-5-120(B)(3). Accordingly, an individual convicted of a felony or offense against the election laws becomes eligible to register and vote, if not deemed ineligible for disqualified for any other reason, upon placement on administrative monitoring with DPPPS.

Questions Regarding Conviction Status

As the state agency responsible for the supervision of individuals serving their convictions and sentences outside of the state's prison system, DPPPS is the authority on such matters and is in the best position to make determinations regarding an individual's conviction or sentence. Thus, questions regarding an individual's conviction or sentence in the context of eligibility to register or vote should be directed to the respective probation, parole and pardon services office in your county, and deference should be given to their determinations on such matters.

# 3.25 Voter Registration Notification

After the voter's information is entered into the voter registration system, the voter's paper VR card (notification of registration) will print in the county office. VR cards may be given to voters if they are present at time of issue, when called for at the office, or by mail.

If the voter is present at the county office, a photograph should be taken of the voter. This photograph is electronically attached to the voter's record and also printed on their voter VR card. A paper VR card with photo is printed at the county office and a plastic VR card is sent to the print queue in VREMS to be printed later at the SEC. If the voter cannot be photographed, for religious reasons, a VR card without photo may be printed at the county office and given to the voter. *(See PRO 2013 – Issuing Voter Registration Cards with Photographs)*

Deputy members or clerks, who have been officially deputized, have the same powers and duties as regular Board members and are authorized to sign the VR card. Only one Board member is required to sign the VR card. The signature of the Board Director is stored electronically in VREMS and is printed on the VR card for all voters.(7-5-200)

Larger quantities of paper VR cards are printed at DSIT in Columbia. To submit a request, you must fill out the Voter Registration Request form and submit to the SEC.

These VR cards are frequently printed when an entire precinct or district of voters' VR cards needs to be re-printed.

## 3.26 Duplicate Social Security Numbers

When a voter is added to VREMS, the system automatically checks the SSN to determine if the number is already in use. If this number is in use by another voter, the Board must take action to determine if there is a typographical error or illegal use of a SSN and correct the issue. If the number is in use by the same voter, who is registered in another county, the system will allow the Board to transfer the voter's record to the current county and change the address to an in-county address.

## 3.27 Moving From One Precinct to Another within a County

Voters who move from one precinct to another within the same county must update their address with the Board and surrender their VR card.

The Board should update the voter's address in VREMS and issue the voter a new VR card with the same registration number. (7-7-940)

## 3.28 Registrants Previously Registered in another State

When a new voter registers, who was previously registered in another state, the Board must record the previous state (two character code) in VREMS. On a monthly basis, the SEC will send a report to each state with the names of people who were registered in their state but have moved to SC.

It is no longer necessary to complete the cancellation notice and mail it to the location of previous registration.

## 3.29 Physically Disabled or Illiterate Persons

Individuals who are unable to read or write because of physical disability or illiteracy may sign the application by marking the application in the presence of a clerk or Board member. (7-5-210)

## 3.30 Reissue of Lost, Defaced, or Destroyed VR Cards

A voter is entitled to receive a duplicate copy of their VR card without charge when the VR card is lost, defaced or destroyed. A voter may request a duplicate VR card from their Board in person, by mail or by telephone. When requesting a duplicate, the voter may provide the old VR card, a valid photo ID, or verbally identify themselves by providing their name, birth date, and last 4 digits of their SSN.

When a voter requests a duplicate VR card by mail, the Board should compare the signature on the request against the signature on the original voter registration application to ensure that they are the same before issuing the duplicate VR card.

Duplicate VR cards may be issued at any time.

## 3.31 Voter Registration Records

Voter registration records are public information, except for social security numbers, phone numbers and locations of registration. Social security numbers, phone numbers and locations of registration should be redacted when providing voter registration records to the public.

Voter registration records stored in VREMS contain voter details, current and previous address, current and previous statuses, current and previous name, voting history, voting districts, precinct and polling location, notes, and electronically attached documents.

All voter registration applications are permanent records of the Board. These applications should not be removed from the office by anyone except the Board (7-5-410). County offices may now store voter registration documents electronically without having to retain paper copies (S.C. Uniform Electronic Transactions Act of 2004).

Electronic storage of applications:

- All voter registration applications must be retained in the office indefinitely, either electronically or in paper format, and be accessible for reference.

- A Board may scan all applications and related documents (change of address forms, etc.) to eliminate the physical storage space required for paper documents. If the Board does so, a second electronic copy of the records should be stored at an off-site location in case of catastrophic data loss. If the Board is not comfortable with shredding or otherwise destroying the paper record after it has been scanned, it is acceptable to store the paper record at an off-site location.
- Applications and change of address forms should be scanned into VREMS and stored with the electronic voter record.
- If the Board chooses to destroy the original VR applications, they must first comply with Information Leaflet #13. This leaflet is produced by the S.C. Department of Archives and History (SCDAH) and is available from the SCDAH website at http://arm.scdah.sc.gov/.
- After complying with Leaflet #13, the Board must complete form ARM-13 and submit the form to the SCDAH for approval. Form ARM-13 is also available at http://arm.scdah.sc.gov/. **Original VR applications may not be destroyed until SCDAH approves the ARM-13.**

# 3.32 Auditing and Statistical Reports

Reports are produced in VREMS on a yearly, quarterly, monthly, weekly and as needed basis. Most reports are produced in real time, however, several complicated reports are produced at pre-determined intervals but are available for viewing at any time. These reports include county and precinct listings of the number of registered voters by race, sex, age, and elected office districts; weekly audit information listing transactions made to VREMS during the weekly period; motor voter registration reports; and voters with duplicate social security numbers. Reports such as audit information and motor voter records should be reviewed by the Board on a regular basis.

# 3.33 Establishing Elections

By February 15th of each year, county boards must enter all election details for all regularly-scheduled elections in the current calendar year into VREMS using the Establish Election feature. For special elections and any regularly-scheduled elections that occur early in the calendar year, counties must establish the election in VREMS no later than 60 days prior to the date of the election. Election names must meet the naming standards documented in the VREMS/EIF Election Naming Standards Reference Guide. VREMS will automatically assign a unique election number. This election number, along with the election name, will be used throughout VREMS for anything related to the election.

The Election Information Form (EIF) can be printed from the Election Details screen and used by State Election Commission staff to build the election in Unity.

# 3.34 Voter Registration Lists

## 3.34.1 Official Voter Lists for Primary, General, Special & Municipal Elections

At least one week prior to each primary, general, or special election, the SEC provides a printed voter registration list to the Board. (7-5-430) All voter registration lists contain the names of active voters and voters with inactive statuses of moved, left the county, and failed to respond to a confirmation mailing. Inactive voters are appropriately marked with IM, IL, or IF.

At least one week prior to each municipal election the SEC provides a printed voter registration list of all registered voters in each precinct or ward of the municipality to the municipal election commission. (7-5-430 and 7-5-660) All voter registration lists contain the names of active voters and voters with inactive statuses of moved, left the county, and failed to respond to a confirmation mailing. Inactive voters are appropriately marked with IM, IL, or IF.

An electronic copy of the voter registration list is also produced one week prior to each primary, general, municipal, or special election and is available for download through VREMS. This electronic copy is used with the Electronic Voter Registration List (EVRL) available on laptop computers for poll managers to use on Election Day.

The names of voters who have been issued an absentee ballot will be marked with an "ABS" on the printed and electronic versions of the voter registration list.

The names of voters who registered by mail and did not provide required identification will be marked with an "ID" beside their names. These voters are required to provide additional ID at the time of voting. See "Additional ID Required When Registering To Vote By Mail."

## 3.34.2 Custody of Lists and Return After Election

The Board will maintain custody of the voter registration lists prior to each election. The voter registration lists are provided to the managers of election of each precinct. These managers are responsible for the care and custody of the lists until election night. (7-5-430).

The Board should return the used printed or electronic voter registration list within two weeks after the election to the SEC. After voter history has been captured from the list and recorded in VREMS, the list will be stored temporarily at the SEC before being sent to the State Records Center. The lists are ultimately transferred to the S.C. Department of Archives and History for permanent storage.

# 3.35 VREMS System Codes

## 3.35.1 Gender

Female
Male
Unknown

## 3.35.2 Race

Black/AA
White
Asian
Hispanic
Native American
Multiple
Other

## 3.35.3 Voter Status

Active
Inactive
Archived

## 3.35.4 Status Reason

**Note:** All statuses start with the status (e.g., inactive) and are followed by the status reason (e.g., moved).

| Reason | Description |
|---|---|
| Deceased | Voter is deceased |
| Convicted | Voter has been convicted of a felony or election law violation |
| Failed to Respond | Voter failed to respond to an NVRA confirmation card mailing |
| Hold | Voter record is in hold status because a new VR card was returned |
| Moved | Information has been provided that this voter moved |
| Written Request | Voter requested, in writing, to be removed from the list of active voters |
| Moved out of County | Information has been provided that the voter moved out of their county of residence. *This reason is noted as IL on all reports and voter registration lists.* |
| Registered in another State | Voter discovered to be registered in another state. *This reason is noted as IL on all reports.* |
| Other | Voter record was made inactive for a peculiar reason not noted above. This reason is very rare. |
| Archived | Voter record was archived based on inactive status for a designated period of time. |
| Reinstated | Inactive voter reinstated to active status |

### 3.35.5 Election Type & Level

The category of **Type** is used by VREMS to determine which layout of the printed and electronic voter registration lists should be used and if elections are associated with each other.

| Type | Associated Level |
|---|---|
| General | Statewide Partisan (Statewide General Elections)<br>Municipal Partisan<br>Municipal Nonpartisan<br>County-Level Partisan<br>County-Level Nonpartisan |
| Primary | Statewide Partisan (Statewide Primaries)<br>Municipal Partisan<br>Municipal Nonpartisan<br>County-Level Partisan<br>County-Level Nonpartisan<br>State-Level Partisan |
| Referendum | |
| Special | Municipal Partisan<br>Municipal Nonpartisan |

| | |
|---|---|
| | County-Level Partisan<br>County-Level Nonpartisan<br>State-Level Partisan |

### 3.35.6 Election Level

### 3.35.7 Election Level is used to indicate the geographical area in which the election encompasses and whether the election is partisan or nonpartisan.County Codes

| CODE | COUNTY | CODE | COUNTY |
|---|---|---|---|
| 1. | Abbeville | 24. | Greenwood |
| 2. | Aiken | 25. | Hampton |
| 3. | Allendale | 26. | Horry |
| 4. | Anderson | 27. | Jasper |
| 5. | Bamberg | 28. | Kershaw |
| 6. | Barnwell | 29. | Lancaster |
| 7. | Beaufort | 30. | Laurens |
| 8. | Berkeley | 31. | Lee |
| 9. | Calhoun | 32. | Lexington |
| 10. | Charleston | 33. | McCormick |
| 11. | Cherokee | 34. | Marion |
| 12. | Chester | 35. | Marlboro |
| 13. | Chesterfield | 36. | Newberry |
| 14. | Clarendon | 37. | Oconee |
| 15. | Colleton | 38. | Orangeburg |
| 16. | Darlington | 39. | Pickens |
| 17. | Dillon | 40. | Richland |
| 18. | Dorchester | 41. | Saluda |
| 19. | Edgefield | 42. | Spartanburg |
| 20. | Fairfield | 43. | Sumter |
| 21. | Florence | 44. | Union |
| 22. | Georgetown | 45. | Williamsburg |
| 23. | Greenville | 46. | York |

# 4. Voting Locations / Precincts

## 4.1 Where Voters Vote

Each precinct is assigned a specific polling place at which voters must vote in each election (7-7-910). Boards establish polling places according to the provisions in the particular county's section of Chapter 7 of Title 7 of the S.C. Code of Laws (Sections 7-7-30 through 7-7-530). Most counties require approval of a majority of the county legislative delegation.

Boards may establish several polling places within a precinct. Voters in the precinct must be assigned to these locations alphabetically or geographically as determined by the Board and approved by a majority of the county legislative delegation. The voter must be notified in writing of the change and the location of the new polling place. (7-7-10)

The voter's polling place location is printed on the voter's registration card.

## 4.2 Voter's Change of Address

Voters may request that their address be changed by presenting their VR card with the new address on the back, completing a new VR application, in person, online, or by completing a change of address form distributed by the SEC. A sufficient number of change of address forms should be provided to poll managers for use on Election Day.

Poll managers ask each voter if their address is correct as shown on the voter registration list. If a voter's address is incorrect and the voter has moved within the precinct, the voter should complete a Voter's Change of Address Form. If the voter has moved outside the precinct, failsafe provisions apply, and the voter would have multiple options for voting and updating his address. (See "Failsafe" section). Poll managers return change of address forms to the county office after the election, the forms are processed, and the voter's record is updated in VREMS.

Whenever a voter updates his address or other voter registration information (e.g. name change), a new VR card should be issued.

NOTE: Change of address may not be used to go from one county to another. The voter must complete a new voter registration form. The voter's record will be

transferred to the new county in VREMS. The date of registration must be updated to reflect the date the voter registered in the new county.

## 4.3 When New Precincts Are Established

The Legislature has the sole power to create new voting precincts. The Board should request precinct changes be submitted as a bill by the county legislative delegation. At the time when this discussion begins, the Board must notify the SEC of its intention to create new precincts. If the bill is passed by the General Assembly, it becomes law, and the precinct boundaries may be changed(7-7-10).

Once the Act is passed by the Legislature, the SEC, Voter Services Division will help coordinate re-precincting efforts in VREMS by assisting with street record changes, precinct changes, and matching voters to the street file. Any voter moved into a new precinct must be notified of this change by receiving a new VR card (7-7-950).

## 4.4 Transfer of Voters with a Precinct Change

The Board must notify all voters whose precinct has changed by sending them a new notification of registration (paper VR card without photo).

Additionally, any area in the county annexed into a municipality which is divided into wards shall be made part of a ward to which it is contiguous. In the event the annexed area in a municipality divided into wards contains at least 500 qualified electors, the area annexed shall be made a separate ward which must be given a numerical designation. Following annexation, the Board must mail all registered electors of record residing in the annexed area a new VR card.

The envelope in which new VR cards are mailed must have printed on the front "Return Service Requested." Any voter whose VR card is returned because the voter is no longer residing at the address on file, must be noted in VREMS as inactive by selecting the voter record and indicating the reason for record inactivation:

- Returned without forwarding address
- Returned with forwarding address
- Returned as undeliverable

If a voter attempts to vote in an election and is otherwise qualified to vote in the precinct, and the voter's name has been archived solely by reason of the return of notification, the voter's record must be restored to active status in VREMS and the voter allowed to cast a ballot. (7-7-720 and 7-7-960)

**NOTE**: "Return Service Requested" is the current endorsement which replaces both "Address Correction Requested" and "Do Not Forward".

## 4.5 Changing the Polling Place Location

To change a polling place, the Board must:

- Approve the change.
- If necessary, get approval from the county legislative delegation as required by the particular county's section of Chapter 7 of Title 7 of the S.C. Code of Laws (Sections 7-7-30 through 7-7-530).
- Notify each voter in writing of his transfer to a new polling place and the location of the new polling place (7-7-10). This can be done by sending affected voters a new voter registration card or other notification, such as a letter or postcard.
- Enter the new polling place location into VREMS.
- Notify the SEC of the change in polling location. SEC staff will update polling place lists posted at scVOTES.org.
- Post a notice on or next to the entrance door of the previous polling place for the first election held after the change in location. This notice must include the location of the new polling place and the address and telephone number of the Board. The notice must be printed with letters large enough to be read easily by a person with normal vision from a distance of at least 20 feet (7-7-15).

Generally, it is best not to move a polling place. It can create voter confusion. If you have to move a polling place, or are selecting a polling place for a new precinct, some factors to consider are:

- Consistency. Carefully consider any moves and choose places that are likely to be available on all election days for an indefinite period of time. Consider that special elections can occur at any time.
- Geography. Polling places should be central to the population of the precinct.
- Convenience. Polling places should be well-known, easy to find and easy to get to.

- Parking. Make sure there is enough parking for all voters in an election with heavy turnout.
- Accessibility. Polling places must meet the U.S. Department of Justice's polling place accessibility guidelines. For help determining if a polling place meets these guidelines, use the SEC's Polling Place Accessibility Survey Guide.
- Space. The polling place should have adequate space to serve the number of voters registered in the precinct.
- Cost. Consider the ongoing cost of using private facilities that charge a fee.

## 4.6 Barrier–Free Precincts

Each county must provide at least one barrier-free voting precinct with a polling place that is architecturally designed to allow physically disabled voters to vote. (7-7-990)

Any physically disabled voter, despite his place of residence in the county, may vote in this polling place if:

- The voter cannot ambulate without the aid of a wheelchair, leg braces, crutches or a walker, or the elector suffers from a lung disease to such an extent that the voter is unable to walk without the aid of a respirator.
- The voter has applied in writing to the Board 30 days prior to the election, and obtained a voter registration transfer authorizing the voter to vote at the county barrier-free polling place.

An elector whose physical handicap is permanent is not required to request transfer after the initial request.

As soon as possible after the registration books close for an election, the Board should check to see if anyone has requested transfer into the barrier free precinct. If so, the Board will appoint managers for that precinct and supply the correct ballot for each voter who has requested transfer.

## 4.7 Polling Places Used In an Emergency Situation

Each voter shall vote at the designated polling place within the precinct of his residence except during an "emergency situation." An emergency situation means, after the first notice of the election is published, the designated polling place is not available for use as a polling place on election-day.

If a designated polling place is unavailable for use as a result of an emergency situation, the Board shall designate an alternative polling place to be used for the

electors in that precinct. An alternative polling place must be approved by the majority of the legislative delegation if the designation occurs more than seven days prior to the election. If an alternative polling place for an emergency situation is designated seven days or less prior to the election, the Board must notify the members of the legislative delegation of the alternative polling place.

The alternative polling place is not required to be within the precinct of the elector's residence; however, the Board may designate an alternative polling place outside the precinct only if no other location within the precinct is available for use as a polling place. If an alternative polling place is outside the precinct, it must be located in an adjoining precinct. The alternative polling place must be selected with consideration of the distance the electors would be required to travel in order to vote.

Every attempt must be made to notify electors of the alternative polling place before the election and on the day of the election through the media and by posting a notice at the designated polling place.

If an alternative polling place outside of the precinct is selected, the Board shall certify in writing to the SEC that no other location within the precinct is available for use as a polling place and that the selection of a polling place was made with consideration of the distance electors would have to travel to vote.

The Board must also make a change in VREMS to show the name and address of the emergency polling location of any precinct. When the election is over, and the original polling location is available, the Board must change the polling location and address back to its original form.

# 5. Absentee Voting

Absentee balloting in general, special, primary and municipal elections in South Carolina is mandated by 7-15-390.

Each county must establish an absentee voting precinct in the Board office. The Board, municipal election commission or executive committee of each municipal party in municipal primary elections is responsible for the tabulation of ballots and reporting of results in the absentee voting precinct.

## 5.1 Providing Absentee Ballots

For general, special and primary elections, The Board will provide a sufficient number of paper absentee ballots **not to exceed 15%** of the number of registered voters in that county or district. (7-15-360) These ballots are mailed to voters who requested to vote by mail.

The municipal election commissions of each municipality holding an election, or the executive committee of a municipal party holding a primary must, prior to such election, provide the Board a sufficient number of ballots, envelopes and instructions not to exceed 15% of the number of registered voters in the municipality. They must also supply sufficient postage to allow the Board to mail the ballots to those voters wishing to vote by absentee ballot. (7-15-365)

The Board must also provide a sufficient number of voting machines, containing all possible ballot combinations for the election, for use by in-person absentee voters at the absentee precinct.

## 5.2 Blank Absentee Ballots

The law requires that the Board provide a blank ballot if the regular absentee ballots are not yet available. The blank ballot must allow the voter to write in the following:

- Name of candidate(s).
- Selection of party, if voter wishes to vote a straight party ticket.
- Support or opposition of any ballot measure.

Local Boards may design their own ballots or make copies of the ballot originals for this specific use. (7-15-360, 7-15-365, 7-15-370)

# 5.3 Voters Qualified to Vote by Absentee Ballot

A voter must meet any one of the following 15 qualifications to vote an absentee ballot (7-15-320):

1. Students, their spouses and dependents residing with them.

   The term "students" defines all persons residing outside their county of residence who are enrolled in an institution of learning.
2. Members of the Armed Forces and Merchant Marines, their spouses and dependents residing with them.
3. Persons serving with the American Red Cross or with the United Service Organizations (USO) who are attached to and serving with the United States Armed Forces, their spouses and dependents residing with them.
4. Voters who, because of their employment obligations, will be absent from their county of residence on election day during the hours the polls are open and will be unable to vote in person, or those persons who are required by their employment obligations to be at their place of employment in their county of residence during the entire hours that the polls are open (7:00 a.m. - 7:00 p.m.) and will be unable to vote in person.
5. Voters who, because of injury or illness, cannot be vote in person in their polling place on election-day.
6. Government employees, their spouses and dependents residing with them, who are out of their county of residence on election-day.
7. Voters with a death or funeral in the family within a three day period prior to the election.
8. Voters on vacation (who because of vacation plans will be absent from a county of residence on election-day).
9. Poll managers, certified poll watchers, county voter registration board members and staff, and county election commission members and staff working on election-day.
10. Overseas citizens.
11. Voters who are attending sick or physically disabled persons.
12. Voters admitted to hospitals as emergency patients on the day of election or within a four-day period before the election.
13. Voters who will be serving as jurors in a state or federal court on election-day.
14. Voters 65 years of age or older.
15. Voters confined to a jail or pre-trial facility pending disposition of arrest or trial.

# 5.4 Requirement for and Time of Application

Voters wishing to vote absentee must complete an absentee ballot application which attests, by voter signature, that the voter is eligible to vote in the election. This application is printed through VREMS and contains information pertinent to the election. Voters may request an absentee ballot from their Board anytime during the calendar year in which the election is to be held. If the ballot is to be mailed to the voter, the Board must receive a completed application no later than 5:00 p.m., four days before the election.

> *Note: While state law requires the absentee precinct to open on January 1 of the election year, state law does not directly address when the absentee precinct would open for elections held early in the year, such as special elections and Presidential Preference Primaries (PPPs). Considering that these elections could be scheduled as early as the first Tuesday in January, absentee voting must be provided prior to January 1. County voter registration office should consider the absentee precinct open for these elections as soon as the elections are scheduled. For example, the absentee precinct would be open as soon as the special election was ordered; and for PPPs, the precinct would open as soon as the political party set the date for the PPP. For state-level special elections and PPPs that fall under this scenario, the SEC will coordinate with county voter registration offices to ensure a uniform absentee precinct open date*

Voters applying in person may apply and vote until 5:00 p.m. on the day before the election.

Voters admitted to a hospital as an emergency patient on the day of election or within a four day period before the election may have a member of their immediate family obtain and complete an absentee ballot application, receive the ballot and deliver it personally to the patient to vote. That family member must personally deliver the voted ballot back to the Board before 7:00 p.m. on election day. (7-15-330)

Requests for absentee applications may be made by mail, in person, by phone, by fax, and online through www.scvotes.org.

A separate application must be completed by the voter (except UOCAVA voters) for each election in which the voter wishes to vote absentee (7-15-340). Absentee applications for UOCAVA voters serve as a request for an absentee ballot for every election in which the voter is qualified to participate held through December 31 of the year after the application was received, unless the voter indicates that he wants the application to expire sooner.

# 5.5 Absentee Voting – by Mail

Before sending an application to a voter, the Board must verify that the person is registered and eligible. If no record of registration is found, the Board should immediately forward a voter registration by mail application to the applicant. If the person is registered, the Board will process the application by creating an absentee record in VREMS, printing a pre-filled form, specific to the election, and mailing it to the voter for signature.(7-15-350) When the signed application is returned, the Board may mail a ballot and required envelopes to the voter.

For all military and overseas voters defined as UOCAVA voters, the Board must take all necessary steps, including, but not limited to, electronic transmission of Standard Form 76 and absentee ballots, to ensure that the voter receives a ballot in time to vote for the election. This electronic transmission includes fax and email. The SEC will provide the ballot in a PDF format.

## 5.5.1 Who May Request Applications

The voter or member of the voter's immediate family may request an absentee ballot application from the Board. The request may be made in person, by mail, email, fax or telephone. Written requests for absentee ballot applications do not have to be signed. If you have reason to believe that the written request is not from the voter or a member of the voter's immediate family, further investigation may be necessary.

An immediate family member includes a spouse, parent, child, brother, sister, grandparents, grandchildren, mother-in-law, father-in-law, sister-in-law, brother-in-law, son-in-law, and daughter-in-law. (7-15-310 (8))

A voter's authorized representative is also permitted to make the request. Authorized representatives are registered voters who, with a voter's permission, act for a voter unable to go to the polls because of illness or disability resulting in his confinement in a hospital, sanitarium, nursing home, or place of residence; or a voter unable because of a physical disability to go to his polling place, or because of such disability unable to vote at his polling place due to existing architectural barriers which deny him physical access to the polling place, voting booth or voting apparatus. (7-15-310 (7))

A voter's authorized representative must request the voter's absentee ballot application either in person or by mail (not by phone). An authorized representative must be a registered voter and sign an oath on the "Request for Absentee Ballot Application by Authorized Representative" form stating that the authorized representative fits the statutory definition. The SEC provides this form to County Boards.

Candidates or members of a candidate's paid or volunteer campaign staff may **NOT** serve as authorized representatives for a voter. In addition, a candidate or a member of a candidate's paid campaign staff, including volunteers reimbursed for time expended on campaign activity, may not request an absentee ballot application for any person unless the person is a member of their immediate family.

The election official who receives the "Request for Absentee Ballot Application by Authorized Representative" is charged with ensuring the authorization form is complete and accurate, and must keep the authorization for on file wither until the end of the calendar year or until all contests concerning a particular election have been finalized (whichever is later). The election official is **NOT** permitted to require an ID to verify the authorized representative's identity. However, ensuring accuracy may include the official inquiring "Is this you?" of the representative. If the representative replies "Yes," the election official may ask no further questions. For further information, refer to S.C. Code of Laws § 7-15-330.

### 5.5.2 Voting by Proxy / Power of Attorney

State law has no provision that allows anyone other than the voter to sign or mark any voter registration or voting document. These documents include, but are not limited to, voter registration applications, poll lists, absentee ballot applications, and absentee ballot envelopes.

29 C.J.S. Elections Section 321 Proxy Voting states, "Voting is generally held to be a personal act which cannot be performed by an agent. While the legislature may have the power to extend to voters the right or privilege of voting by proxy, it will not be deemed to have done so in the absence of a clear provision to such effect, and in the absence of such provision, the courts will enforce the common-law rule which regards voting as a nondelegable, personal trust that cannot be exercised by proxy..."

### 5.5.3 Electronic Transmission of Absentee Applications

Absentee ballot applications may be sent and received electronically via fax and email (S.C. Electronic Transactions Act of 2004).

Receiving absentee applications via fax and e-mail:

- Original applications must be fully completed, containing all required information including the signature of the voter. The information cannot simply be entered into the body of an email or fax cover sheet.
- To apply for an absentee ballot, a voter would call, write, or visit the county office to request an application as normal. The Board would mail, fax, or email the application to the voter. If emailing the application, the e-mail must contain an attached scan of the original application. A fax must also be of the original

application. After completing the application, the voter would have the option to fax the application back to the Board or to scan the application, attach it to an email, and send it to the Board email address.

- Each county must designate specific fax and email accounts to receive such transmissions. Only those transmissions delivered to the designated account should be accepted.
- Ballots may not be transmitted electronically, except for ballots being sent to or received from UOCAVA voters (see UOCAVA sections below).

Voters may also request and receive absentee applications online at scVOTES.org. The online system allows the voter to download his application. The application can then be printed, completed, signed, and returned either by mail, fax, or email as described above.

### 5.5.4 Absentee Voting by Military and Overseas Citizens (UOCAVA Voters)

UOCAVA (Uniformed and Overseas Citizens Absentee Voting Act) voters include U.S. citizens who are members of the Uniformed Services (regardless of where stationed) and their family members. Uniformed Services are defined as the U.S. Armed Forces (Army, Navy, Marines, Air Force and Coast Guard), merchant marine, commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration. Overseas Citizens are U.S. citizens who reside outside the United States and its territories.

UOCAVA voters may apply for an absentee ballot using the traditional State absentee ballot application process, but are also afforded three additional options:

- **State Absentee Ballot Application**: The first five reasons to vote absentee on a state absentee ballot application constitute UOCAVA reasons.
- **Electronic Voting Accessibility Tool (EVAT)**: allows UOCAVA voters to access, mark, and print their ballots. The ballot must then be returned to the voter's county office by mail, fax, or email. EVAT also allows citizens who have not already submitted their Federal Post Card Application (FPCA) to upload their FPCA to become a UOCAVA voter. EVAT reduces the time it takes UOCAVA voters to vote by eliminating the step of the county office sending the voter a ballot. Using EVAT, the voter can access the ballot online, mark it, and print it for return to the county office.
- **Federal Post Card Application (FPCA, aka Standard Form 76):** The FPCA is an absentee ballot application, as well as a voter registration application for a person who is not already registered. The FPCA may be sent to the Board via mail, fax, or email. The application serves as a request for an absentee ballot for every election in which the voter is qualified to participate held through December 31 of the year after the application was received, unless the voter indicates that

he wants the application to expire sooner. The FPCA can be found on the Federal Voting Assistance Program's (FVAP) website (www.fvap.gov).

- **Federal Write-in Absentee Ballot (FWAB):** The FWAB and the FWAB declaration page serve as a voter registration application, absentee ballot application, and a blank absentee ballot. The FWAB is used by UOCAVA voters who have no time or availability to receive return transmissions from their county office. The voter completes the FWAB declaration page and writes in the names of candidates on the FWAB for whom he wishes to vote. The FWAB is sent one way from the voter to the voter registration office via mail, fax, or email; completing all processes at once. The application serves as a request for an absentee ballot for every election in which the voter is qualified to participate held through December 31 of the year after the application was received, unless the voter indicates that he wants the application to expire sooner. The FWAB can be found on the FVAP's website (www.fvap.gov).

#### 5.5.4.1 Instant Run-Off Ballots

Instant Run-off Voting Ballots (IRV Ballots) must be used for military and overseas citizens voting in primaries for federal offices. IRV Ballots are sent along with the first primary ballot. The IRV Ballot allows the voter to rank candidates in their order of preference. For example: 1st choice, 2nd choice, 3rd choice, and 4th choice, etc. In case of a runoff, the vote goes to the candidate with the highest ranking among the candidates involved in the runoff. The SEC provides IRV Ballots for federal and state offices. IRV Ballot templates are available on ElectionNET and can be used by the Board to add local offices.

### 5.5.5 Special Write-In Absentee Ballots

Voters unable to vote by regular absentee ballot or in person due to requirements of military service, or who are living in isolated or extremely isolated or remote areas of the world, may apply not earlier than 90 days before an election for a special write-in absentee ballot (SWAB). The SWAB must be available for any primary, general election, or special election that includes federal offices, statewide offices, or members of the General Assembly.

This ballot is used primarily by voters who, due to the reasons listed above, need to vote early and cannot wait for ballots to be printed. While military voters are eligible to vote a SWAB, many choose to use the FWAB. The FWAB is a faster method since it doesn't require a separate application and multiple mailings/faxes/emails. However, the SWAB contains the offices to be voted upon and may contain candidate names, while the FWAB is simply a blank ballot.

To qualify for a SWAB, the voter must state that he is unable to vote by regular absentee ballot or in person due to requirements of military service or due to living in isolated areas or extremely remote areas of the world.

The SEC provides the SWAB to the Board. The SWAB must list the offices to be voted on the election. The SWAB may also list the candidates for office, if the candidates are known at the time of the election. SWABs used in general elections allow the voter to write in a party preference for each office. (7-15-400)

Due to the short two-week time period between the primary and run-off elections, when you send one of these special ballots, you should also send a separate, second ballot and return envelope. The second ballot is to be used in the event of a runoff. Both the second ballot and the return envelope should be marked “Runoff.” Instructions should be included informing the voter on how to complete and return the runoff ballot.

### 5.5.6 Mailing Absentee Ballots

After the Board has verified the eligibility of the voter to vote absentee, the Board will mail, as soon as possible, the following items:

- One of each ballot to be used in the election (stubs still attached).
- Printed instructions as to the marking, folding and return of each ballot and as to the signing and return of the oath. The printed instructions must notify voters that their vote will not count if the envelope is not received on time, signed and witnessed.
- An envelope labeled “Ballots Herein” in which all completed ballots are to be placed.
- A return-addressed envelope imprinted on the back with the absentee voter’s oath to be used for the return of the “Ballots Herein” envelope (and enclosed ballots) to the Board.
- Any additional oath, instructions or information necessary to enable absentee ballot voters to legally vote and return a ballot.

The Board should never give or mail an absentee ballot to anyone except the voter who is applying for the ballot, except an immediate family member acting for a voter admitted as an emergency hospital patient as provided in 7-15-330.

#### 5.5.6.1 Envelopes Used to Mail Absentee Ballots

The SEC prints and provides the envelopes for mailing absentee ballots and the envelopes for the voter to return the voted absentee ballot to the Board.

**Postage free (pre-paid) envelopes** for mailing and return of absentee ballots are to be used for the following qualified voters covered by the Federal Voting Assistance Act and the Uniformed and Overseas Absentee Voting Act:

- The Military, Merchant Marine and their spouses and dependents stationed in the United States or abroad.
- Federally employed civilians, their spouses and dependents assigned overseas.
- Students attending an institution of learning outside the United States, their spouses and dependents.
- Qualified voters residing outside the United States (includes vacation).
- A qualified voter overseas by virtue of employment.

**Postage required envelopes** for the mailing and return of absentee ballots are to be used for all other qualified applicants whose absentee mailing address is within the continental United States.

### 5.5.7 Return of Absentee Ballots

The voter must place the voted ballot in the "Ballots Herein" envelope, and place the "Ballots Herein" envelope in the return addressed envelope.

Instant run-off ballots (IRB) are returned in a specially marked "Ballot Herein" envelope marked "Instant Run-Off". These IRB are returned along with the first primary ballot. Both of these "Ballot Herein" envelopes are placed in the one return address envelope.

**How to Process Absentee by Mail when Ballot is Not Signed, No Witnessed, or is Returned Late**

In order for an absentee by mail ballot to be counted, the Absentee Voter's Oath must be signed and witnessed, and the absentee ballot must be returned before the polls close (7 PM) on the day of the election (S.C. Code of Laws § 7-15-230). The only exception to this is UOCAVA ballots: a UOCAVA ballot that is mailed by 7 PM on election day must be counted if it is received by 5 PM the day before the county canvass. All absentee ballots must be accounted for in VREMS; whether or not the absentee ballot will be counted and added to the official results is irrelevant in accounting for the ballots.

To account for an absentee ballot's return in VREMS, use the procedures below:

For absentee ballots that are not signed or witnessed (as with all absentee ballots), the date of their return must be entered on the absentee screen in VREMS. Then on the absentee screen, the "Ballot Not Counted" box must be checked and the appropriate Attention Reason must be selected.. These are NOT provisional ballots,

so they will NOT be considered at the provisional ballot hearing and will ultimately NOT be counted. For absentee ballots that are returned late, the date and time of their return must be entered on the absentee screen in VREMS. Do NOT record these ballots on the provisional ballot screen in VREMS as it is not necessary because the ballot is accounted for as late by the date and time of its return. Because these ballots were returned late, they are not eligible to be counted.

**"Attention" Envelope**

ALL absentee ballots that are returned with no signature, returned with no witness signature, or are returned late must each be placed in their own "Attention" envelope. "Attention" envelopes are sealed, kept with election records, and never opened. Write the voter's name and voter registration number on the "Attention" envelope. This procedure is necessary so that ballots can be reconciled. In the case of a ballot that is not signed or witnessed, place the "Attention" envelope containing the ballot in the absentee ballot box. In the case of a ballot that is returned late, place the "Attention" envelope with any other "Attention" envelopes that exist for the election for record retention.

**Authorized Returnee**

Voters may return their absentee ballot to the absentee precinct by mail, by personal delivery or by authorizing another person to return their ballots (an "authorized returnee"). Persons returning the voted ballot for the voter must complete and submit the "Authorization to Return Absentee Ballot" form to the Board at the time the ballot is returned. Absentee ballots cannot be turned in at the polling place on election day.

The authorization form must be preserved as part of the election record. The Board must record the authorization and the name of the authorized returnee in VREMS. (7-15-385)

Candidates or a member of a candidate's paid campaign staff, including volunteers reimbursed for time expended on campaign activity, may not serve as an authorized returnee for any voter unless they are a member of the voter's immediate family.

Absentee ballots returned by any other method than described above should be challenged. All absentee ballots must be returned in the return-addressed envelope provided. Ballots issued for emergency hospital patients must be returned by the family member to whom they were issued.

The election official who receives the returned absentee ballot is charged with ensuring the authorization form is complete and accurate. The election official is **NOT** permitted to require an ID to verify the authorized returnee's identity. However, ensuring accuracy may include inquiring, "Is this you?" of the returnee. If the returnee replies "Yes," the election official may ask no further questions. For further information, refer to S.C. Code of Laws § 7-15-385.

### 5.5.8 Securing Absentee Ballots

The Board must securely store the envelopes in a locked ballot box kept in the Board's office. (7-15-385) It is recommended to use numbered seals instead of a lock and key.

The absentee ballots must remain in the custody of the Board until the time for processing absentee ballots begins. If a municipal election commission is transporting these ballots to be counted in another location, for security have the ballot box sealed with a numbered seal. (7-15-410)

## 5.6 Absentee Voting – In Person

To ensure the secrecy and integrity of each ballot and assure that each ballot is accurately counted, the Board must use the following procedures when allowing walk-in voters to vote absentee using the electronic voting system. If voting machines are unavailable when an absentee voter presents himself to vote, a paper ballot should be used following paper absentee ballot procedures. These guidelines are in addition to current laws and procedures affecting absentee voting and should not be construed as a replacement to those current laws and procedures. 7-15-470

### 5.6.1 Pre-Election Procedures

- Each Board is responsible for placing the appropriate offices, candidates and issues on the ballot. A sample of this ballot should be submitted to the SEC for approval prior to opening of the polls.
- Each Board is responsible for providing a Machine Certification Form for every voting unit used for walk-in absentee voting in the election to record pertinent information and numbers from security seals and the machine public counter numbers. This form may be modified if needed provided that the information on the sample form remains in the modified version. Any modification, other than to remove the box denoting this as an example, must be submitted to the SEC and, once approved, will be on file in the SEC office.
- The Board must send written notice of machine preparation to the chairpersons of each political party or candidate represented on the ballot. This notice should contain the date, time and place of when the machines will be examined and prepared for the election.
- All documentation and recorded machine seal numbers associated with pre-election procedures will be retained by the Board in a secure location.

- Following the examination and election preparation procedures, each voting machine will be locked against voting, secured with a numbered seal, and placed in a locked secure location.
- The Board shall appoint a sufficient number of walk-in absentee voting officials to insure the integrity of the ballot and smooth operation of the voting system. These officials shall be properly trained to perform the following: assist voters in operation of voting machine, verification of security seal numbers at beginning of each day, secure machines from voting at the end of each day.

### 5.6.2 Daily Opening Procedures

- At the beginning of each day of absentee voting, at least one walk-in absentee voting official must verify that the numbers on all seals match those recorded on the Machine Certification Form from the previous day or, in the case of 1st day operation the numbers from the pre-election preparation section on the Machine Certification Form.
- If the seal numbers match, then the necessary seals may be removed and the machine may be opened. These seals must be retained until the time for protest has passed.
- At least one walk-in absentee voting official must verify that the public count number matches that recorded on the Machine Certification Form.
- If all the numbers do not match, a written report shall be made of the numbers, the machine involved, and the names of the individuals present. The Board shall not use the machine without authorization.
- At the beginning of the first day of voting, at least one walk-in absentee voting official shall certify that all candidates' counters start with zero.

### 5.6.3 Voting Operations

Each voter must be registered in order to vote absentee. The Board must follow these procedures to allow in-person absentee voting:

- Verify that the person is registered and eligible to vote.
    - If no record of registration is found, ask the voter to complete a voter registration form.
    - If the voter registration deadline has passed for the election in which the voter wishes to vote absentee, explain why the voter is ineligible to vote
    - If the person is registered, process the application by creating an absentee record for this election, print a pre-filed form, and ask the voter

to sign the form. By signing this form, the voter is also taking the Voters Oath.

- Voter must also present one of five qualified forms of ID listed in Section 3.14 , or, vote a provisional ballot and sign an affidavit citing a reasonable impediment exception described in Section 12.1.1
- Once the voter is verified, they will receive a personal access code (PAC). The PAC is the voter's absentee application number.
- The voters' PAC will be entered into the voting machine and the voter may cast the ballot as normal.
- The absentee voting official will ensure that the voter receives the appropriate ballot depending on the precinct and offices in which the voter is allowed to vote.
- An absentee voting official will be available at all times that the machines are open for voting to provide instruction if needed.

### 5.6.4 Provisional Ballot Procedures for In-Person Absentee Voting on Voting Machines

- If a voter is challenged prior to entering the voting machine booth, please use the List of Provisional Voters, and follow normal challenge procedures.
- For persons requesting to challenge voters who have already cast their ballot on a machine, explain that the Absentee Ballot Log will be available to them at 9 am on the day before the election. They must be allowed access to this list and may challenge ballots cast by voters on the list. These challenges are recorded on the Provisional Ballot Log for Absentee Voting Machines. This form can be found on ElectionNET. Instructions for removing a provisional ballot from your in-office absentee voting machine totals can be found in the Election Preparation and Results Accumulation Guide.

### 5.6.5 Daily Closing Procedures

- At the end of each day of absentee voting use Report 4 (date range) or Report 5 (total) to reconcile paper applications vs. applications received in VREMS. Also, use one of the reports to reconcile ballots issued in VREMS. You will also need to get the opening count on the machines and the closing count to figure out how many ballots were cast in person on each machine. You will then compare the number of paper in person absentee applications to the number of votes cast on machines. Also, reconcile the number of ballots issued in person and ballots returned in person in VREMS to the number of ballots cast on the machine.
- At the end of each day of absentee voting, at least one walk-in absentee voting official must record the public counter number of all absentee voting machines on

the Machine Certification Form and compare it to the number of voters participating. If the total of votes cast on the machine is larger than the number of walk-in applications received, the walk-in absentee voting official must immediately notify the Board.

- If the numbers match, the machine may be closed for the day. The machine must be sealed from further voting by installing any required numbered seals. These seal numbers must be recorded, along with the public count number, on the Machine Certification Form.
- Once sealed from voting, the machines and the Machine Certification Forms must be placed in a secure location. This location should be locked and the keys placed into the custody of the Board.

The walk-in Absentee voting precinct will be closed at 5pm on the Monday prior to the election. At this time, the walk-in absentee voting units will be used for failsafe voting only.

### 5.6.6 Closing of Absentee Precinct at the End of Election

- At 9:00 a.m. on election-day, the walk-in voting official, along with other staff of the Board, may begin the process of preparing the absentee ballots for counting. If failsafe voting has been used on the voting terminals, then this procedure would not apply. This procedure would begin after failsafe voting has ended.
- The walk-in absentee voting official shall begin the process of separating the provisional (challenged) and non-provisional ballots by highlighting the access codes of voters who have been challenged. This highlighting can be done on the "Provisional Ballot Log for Absentee Voting Machines". Provisional votes **will not** be counted until they have been processed at the Provisional Ballot Hearing following the election.
- At 7:00 pm, all non-challenged absentee ballots may be tallied and added to the remaining votes for the election. Follow procedures outlined in the Unity Manual.
- The machines, seals, certification forms and all other materials associated with these machines should be placed in a locked secure location and the keys placed in the custody of the Board.
- At the end of the election, sometime after the polls close but before certification, use Report 4 (date range) or Report 5 (total) to reconcile paper applications vs. applications received in VREMS. Also, use one of the reports to reconcile ballots issued in VREMS. You will also need to get the closing count of how many ballots were cast in person on each machine. You will then compare the number of paper absentee applications to the number of votes cast on machines. Also, reconcile the number of ballots issued in person and ballots returned in person in VREMS to the number of ballots cast on the machine.

# 5.7 Recording Absentee Application and Ballot Requests

All absentee transactions **must** be recorded in VREMS. To maintain proper absentee records, it is important to record the date and time for the following transactions in VREMS:

- When the voter requests the application for absentee ballot.
- When the application is mailed to the voter.
- When the voter returns the application to the Board.
- When the ballot is mailed to voter.
- When voter returns ballot (record the time of receipt).

Each absentee ballot application is serially numbered in VREMS.

The following voter information is also included on the absentee record in VREMS:

- The absentee ballot application number
- Voter name
- Home address
- Absentee mailing address of the person for whom the absentee ballot application form is requested
- Name, address, voter registration number, and the relationship of the person requesting the form, if other than the applicant
- The date the form is requested
- The date the form is issued

The Board must make the record of absentee voters public at 9:00 a.m. on the day before the election. This can be accomplished by printing the Absentee Balloting List (Report 005) or, most commonly, by creating the report and saving it as a data file for public distribution. For voters admitted as emergency patients to the hospital who elect to vote by absentee ballot, the required information must be made public by 9:00 a.m. the day following the election. (7-15-330)

# 5.8 Absentee Voters Noted on Registration List

Prior to distribution to the various county precincts, the Board will mark on the voter registration lists the names of voters who were issued absentee ballots.

VREMS automatically notes voters on the voter registration list who have been issued an absentee ballot by displaying the letters "ABS" on the voter record. Voters issued absentee ballots after the voter registration lists are created must be noted by hand on the printed copy and by file update in EVRL.

No voter who has been issued an absentee ballot may vote in person in his resident precinct, whether or not such ballots have been cast, unless he presents to the managers of his resident precinct a statement from the Board that he has returned his absentee ballot to the Board unmarked.

Should any voter be issued an absentee ballot application or absentee ballot after the voter registration lists to be used in the election have been released to the municipal election commission, executive committee of any municipal party, or poll managers, the Board will immediately notify in writing such authority of the name, address and VR card number of each voter who has since been issued an absentee ballot. The authority with possession of the list must appropriately mark the registration books indicating that the voter has been issued an absentee ballot. This marking should take place prior to opening of the polls on Election Day or as quickly as possible after the polls are open. 7-15-430

## 5.9 Retention of Absentee Materials

Federal law requires that all records and papers relating to any application, registration or other act requisite to absentee voting be retained for 22 months following the election to which such records and papers pertain (42 U.S.C.,1974). S.C. Department of Archives and History Record Retention Schedule 12-517.4 requires absentee records to be retained for 24 months.

Absentee applications may be stored electronically without having to retain paper copies (S.C. Electronic Transactions Act of 2004). Electronic storage of applications:

- All absentee ballot applications must be retained in the office for 24 months and be accessible for reference.
- The Board may scan all applications to eliminate the physical storage space required for paper documents. If a Board office does so, a second electronic copy of the record should be stored at an off-site location in case of catastrophic data loss.
- If a Board is not comfortable with shredding or otherwise destroying the paper record after it has been scanned, it is acceptable to store the paper record at an off-site location.

# 5.10 Tabulating and Reporting Absentee Ballots

The Board is responsible for tabulating and reporting absentee ballots.

At 9:00 a.m. on election-day, if proper notice has been given, the managers of the absentee precinct may examine and tabulate absentee ballots. Absentee ballot totals may not be released until the closing of the polls.

Examining absentee ballots begins by viewing the return-addressed envelopes to assure that the oath on the back of the envelope has been properly completed. Watchers may be present for the examination of return addressed envelopes. All absentee ballots received by the Board before the time for closing the polls must be examined in this manner.

Challenge of absentee ballots may be made by using the Challenge Ballot Log based on voters listed on the Absentee Balloting List. If a ballot is challenged, the return-addressed envelope may not be opened, but put aside and the established provisional ballot procedure followed. The absentee voter whose ballot is challenged must be given reasonable notice of challenge. (7-15-420)

If no challenge is issued, the managers will open the return addressed envelope and remove the enclosed “Ballot Herein” envelope. To secure the secrecy of the ballot, the ballot must be separated from the envelope and deposited into the optical scan tabulation equipment.

After 7:00 p.m., results of the absentee ballot tabulation may be reported.

## 5.10.1 Voter Dies after Submitting Absentee Ballot

An absentee ballot should be challenged if it was submitted by a voter who dies before the ballot is counted on Election Day. The Board should not count the provisional ballot because the deceased voter would not be a qualified voter at the time of counting.

Because the S.C. Code of Laws governing absentee ballots does not specifically address how absentee ballots of deceased voters are handled if the voter dies prior to the date of an election, the SEC requested and received an opinion on the matter from the S.C. Attorney General’s office. The opinion, dated October 23, 2008, states “…if the manager has knowledge of an absentee voter’s death, he or she is responsible for challenging the vote … on the basis that the voter does not meet the qualifications of an elector.”

“…even though absentee ballots are prepared and received prior to the date of the election, they are not officially cast until Election Day. If the voter submitting the

absentee ballot dies prior to the date of the election, the voter lacks the qualifications to be an elector…"

If the manager has no knowledge of an absentee voter's death prior to counting the ballot, the ballot would not be challenged, but cast with the other absentee ballots.

## 5.11 Voter Checking Status of Absentee Ballot on Internet

A program can be accessed through the Internet that allows voters to determine the status of their absentee ballot. The voter must enter his name, birth date, and street of residence before receiving information. This program is linked to the absentee portion of VREMS. Once connected, the voter receives instantaneous information on when his absentee application was received, when his absentee ballots were mailed and received by the Board.

## 5.12 General Procedures for Absentee Voting Machines

- Daily opening and closing procedures, using the Machine Certification Form below, must be completed throughout the entire walk-in absentee voting period.
- The voter access identification code must be retained by the walk-in absentee voting official and remain away from public view.
- The time for challenging voters in the absentee precinct shall be closed as of the time published for preparing absentee ballots for counting.
- All walk-in absentee voters must use the voting machine unless it is not working properly. If the machine is inoperable, emergency paper ballots must be used.
- After the election has been certified, the original Machine Certification Forms must be retained with all election supplies until the time for protest has passed, or in the case of Federal elections, for 22 months. S.C. Department of Archives and History Record Retention Schedule 517.5 requires these records to be retained for 24 months.
- No machine shall contain more than the manufacturer allowed number of votes. Once the machine reaches this number, it shall be closed and locked from further voting.

## Machine Certification Form For Walk-In Voting (iVotronic)

________________________County, South Carolina

__________________________________________________
*(Name and Date of Election)*

**Pre-election Set-up**

Technician's Certification of Pre-Inspection for voting unit NO.: _________________________

Protection Counter Number _________________________ Seal #:________________________

Technician Signature: __________________________Date Programmed:_________________

***OPEN POLLS***

| Date | Seal Number | Public Count Number |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

***CLOSE POLLS***

| Seal Number | Public Count Number |
|---|---|
| | |
| | |
| | |
| | |
| | |

## Provisional Ballot Log for Absentee Voting Machines

**Provisional Ballot Log for Absentee Voting Machines**

| | Voter's Name | Voter's Application # | Voter's Address | Name of Challenger | Reason For Challenge |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |

SEC FRM 2090 201010

**Download a full copy of the form at http://scelectionnet.org/node/1218 or search ElectionNET for "Provisional Ballot Log."**

# 6. Petitions

Petitions in South Carolina are most commonly used to:

- Nominate candidates.
- Propose county and municipal ordinances.
- Certify political parties.
- Call for a county or municipal referendum to allow Sunday sale of alcohol.
- Call for a municipal referendum to change the existing form of government.

## 6.1 Candidate Nominating Petitions

### 6.1.1 Petition Form Requirements

Candidate nominating petitions must meet the requirements of S.C. Code of Laws § 7-11-80. The SEC provides petition forms designed to meet those requirements. The SEC form can be downloaded from the "Candidate Information" section of www.scvotes.org . The form is designed so that certain information can be filled in on the form before printing. Candidates should be reminded that the form must be printed on 8.5" x 14" legal-sized paper. Petition candidates are not required to use the SEC form, as long as their forms meet the requirements in state law.

Candidate petitions are required to:

- Be printed on good quality original bond paper sized 8.5" x 14".
- Contain a concise statement of purpose including the name of the candidate, the office for which he is offering, and the specific election in which he is offering.
- Contain separate columns for voters to enter the following information:
  - Signature and Printed Name of voter
  - Address of residence of voter
  - Precinct of voter
- Contain only signatures from one county per petition page
- Have each signature numbered consecutively.
- Have each page numbered consecutively.

State law does not require the voter registration number to be included on the petition form; but it can be very helpful in finding voter records; and a space for it is included on the SEC form.

### 6.1.2 Number of Signatures Required

A candidate's nominating petition for any office must contain the signatures of at least 5% of the qualified registered electors of the geographical area of the office for which he offers as a candidate; provided that no petition candidate is required to furnish the signatures of more than 10,000 qualified registered electors for any office. The official number of qualified registered electors of the geographical area of any office must be the number of registered electors of the area registered one hundred twenty days prior to the date of the election for which the nomination petition is being submitted (7-11-70).

Some county and municipal-level offices have specific laws and/or ordinances with specific signature requirements for that office. Some are listed below.

**Public Service District Commissioners**

Petitions for Public Service District Commissions require the signatures of not less than 250 qualified electors of the district or 5% of the total number of electors of the district, whichever is lesser. (7-11-71)

**Soil and Water Conservation District Commissioners**

Petitions for Soil and Water Conservation District Commissions require the signatures of 100 qualified electors of the district concerned, or one percent of the total numbers of electors of the district, whichever is the lesser. Each of the 46 counties is a district. Currently, all petitions for this office require 100 signatures (48-9-1220).

**Municipal Offices**

Petitions for municipal offices require the signatures of not less than 5% of the qualified registered electors of the geographical area of the office for which he offers as a candidate (5-15-70 and 5-15-110). Refer to municipal ordinances for any additional requirements.

**School Districts**

Filing methods for school district elections vary widely depending on the type of election the school district uses (partisan, non-partisan), and the specific requirements detailed in the local legislation that sets up the school district. Refer to local legislation for the number of signatures required. If local legislation does not specify, the general 5% requirement applies (7-11-70).

### 6.1.3 Filing Locations for Candidate Petitions

Candidates for federal, state (including State House & Senate), circuit, and multi-county district offices file petitions with the SEC (7-11-70).

Candidates for countywide and less-than-countywide offices file petitions with the Board (7-11-70).

Candidates for municipal office file petitions with the municipal clerk, (MEC), Board (when authority has been transferred), or to any other entity that has been designated to receive petitions on behalf of the authority charged by law with conducting the election (5-15-70, 5-15-110, 7-11-70). Check any local ordinances that may apply.

Candidates for school district offices normally file with the Board as outlined in 7-11-70; although, any local legislation relating to the school district that designates an alternate filing location would control.

### 6.1.4 Filing Deadlines for Candidate Petitions

**General Elections**

Candidate petitions must be submitted by noon, July 15th of the General Election year, or if July 15th falls on a Sunday, by noon on the following Monday (7-13-351).

**Special Elections**

Petitions must be submitted not later than noon 60 days prior to the election (7-13-190, 7-13-351).

**Municipal Elections**

Petitions for municipal general elections must be filed 75 days prior to the date of the election (5-15-70, 5-15-110). Check any applicable local ordinances for potential earlier deadlines and/or specific filing periods.

If a municipal election is held in conjunction with the November General Election, the petition deadline is the same as county petitions – noon, July 15th. Municipalities are encouraged to change their election ordinances to reflect this earlier filing deadline.

**Municipal Special Elections:** Candidates must file nominating petitions not later than noon, 60 days prior to the date of holding the election (5-15-70, 7-13-351). Check any applicable local ordinances for potential earlier deadlines and/or specific filing periods.

**School District Elections**

Filing deadlines for school district elections vary widely depending on when the election is held. Refer to any specific requirements detailed in the local legislation that sets up the school district.

School district elections that coincide with the Statewide General Election must follow the petition filing deadline of noon, July 15th. Any local legislation relating to the school district that designates an alternate deadline would control.

**School District Special Elections**: Petitions must be submitted not later than noon 60 days prior to the election (7-13-190, 7-13-351).

**Deadline Exception**

Candidates who fail to file nominating petitions on time due to conditions surrounding an event that has been declared an emergency by the Governor are afforded an additional five days to submit nominating petitions to the appropriate office (7-13-351).

## 6.1.5 Accepting Candidate Petitions

**Entering Candidates in VREMS**

Petitions candidates must be entered in VREMS at the time of the submission of the petition. See "Entering Nonpartisan Candidates in VREMS" procedures on ElectionNET.

If a candidate's petition fails, the candidate's status must be updated to "Petition Failed."

**Verification of Petition Candidate Qualifications**

The authority to whom a petition is submitted must verify the qualifications of each potential petition candidate prior to certification of that candidate to be placed on the ballot. The written certification required by this section must contain a statement that each candidate certified meets, or will meet by the time of the general election, or as otherwise required by law, the qualifications for the office for which the petition is submitted. Any candidate who does not, or will not by the time of the general election, or as otherwise required by law, meet the qualifications for the office sought shall not have his name placed on the ballot (7-13-351).

To meet this requirement, the authority to which the petition is submitted must have the candidate complete and sign the Petition Receipt form. This form includes a statement that the candidate meets, or will meet, by the time of the general or special election, or as otherwise required by law, the qualifications to hold the office for which they are filing.

In addition to acquiring this signed statement, the authority should also make reasonable efforts to verify that the candidate meets the qualifications for the office:

Qualifications to consider include, but are not limited to:

- Candidates must be registered voters residing in the geographical area in which they are offering as a candidate (S.C. Constitution, Article 3, Section 7; S.C. Code of Laws § 7-1-25, § 7-5-230). Candidates for State Senate and State House of Representatives must be residents of their district at the time of filing.
- Any candidate convicted of a felony (and some non-felony offenses of the election laws) is not eligible to file for office unless 15 years has passed since the completion of his sentence (including probation and parole time), unless sooner pardoned (S.C. Constitution, Article 6, Section 1).
- Any age requirement specific to the office for which the candidate has filed.
- Any other requirements specific to the office for which the candidate has filed.
- See S.C. Code of Laws § 23-11-110 for specific qualifications for Sheriff.
- See S.C. Code of Laws § 17-5-130 for specific qualifications for Coroner.
- Additional qualifications found at http://www.scvotes.org/candidate_information.

If the authority determines that the candidate does not, or will not, meet the qualifications, the authority must not place this candidate's name on the ballot. For a list of qualifications for many federal, state, and local offices, visit the "Candidates" section of scVOTES.org.

## 6.1.6 Deadline to Validate Candidate Petitions

**General Elections**

The Board must check the petition at the request of the authority charged with printing the ballot for that office and must certify the results to the authority not later than noon, August 15th or, if August fifteenth falls on Sunday, not later than noon on the following Monday (7-13-351).

**Special Elections**

The Board must check the petition at the request of the authority charged with printing the ballot for that office and must certify the results to the authority not later than noon on the 45th day prior to the election (7-13-351).

**Municipal Elections**

The MEC (or other authority) must examine the petition and determine its validity not later than 60 days prior to the date of the election (5-15-70, 5-15-110).

In the case of municipal elections held in conjunction with the Statewide General Election, the authority charged by law with conducting the election must examine the petition and determine its validity by noon, August 15th or, if August fifteenth falls on Sunday, not later than noon on the following Monday (7-13-351).

**Municipal Special Elections**

The Board must check the petition at the request of the authority charged with printing the ballot for that office and must certify the results to the authority not later than noon on the 45th day prior to the election (7-13-351).

**School District Elections**

The filing deadlines for school district elections, as well as the deadlines to validate them, vary widely. Check local legislation.

For school district elections held at the time of the Statewide General Election, the Board must check the petition at the request of the authority charged with printing the ballot for that office and must certify the results to the authority not later than noon, August 15th (7-13-351). Any local legislation relating to the school district that designates an alternate deadline would control.

# 6.2 Political Party Certification Petitions

Petitions to certify a political party require the valid signatures of at least 10,000 active, registered South Carolina voters and must be filed with the SEC (7-9-10). The deadline to submit a party petition is six months prior to any election in which the political party seeking certification wishes to nominate candidates. However, there are other legal requirements and deadlines related to party organization and candidate filing that political parties must meet prior to nominating candidates. The SEC recommends submitting party petitions at least 11 months prior to an election in which the party wishes to nominate candidates. Questions regarding political party petitions should be referred to the SEC.

# 6.3 Ordinance by Initiative Petition

The qualified electors of any county or municipality may propose by petition the passage or repeal of certain ordinances (4-9-1210, 4-9-1220, 5-17-10, 5-17-20). An initiative petition must contain the valid signatures of at least 15% of the qualified electors of the county or municipality. An ordinance by initiative petition must be submitted to the county or municipal council. Council may request that the Board examine the petition, but council ultimately determines whether the petition is valid. Council has the option to pass (or repeal) the ordinance as requested in the initiative petition. If council does not act on the ordinance as requested, council must call for a referendum on the adoption or repeal of the ordinance in question. The referendum must be held not less than 30 days, nor more than one year, from the date on which council takes its final vote on the matter (4-9-1230, 5-17-30). Council sets the date of the referendum but should work with the Board or MEC to determine the best date. Council is responsible for gaining preclearance from the U.S. Department of Justice (see Title 16 “U.S. Department of Justice Preclearance”).

# 6.4 Petitions to Change Form of Government

**County**

The qualified electors of a county may submit a petition to change the form of county government (4-9-10). The qualified electors of a county may also submit a petition calling for a referendum to determine whether the council members are elected from single member districts or at large. These petitions must contain the valid signatures of not less than 10% of the registered electors of the county. These petitions are submitted to county council. Council may work with the Board to verify the signatures. Council certifies the petition and calls for the referendum. The referendum question is framed by council and must meet the requirements of S.C. Code of Laws § 4-9-10. Council is responsible for gaining preclearance from the U.S. Department of Justice (see Title 16 "U.S. Department of Justice Preclearance"). The referendum is conducted by the Board.

**Municipal**

The qualified electors of a municipality may submit a petition to determine or change the form of municipal government. This petition must contain the valid signatures of at least 15% of the qualified electors of the municipality. The petition is submitted to the municipal council. The petition must be certified by the Board. If certified, the municipal council must by ordinance call for a special election to be held not later than 90 days nor earlier than 30 days after the receipt of the certified petition or the passage of the council ordinance (5-5-20). The authority charged with the responsibility of conducting elections in the municipality must conduct the election. The wording of the referendum question must comply with S.C. Code of Laws § 5-5-40. The municipality is responsible for gaining preclearance from the U.S. Department of Justice (see Title 16 "U.S. Department of Justice Preclearance"). Notice of the election must be published at least three weeks in advance in a newspaper of general circulation in the municipality. The municipality must pay all expenses incurred in the conduct of the election (5-5-50).

# 6.5 Sunday Sale of Alcohol Petitions

The qualified electors of a county or municipality may submit a petition calling for a referendum on Sunday sale of alcohol (61-6-2010). Such petitions require the signatures of at least 10%, but not more than 7,500, of the qualified electors of the municipality or county, as the case may be. The petition must be on the form prescribed by the SEC (available from the "Candidate Information" section of scVOTES.org).

The petition must be submitted to the Board or MEC not less than 120 days before the date of the next general election. The petition must be certified by the Board within 60 days after receiving the petition. The referendum must be conducted at the

next General Election after certification.

The Board must publish a notice, in a newspaper of general circulation in the county or municipality, at least seven days prior to the referendum. The wording of the referendum question must comply with S.C. Code of Laws § 61-6-2010. The Board must publish the results and certify the results to the S.C. Department of Revenue. The Board should work with the county or city attorney to ensure this petition process is conducted according to law.

# 6.6 Accepting Petitions

## 6.6.1 Receiving Authority

Before receiving a petition, determine whether the Board is the appropriate authority to do so. Countywide and less-than-countywide candidate petitions are filed with the Board. Federal, state, and multi-county petition candidates and petitions to certify political parties are filed with the SEC. Some types of petitions are filed with county councils, city councils, MECs, municipal clerks, etc. Specific filing locations are listed above under the sections covering the various types of petitions.

## 6.6.2 Deadlines

Generally, petitions may not be accepted after deadlines set by law. However, candidates who fail to file nominating petitions on time due to conditions surrounding an event that has been declared an emergency by the Governor are afforded an additional five days to submit nominating petitions to the appropriate office (7-13-351).

When accepting a petition, the first page or cover page should be time stamped to record the exact time the petition was submitted. If no stamp is available, this can be done by hand by printing "received by (agency) on (date) at (time)" and initialing the notation.

Neither additional signatures nor any other information may be added to a petition after it has been filed. The petition is deemed to be complete when it is filed. (7-9-10, 7-13-351, 11-18-1977 AG Opinion).

Specific petition deadlines are listed above under the sections covering the various types of petitions.

### 6.6.3 Initial Examination of the Petition

Upon being presented with a petition, the receiving authority should make an initial examination of the petition to determine if the petition appears to be in proper order. Determine whether the petition appears to meet any specific form requirements and whether it has a sufficient number of signatures to gain approval.

The signatures on the petition must be counted to determine the total number of signatures in the petition. This should be done in the presence of the candidate, or person submitting the petition. The goal of counting the signatures is to come to an agreement on the number being submitted so there is no later disagreement or claim of discrepancy between the number of signatures submitted and the number checked. This is not the signature verification process (see Signature Verification & Petition Certification below). This number will be recorded on the petition receipt (see Petition Receipts below").

If the petition does not appear to be in proper order, or does not contain a sufficient number of potential valid signatures, and if sufficient time remains prior to submission deadlines; the person submitting the petition may decide to withhold submission of the petition until these issues are remedied.

### 6.6.4 Petition Receipts

The receiving authority must issue a receipt to the person submitting the petition which reflects the date the petition was submitted and the total number of signatures contained in the petition (7-13-351). The receipt should also reflect the time at which the petition was submitted, the purpose of the petition, and the signature of the person accepting the petition.

The SEC provides a Petition Receipt form which is available for download on ElectionNET. The form is designed so that all information can be filled in electronically (except signatures) before printing. Complete the receipt, print it, sign it, and have it signed by the person submitting the petition. A copy of the receipt should be provided to the person submitting the petition. Detailed instructions on using the Petition Receipt form are included with the form.

### 6.6.5 Copies of Petitions

Petitions and their related documents are public information and are subject to the provisions of the Freedom of Information Act. Requests for copies of petitions must be handled in a manner that is consistent with those requirements. Requests for copies of petitions should be directed to the authority charged with accepting the petition. Copies of petitions should be provided to those requesting them as soon as

it is possible for the authority to do so. Any social security numbers contained in the petition must be redacted before the petition is made public. One way to provide copies of petitions is to scan the petition and distribute it electronically. Scanning is particularly helpful when you have more than one request for copies of the petition. Any social security numbers must still be redacted from scanned copies. Software programs such as Adobe Acrobat Professional include redaction tools that simplify this process. Boards may charge a reasonable preparation and copy fees. The SEC recommends that Boards institute general public information request fee policies and that such policies be followed in the case of petition copy requests.

# 6.7 Signature Verification & Petition Certification

## 6.7.1 Observers

Boards may receive requests to observe the petition verification process. The process should be as open and as transparent as possible. Observers should be allowed so far as it is practicable, and as long as they are not interfering with the process.

Observers should be allowed to:

- Be in the room where the signature verification process is taking place.
- Ask questions regarding the verification process. The Board should have one person designated to answer questions, usually the director.

Observers should NOT be allowed to:

- Be positioned in such a way that they can read the writing on the petition pages if they contain social security numbers.
- Be positioned in such a way that they can read the text on the VREMS computer monitor. VREMS contains social security numbers and other confidential information.
- Ask questions of those performing the signature verification task. This is to prevent interference with the verification process.
- Challenge signatures, the petition in general, or the signature verification process. There are no provisions in state election law for challenging petitions or individual signatures on a petition. Allow observers to make their concerns or issues known to the director, but do not entertain challenges to individual signatures.

The Board should inform observers of these and any other rules of conduct. Any observer unwilling to follow direction of the Board and its staff should be asked to leave the area in which the process is taking place.

While all reasonable steps should be taken to accommodate observers, there are situations in which observers are not practicable. For example, a single voter

registration official working in a small office may not be able to position an observer in such a way to protect confidential information, and would likely not be able to accommodate an observer without it interfering with the process.

### 6.7.2 Procedure for Verifying Petition Signatures

**The signature of a voter may only be rejected for the following reasons (7-11-85):**

1. It is illegible and cannot be found in the records of the Board
2. It is missing from the petition or is not that of the voter
3. The registration of the voter has been made inactive

**To verify whether a signature meets one of those reasons, follow these steps:**

1. **Determine if there is a signature.** The only piece of information required on any line of a petition is the voter's signature. If a voter completes all other information on a line of a petition, but fails to sign the petition, or only writes their name in the "print name" space, then the name must be rejected.
2. **Find the person's name in VREMS.** All other information (printed name, address, phone number, precinct, voter registration number, and date of birth) is included on the petition form to help the Board locate the voter's record. Use the signature and any related information to locate the voter's record in the voter registration database. If a signature is illegible, includes no additional information, and cannot otherwise be identified, the signature must be rejected.
3. **Determine whether the person is an active voter.** Does the voter registration database indicate that the voter's status is active or inactive? If the voter is inactive, the signature must be rejected, except for voters listed as Inactive/Failed to Respond (inactive for failure to respond to confirmation card mailing). Voters with this status and reason should be treated as active voters for petition verification purposes. According to federal law, these voters remain qualified to vote for approximately four years after being given the status of Inactive/Failure to Respond. After eight years, these voters are placed in archived status. Signatures of voters who are archived for failing to respond to a confirmation mailing are not valid.
4. **Determine whether the person is a resident of the geographic area required by the petition.** If the voter is not a resident of the required geographic area, the signature must be rejected.
5. **Determine whether the person has been registered for at least 30 days.** A November 5, 1981 AG Opinion states that to be a considered a "qualified elector" a person must be eligible to vote, and that VR cards are not valid for 30 days. The opinion concludes that a person must have been registered for 30 days for their petition signature to be valid. The signature of any person whose date of registration does not fall on or before the 30th day prior to the petition filing deadline must be rejected.
6. **Determine if the signature is that of the voter.** Once you determine the name

is that of an active, registered voter; locate the voter's original voter registration application. Compare the signature on the voter's voter registration application to the signature on the petition. If the signatures do not match, double check for errors in the process. If it is apparent that the signature is not that of the voter, the signature must be rejected. If the signature matches the signature in the voter registration record, the signature must be deemed valid.

7. **Verify that the signature is not a duplicate.** A signature may only appear once on a petition. Any additional signatures should be counted as invalid signatures. There are various ways to ensure a signature is not a duplicate. The best method is dependent on the size of the petition and the method of filing applications. Here are some examples:
    - Enter names, as they are checked, into a spreadsheet. Sort names alphabetically and check for duplicates.
    - As each voter's application is pulled to check their signature on the application, do not re-file the application, keep it separate and in alphabetical order.
8. **Mark the petition.** Note beside each signature checked whether the signature was found to be valid or invalid. If the signature is found to be invalid, note the reason.

**Petitions Requiring 500 Signatures or Less:**

Every signature must be checked for validity (7-11-85).

**Petitions Requiring More Than 500 Signatures:**

Each of the first 500 signatures must be checked for validity. The Board has the option to either check every one of the remaining signatures or to use the percentage method to check the remaining signatures.

Percentage Method: The percentage method is designed to save time and simplify the process of checking large petitions. Beginning with the 501st signature, at least one out of every ten of the remaining signatures must be checked for validity. After checking those signatures, a percentage valid number is determined *(see Example A below)*. This percentage is then applied to the total number of remaining signatures. This number is then added to the total number of valid signatures found in the first 500 signatures. If that total is equal to or in excess of the total number of valid signatures needed, the petition is valid. If the total is less than the total number of valid signatures needed, the Board must check every signature over 500 separately (7-11-85).

It is important to use a random method of choosing which signature(s) in each group of ten is to be checked for validity. A random method guards against any potential bias in choosing the signature. For example, it would be easier for the person checking the signatures to choose only signatures that were accompanied by voter registration numbers, but that practice could skew the result of the percentage method. The SEC recommends picking a number between 1-10 to be checked before beginning the process. For example if the 5th signature is chosen, then the 5th, 15th, 25th, 35th, etc. signatures would be checked. If the Board chooses to check more

than 1 in 10, two or more specific numbers should be chosen. For example if the Board wanted to check 2 in every 10 signatures, the 3rd and 7th signatures could be chosen meaning the 3rd, 7th, 13th,17, 23rd, 27th, etc. signatures should be checked. Remember, these numbers will not correspond to the numbers that appear beside each signature.

***Example A:*** *A petition contains 1,034 potentially valid signatures. The petition requires 827 signatures to be valid. The Board must check the first 500 signatures individually and has the option of using the percentage method to check the remaining 534 signatures.*

*The Board checks each of the first 500 signatures and determines that 420 are valid.*

*The Board decides to use the percentage method to check remaining signatures. The Board must check one in every ten signatures. The Board decides to begin with the 503rd signature. The Board then checks every signature at a ten signature interval, checking the 503rd signature, the 513th signature, the 523rd signature, and so on through the 1,033rd signature. At this point, the Board has checked 54 signatures. The Board found 42 of those signatures to be valid. The Board uses the percentage method to determine the total number of valid signatures in this group. The formula is:*

*(Number of Valid Sigs. ÷ Number of Sigs. Checked) x Total Number of Sigs.*

*In this example: (42 ÷ 54) x 534 = 415*

*The Board then adds the number of valid signatures from the first 500 (420) to the number of valid signatures determined via the percentage method (415) and finds there are 835 valid signatures in the petition (420 + 415 = 835). The total number of valid signatures (835) is more than the total number of signatures required (827). The Board certifies that the petition is valid.*

*Had this scenario resulted in fewer than the required 827 valid signatures, the Board would have been required to return to the remaining group of signatures, beginning with the 501st, and check each individual signature.*

**Notes on Signature Verification**

- Any page of a multi-county petition that features signatures of voters from more than one county will be sent to only the one county listed at the top of the page. Signatures from other counties will be disregarded.
- If any petition page has no statement of purpose, or features an invalid statement of purpose, signatures from that petition page will be disregarded.

### 6.7.3 Petition Check Worksheet

When the process for checking the petition is complete, the Board must complete Part II of the Petition Check Worksheet. This worksheet provides details of the signature verification process including how many signatures were rejected broken down by the reason for rejecting them. Once complete, the worksheet should be signed and a copy provided to the person who submitted the petition. The original worksheet should be retained with the petition for archival purposes.

### 6.7.4 Petition Certification

The receiving authority must notify the petitioner of the results of the petition verification. This can be done by letter accompanied by a copy of the completed Petition Check Worksheet.

If the Board is not the receiving authority, the Board must report the results of the signature verification process to the receiving authority. This notification can be perfected by providing the authority with a copy of the Petition Check Worksheet.

# 7. Candidate Nomination and Certification

## 7.1 Methods of Nomination for Partisan Office

Candidates seeking public office in a general or special election may be nominated by:

- Political Party (either by primary or convention), or by
- Petition. *For details on the nomination by petition process see Title 6 "Petitions."*

A candidate for a public office who was defeated in a party primary or party convention may not have his name placed on the ensuing general or special election ballot. However, this shall not prevent a defeated candidate from later becoming his party's nominee for that office in that election if the candidate first selected as the party's nominee dies, resigns, is disqualified, or otherwise ceases to become the party's nominee for this office before the election is held. (7-11-10)

## 7.2 Nomination by Political Party

Any candidate seeking nomination by political party, whether by primary or convention, must file certain documents and pay certain fees (if necessary) with the appropriate election authority (SEC or Board) within a specified filing period

*For detailed instructions on this subject, see PRO 1310 – Procedures for Conducting Partisan Candidate Filing.

### 7.2.1 Filing with Multiple Parties (Fusion Candidates)

Each of the following requirements must be met for the name of a candidate to be placed on the ballot in a General Election as the nominee of more than one party for the same office:

- The candidate must file a Statement of Intention of Candidacy/Party Pledge (SICPP) form between noon, March 16th and noon, March 30th with the appropriate Board/SEC for at least one of the parties through which he wishes to gain ballot access.

- The candidate must file an additional SICPP form with the appropriate Board/SEC for each additional political party through which the candidate wishes to gain access. The additional SICPP form is not required to be filed during the March filing period. However, the additional SICPP form would have to be filed early enough to allow time for the additional political party to nominate the candidate at convention and certify the candidate to the appropriate Board/SEC by the noon, August 15, deadline for certification of candidates. Candidates should check with political parties regarding dates and times of party conventions.

- The candidate must not have been defeated in any primary or convention preceding the election.

- Each party must certify the candidate to the appropriate election commission by noon, August 15th.

See 7-11-10, 7-11-15, 7-11-210, and 7-13-350.

### 7.2.2 Filing for Multiple Offices

A candidate may file and run for two separate offices in the same election. While there is no state statute prohibiting this practice, there could be party rules prohibiting the party from accepting filing for two offices from the same candidate (4-22-1982 AG Opinion). If a candidate were to appear on the ballot as a candidate for two offices and win both offices, he could only accept one office (S.C. Constitution, Article VI, §3). The office the candidate does not accept would have a vacancy to be filled in the appropriate manner for that office.

### 7.2.3 When a Candidate's Name May Not Be Placed on Ballot

No candidate's name may appear on a primary election ballot, convention slate of candidates, general election ballot, or special election ballot, except as otherwise provided by law, if (1) the candidate's statement of intention of candidacy and party pledge has not been filed with the Board or SEC, as the case may be, as well as any filing fee, by the deadline and (2) the candidate has not been certified by the appropriate political party as required by Sections 7-13-40 and 7-13-350, as applicable. The candidate's name must appear if the candidate produces the signed and dated copy of his timely filed statement of intention of candidacy. An error or omission by a person seeking to qualify as a candidate pursuant to this section that is not directly related to a constitutional or statutory qualification for that office must be construed in a manner that favors the person's access to the ballot. Substitution of Candidates Prior to Primary or Convention

### 7.2.4 Substitution of Candidates for Party Nomination

If after the filing period closes and before the primary, there are two candidates for any one office, and one or more of the candidates dies or withdraws; the state or county party, as the case may be, may afford the opportunity for the entry of other candidates for the office involved. In the case of State House of Representatives or State Senate, the discretion must be exercised by the state committee (7-11-15(F)).

Political parties must act reasonably in the exercise of this discretion and must act within a reasonable period of time (4-18-1996 AG Opinion).

### 7.2.5 Substitution of Party Nominees

#### 7.2.5.1 Substitution of Candidates Selected by Primary

If a candidate selected by party primary dies, becomes disqualified, or resigns his candidacy for a legitimate nonpolitical reason (see “Legitimate Nonpolitical Reasons” below), the vacancy must be filled in a special primary. The filing period for this special primary opens the second Tuesday after the death, disqualification, or approval of the resignation for one week. The special primary must be conducted on the second Tuesday immediately following the close of the filing period. Any runoff would be held two weeks following the special primary.

If the nomination is certified two weeks or more before the date of the general election, the office is filled at the general election. If the nomination is certified less than two weeks before the date of the general election, the office is filled in a special election held on the first Tuesday in the month following the general election.

If the party nominee was unopposed, each certified political party has the privilege of nominating a candidate for the office in the same manner as described above. (7-11-55)

#### 7.2.5.2 Substitution of Candidates Selected by Convention

If a candidate selected by party convention dies, becomes disqualified, or resigns his candidacy for a legitimate nonpolitical reason (see “Legitimate Nonpolitical Reasons” below), and sufficient time does not remain to hold a convention, the respective state or county party executive committee may nominate a nominee for the office. (7-11-50)

#### 7.2.5.3 Legitimate Nonpolitical Reasons

"Legitimate nonpolitical reason" is defined in 7-11-50 as:

a) reasons of health, which include any health condition which, in the written opinion of a medical doctor, would be harmful to the health of the candidate if he continued;

b) family crises, which include circumstances which would substantially alter the duties and responsibilities of the candidate to the family or to a family business;

c) substantial business conflict, which includes the policy of an employer prohibiting employees being candidates for public offices and an employment change which would result in the ineligibility of the candidate or which would impair his capability to carry out properly the functions of the office being sought.

A candidate who withdraws based upon a legitimate nonpolitical reason which is not covered by the inclusions in (a), (b) or (c) has the strict burden of proof for his reason.

A candidate who wishes to withdraw for a legitimate nonpolitical reason shall submit his reason by sworn affidavit. This affidavit must be filed with the state party chairman of the nominee's party and also with the Board if the office concerned is countywide or less and with the SEC if the office is statewide, multi-county, or for a member of the General Assembly. A substitution of candidates is not authorized, except for death or disqualification, unless the Board/SEC to which the affidavit is submitted approves the affidavit as constituting a legitimate nonpolitical reason for the candidate's resignation within ten days of the date the affidavit is submitted to the Board/SEC.

## 7.3 Filing for Nonpartisan Offices for General Election

Any candidate for a nonpartisan multi-county district, county wide or less than county wide office, to be voted on during the General Election, who qualifies by SIC, must file this statement with the authority responsible by law for conducting the election not later than noon, August 15th; or if August 15th falls on a Sunday, by noon on the following Monday.(7-13-352) Depending on the office, the filing deadline could be earlier, but the candidates must be filed and certified to the authority charged by law with conducting the election no later than noon, August 15th.

# 8. Ethics

Candidates must file two forms online with the State Ethics Commission:

- Statement of Economic Interest (SEI)
- Campaign Disclosure (CD)

Refer candidates to the State Ethics Commission for any information regarding these filings:

- http://ethics.sc.gov
- (803) 253-4192

It is a good business practice for officials accepting filing to notify candidates of this requirement. It is ultimately the candidate's responsibility to file an SEI and CD. Election officials do not accept copies of the SEI or CD and have no obligation to ensure candidates have made these filings. Candidates who do not file an SEI and CD may be subject to fines by the State Ethics Commission. A candidate's failure to file an SEI or CD has no impact on the candidate's access to the ballot or his ability to win an election.

# 9. Ballots

## 9.1 Types of Ballots

There are seven types of ballots:

- Primary
- Primary run-off
- Instant run-off
- General Election
- Absentee
- Emergency/ provisional
- Failsafe at the polls
- Failsafe at the county office

### 9.1.1 Primary Ballots

Primary ballots are used when the Republican and/or Democratic parties are having elections for their party nominees. These ballots are separate styles on the iVotronic voting system, and separate paper ballots for absentee and emergency/provisional. Primary ballots are used when more than one person files for a particular office. Winners are determined by a majority vote.

Names of candidates who are unopposed in the primary election are not listed on the primary ballot. These candidates are certified by their party as the party's nominee for the General Election.

### 9.1.2 Primary Run-off Ballots

Primary run-off ballots are used when a candidate in the Republican and/or Democratic primary does not receive a majority of votes to be elected in the first primary. The primary run-off ballot contains the names of only the two candidates who received the most votes in the first primary but neither receiving a majority of votes. Winners are determined by a plurality vote.

### 9.1.3 Instant Run-off Voting (IRV) Ballots

Instant run-off voting (IRV) ballots are used only for military stationed inside the U.S. and outside of the U.S. and citizens residing outside of the U.S. who choose to vote in a primary. These ballots are mailed with the first primary ballot. Voters rank the candidates in their order of preference, for example 1st choice, 2nd choice, 3rd choice, and 4th choice. The candidate with the lowest ranking that is involved in the runoff will receive the vote.

### 9.1.4 General Election Ballots

General Election ballots contain all party candidates, non-partisan and petition candidates, and statewide and local questions and referendums. Straight party voting is allowed for these type ballots. Winners are determined by plurality vote.

### 9.1.5 Absentee Ballots

Absentee ballots are given to voters who, for a number of reasons, are not able to vote at their pre-determined precinct and polling place. To be counted, these ballots must be returned to the absentee precinct (the county office) no later than when the polls close. See chapter on Absentee.

### 9.1.6 Emergency / Provisional Ballots

Emergency/ provisional ballots are optical scan paper ballots used at the polls for one of two reasons:

- In case of an emergency when a voting machine is inoperable, this paper ballot should be used for voting until such a time as when this machine can become operable again.
- When a voter challenges another voter, this ballot is used for voting. This ballot is placed in a provisional ballot envelope which is then placed in a locked ballot box. This ballot is not counted on election night, but instead, the status is determined at the Board's provisional ballot hearing.

### 9.1.7 Failsafe Provisional Ballots

Failsafe Provisional ballots are optical scan paper ballots used at the polls when a

voter, due to a residency change, may choose to vote this ballot at his previous polling place. This ballot only contains offices that are statewide, Congressional, countywide, and/or municipal-wide. In addition to voting this ballot, voters must complete updated change of address information. This ballot is not counted on election night, but instead, the status is determined at the Board's provisional ballot hearing.

### 9.1.8 Failsafe Ballots

Failsafe ballots are voted on the iVotronic voting machine at the county office on election day. This ballot is used when a voter, due to a residency change, may choose to go to the county office, update his address, then vote a full ballot. This ballot will contain all offices for which the voter is allowed to vote.

## 9.2 Ballot Standards and Specifications

Please refer to the Election Definition Guide (EDG) and the Ballot Standards Document (BSD) for specifications used when defining election databases and creating DRE and optical scan ballots.

### 9.2.1 Optical Scan Ballots

Ballots produced for Absentee by mail, failsafe, emergency/provisional must contain a stub listing the name of the election, date of election, county, precinct, line for managers' initials, and ballot number. The same information, with the exception of numbering and managers' initials, must appear on the body of the ballot above offices and candidates on the ballot. The body of the ballot must also have clear instructions for the voter.

### 9.2.2 Voting Machine Ballots

Ballots displayed on the voting machine must contain the name of election, date of election, county, and precinct name.

### 9.2.3 Numbering Paper Ballot

Each absentee mail out ballot, emergency/ provisional ballot and failsafe ballot must be pre-numbered consecutively for each precinct beginning with the number 1. The number must go on the stub only. (7-13-320 B and 7-13-610 A)

### 9.2.4 Standard Office Titles For Ballot Preparation

See BSD, available on ElectionNET.

### 9.2.5 Number of Ballots to be Printed

- Absentee - not to exceed 15% of the registered voters in the county (7-15-360)
- Emergency/ Provisional - not to exceed 10% of the registered voters in a precinct (7-13-430 A)
- Failsafe - not to exceed 5% of the registered voters in a precinct. This ballot must contain only federal, statewide, countywide, and municipal-wide offices (7-13-430 C)

When a sufficient number of official ballots are not available for all qualified electors present at the polling place to vote, the managers are required to provide ballots made as nearly as possible in the form of the official ballot to those electors for whom official ballots are unavailable. For all purposes of the election laws of this State, these ballots are the same as official ballots.

Any manager who fails to comply with the requirements of this law is guilty of a misdemeanor and, upon conviction, must be fined not more than $500. (7-13-430 B)

### 9.2.6 Providing Ballot Styles To SEC Prior To Election

The Board must provide a copy of each ballot style to be used for primary, general, and special elections in the absentee precinct to the SEC not later than September 15 in the case of General Elections, and not later than 40 days prior to the date of the election in the case of special and primary elections.

If the ballot styles are not available by these deadlines, the executive director of the SEC must determine when absentee ballots for that county will be available. If a determination is made that absentee ballots will not be available in sufficient time to adequately effectuate absentee voting, the executive director is empowered to direct

the Board to provide the blank ballots provided by 7-15-360 until the regular ballots are available. The executive director must also notify the chair of the county's legislative delegation of findings and action taken. (7-13-320 F)

**NOTE:** Ballot styles needed for any specific election can be determined by producing a ballot style report or the Ballot Styles tab in VREMS.

### 9.2.7 Order of Offices and Parties on General Election Ballot

The order of offices on the General Election ballot changes from year to year. See BSD, available on ElectionNET, for yearly specific order.

### 9.2.8 Listing Of Names On the Primary Ballot

In a primary election, candidates' names must be listed in alphabetical order. (7-13-610). Only those candidates with primary opposition will have their names on the primary ballot.

### 9.2.9 Use of Candidate's Name on Ballots

The name of a candidate authorized by law to appear on a ballot in a primary, general or special election in this State for any office may be one of the following or a combination:

- the candidate's given name;
- a derivative of the candidate's given name; or
- a nickname which bears no relation to the candidate's given name but is used in good faith and for honest purposes. Such nicknames cannot exceed 15 letters on the ballot.

The derivative name or nickname may not imply professional or social status, an office, or military rank.

A candidate, who wishes to use a permitted derivative name or nickname, will present written documentation of the name he wishes to have appear to the Board. This notification must be given before the deadline for receiving or certifying candidates' names for inclusion on the ballot. He will present evidence as required by the Board that the name shown is a derivative name or nickname.

In deciding whether the name shown is the candidate's derivative name or nickname, the authority conducting the election will consider appropriate criteria, including, but not limited to the following:

- Whether the name is the designation by which the candidate is usually and commonly known in the community in which he resides or called by others.
- Whether the name is the designation by which the candidate calls himself or which he has adopted.
- Whether the name is the designation under which the candidate transacts private and official business.

The SEC may promulgate regulations to carry out the provisions of this section, including, but not limited to, forms to be completed by the candidate and the deadline by which a candidate will show the name he wishes to have appear on the ballot. (7-13-325)

### 9.2.10 Location For Write-In Candidates On Ballot

Ballots, except primary and run-off ballots, will contain a place for the voters to write in the name of any other person for whom they wish to vote for any office except President and Vice-President. 7-13-430 and 7-13-620

## 9.3 Oath of Ballot Printer

The printer selected to print any official ballots is administered an oath by the chairperson of the Board. (7-13-420) This oath will be reduced to writing and signed by the printer. A similar affidavit must be signed by any employee or other person engaged upon the work or who will have access to the ballots.

The printer's oath should read: "I, __________, do solemnly swear that I will print (insert number here) ballots according to the instructions of the _________ of _________; that I will not print or permit to be printed, directly or indirectly, more than the above number; that I will at once destroy all imperfect and perfect impressions other than those required to be delivered to the electoral board; that as soon as said number of ballots is printed I will distribute the type used for such work and that I will not communicate to anyone whomsoever, in any manner whatsoever, the size, style or contents of such ballots."

Any intentional violation of this oath will constitute the crime of perjury. Any other violation of this oath will be a misdemeanor and punished by a fine of $100 or imprisonment for 30 days in jail.

The Board is not prohibited from publishing the contents, style and size of ballots required to be printed by the printer. (7-13-420)

## 9.4 Sample Ballots

The Board must provide two sample ballots for display in each polling place. These sample ballots should be a copy of the official ballot pages. Also, it is recommended that the Board prepare sample ballots for distribution to the public. Such sample ballots should be unnumbered and have the word "SAMPLE" clearly printed on the ballots. (7-13-1740)

## 9.5 Death, Withdrawal or Disqualification of Candidate after Name Printed On Ballot

If a candidate dies, withdraws, or is disqualified from running for office in an election, and the candidate's name has already been printed on an official election ballot, it is important to take every possible measure to keep voters informed of such. Consider the office for which candidacy has been withdrawn (city, district, countywide, statewide) as well as the timing of the withdrawal as compared to the date of the election. It is clearly more feasible to incorporate more measures to inform voters in both a smaller scale election and a withdrawal occurring nearly a month before an election than a large scale election and a withdrawal occurring a couple of days before the election.

**Nomination to Fill Vacancy**

If any candidate dies, withdraws or otherwise becomes disqualified after his name has been printed on an official election ballot, and if another person is nominated to fill the vacancy, the name of the candidate nominated need not be printed on the ballot. However, the party executive committee making the nomination must certify the candidate nominated to the Board charged with the duty of printing ballots.

Votes cast for the candidate printed on the ballot that has died, withdrawn or otherwise become disqualified will be counted as votes for the candidate subsequently nominated to fill the vacancy (S.C. Code of Laws § 7-13-370).

Prudent measures to take under such a circumstance may include:

- Prepare a flyer to read: "Candidate (candidate's name) has withdrawn from the (year) (election name). (New candidate's name) has been nominated to fill this vacancy. (Candidate's name) will still appear on your ballot. A vote for (candidate's name) will be counted as a vote for (new candidate's name)."

- Post the flyer at the qualification table in polling places.
- Post the flyer on the wall of the precinct in areas visible to voters while waiting in line and near the voting booths.
- Post the flyer inside the voting booth.
- Note withdrawal and subsequent nomination in the email message sent to UOCAVA voters (if withdrawal occurs in time).
- Notify news stations and other local media.
- Post on social media.
- Post on the county website.

**No Nomination to Fill Vacancy**

If any candidate dies, withdraws, or otherwise becomes disqualified after his name has been printed on an official election ballot, the ballot does not have to be reprinted. The following are prudent recommendations to ensure every measure possible is taken to keep the voter informed:

- Strike through the candidate's name on optical scan ballots. Make a straight line through the name. Avoid marking the oval. Use a blue or black regular ink pen. Do not use a Sharpie or other marker to prevent the ink from bleeding through the ballot.
- Prepare a flyer to read: "The following candidate(s) have withdrawn from the (year) (election name):" Then list candidate(s) below. This allows for additional withdrawals to be added to the list. The flyer could be provided as a template.
- Place a copy of the flyer in absentee by mail packages.
- Post the flyer on the qualification table in polling places.
- Post the flyer on the wall of the precinct in areas visible to voters while waiting in line and near the voting booths.
- Post the flyer inside the voting booth.
- Note withdrawal in the email message sent to UOCAVA voters (if withdrawal occurs in time).
- Notify new stations and other local media.
- Post on social media.

- Post on the county website.

**When Candidate's Withdrawal Creates a Write-In ONLY Situation; No Nomination to Fill Vacancy**

If the only candidate on the official election ballot for a given office withdraws from the election, and no new candidate is nominated to fill the vacancy, the only way the office can be filled is by a write-in candidate. The following are prudent recommendations to ensure every measure possible is taken to keep the voter informed:

- Strike through the candidate's name on optical scan ballots. Make a straight line through the name. Avoid marking the oval. Use a blue or black regular ink pen. Do not use a Sharpie or other marker to prevent the ink from bleeding through the ballot.

- Prepare a flyer to read: "Candidate (candidate's name) for the office of (name of office) has withdrawn from the (year) (election name). Because (candidate's name) was the only candidate listed on the ballot for this office, you must write-in a candidate to cast a vote for election of this office."

- Place a copy of the flyer in the absentee by mail packages.

- Post the flyer at the qualification table in polling places.

- Post the flyer on the wall of the precinct in areas visible to voters while waiting in line and near the voting booths.

- Post the flyer inside the voting booths.

- Note withdrawal in the email message sent to UOCAVA voters (if withdrawal occurs in time).

- Post on social media.

- Post on the county website.

## 9.6 Reprinting Ballots to Delete Name of Deceased or Withdrawn Candidate

After the official ballots have been printed, the death or withdrawal of a candidate whose name is printed on the official ballot will not require the Board to reprint the ballots. However, the Board may have the ballots reprinted and substituted for the first printed ballots if the substitution is deemed feasible and advisable. (7-13-380)

## 9.7 Limitation on Withdrawal of Candidate

After the notification of nomination of a candidate for office by the proper authority, a candidate will not be withdrawn from having their name on the ballot unless he has made a written request at least 30 days before the day of election. (7-13-390)

## 9.8 Form of Ballot When Questions Are Submitted

Questions or issues submitted to a public vote will be a statement of the question(s) and will have the following words after the question:

- In favor of the question or issue (as the case may be)
- Opposed to the question or issue (as the case may be)

Some questions will have the following words:

- Yes
- No

How the question is to be listed on the ballot depends on the wording of the question that was presented to the Board by the authority responsible for providing the question.

Instructions must be given to the voter on how to mark the ballot either in favor of or against the question. (7-13-400)

## 9.9 Time for Submitting Referenda Questions to Board

Persons may submit no question to the qualified electors in a referendum held at the time of a general election unless they submit the question to the appropriate Board to be placed on the ballot by noon on August 15 or, if August 15 falls on a Sunday, by noon on the following business day. 7-13-355

## 9.10 Explanation of Constitutional Amendments

When any proposed amendment to the Constitution is of such wording that it might not be clearly understood by the voters, a simplified or, when appropriate, more detailed explanation of the meaning and effect of such amendment shall be placed upon the ballot along with the proposed amendment question.

The determination of whether or not a proposed constitutional amendment requires a simplified or more detailed explanation is given to the Constitutional Ballot Commission. This commission is composed of the Attorney General, the Director of the SEC and the Director of the Legislative Council.

Printed copies of these explanations shall be made available at each voting precinct. These copies are usually posters, printed by the SEC, stating the question and explanation. The provisions of this section only apply to statewide amendments. (7-13-2120)

The SEC shall arrange for the placement of amendment explanations on ballots and make them available to the news media, upon request, at least 10 days prior to the general election.

## 9.11 Explanation of County Ballot Question

If the Board determines that a referendum question is of a nature that it might not be clearly understood by the voters, it may prepare a simplified or, when appropriate, more detailed explanation of the question that must be placed on the ballot along with the referendum question.

Printed copies of these explanations must be made available at each voting precinct. The Board shall make the ballot question available to the news media in the county at least 45 days in advance of the date of the referendum.

No referendum may be challenged on the grounds that the Board failed to act in a timely manner to implement this section. The provisions of (7-13-2130) apply with respect to any proceeding challenging a referendum based on any explanation provided by the electoral board. (7-1-100)

# 10. Election Preparation

## 10.1 Notice of Election

The Board must publish two notices of general, municipal, special, and primary elections held in the county in a newspaper of general circulation in the county or municipality, as appropriate. Included in each notice must be:

- A reminder of the last day persons may register to be eligible to vote in the election for which notice is given.
- Notification of the date, time, and location of the hearing on provisional ballots challenged in the election.
- A list of the precincts involved in the election.
- The location of the polling places in each of the precincts.
- Notification that the process of examining the return-addressed envelopes containing absentee ballots may begin at 9:00 a.m. on election-day at a place designated in the notice by the Board.

The first notice must appear not later than 60 days before the election and the second notice must appear not later than two weeks after the first notice. (7-13-35)

## 10.2 Definition of Poll Managers and Clerks

Those who work at the polls are referred to as poll managers. Those who are in charge of polling places and are responsible for obtaining and returning voting machines and supplies are referred to as clerks.

## 10.3 Number of Poll Managers and Clerks

For the general election held on the first Tuesday following the first Monday in November in each even-numbered year, the Board must appoint three poll managers

for the first 500 electors in each polling place, and three additional poll managers for every additional 500 electors, or portion thereof.

For primary elections held on the second Tuesday in June of each general election year, the Board must appoint three poll managers for the first 500 electors in each polling place, and may appoint three additional poll managers for every additional 500 electors, or portion thereof.

For all other primary, special, or municipal elections, the Board must appoint three poll managers for the first 500 electors in each polling place and one additional poll manager for every additional 500 electors, or portion thereof.

The Board must also appoint from among the poll managers a clerk for each polling place; and none of the officers may be removed from office except for incompetence or misconduct. The clerk will oversee that the responsibilities of all poll managers for the polling place are carried out according to proper law and procedures. (7-13-72)

## 10.4 Number of Polling Location Technicians

A rover is an electronic voting machine technician who, on election-day, travels to polling places throughout a predetermined geographic area providing assistance to poll workers. The number of rovers that a Board uses depends on the number of precincts involved in the election. Generally, one rover should be used for every seven precincts.

## 10.5 Parties Submitting Names for Poll Managers

45 days prior to any primary, except municipal primaries, each political party holding a primary may submit to the Board a list of prospective managers for each precinct. The Board must appoint at least one manager for each precinct from the list of names submitted by each political party holding a primary. However, the Board may refuse to appoint any prospective manager for good cause. (7-13-72)

## 10.6 Conduct of Election Training

Everyone appointed as a poll manager in a primary, general, or special election must complete a training program approved by the SEC. The Board must conduct the training program.

# 10.7 Poll Manager's Oaths

Poll Managers and Clerks are required to take two oaths:

1. After their appointment, the managers and clerks must take the following oath of office: "I do solemnly swear (or affirm) that I am duly qualified, according to the Constitution of this State, to exercise the duties of the office to which I have been appointed, and that I will, to the best of my ability, discharge the duties thereof, and preserve, protect and defend the Constitution of this State and of the United States. So help me God." The oath must be immediately filed in the office of the clerk of court of common pleas of the county in which the managers and clerks are appointed, or if there is no clerk of court, in the office of the Secretary of State. (7-13-70).
2. Before opening the polls on election day, the poll managers must take and sign the following oath: "We do solemnly swear that we will conduct this election according to law and will allow no person to vote who is not entitled by law to vote in the election, and we will not unlawfully assist any voter to prepare his ballot and will not advise any voter as to how he should vote at this election." This oath must be kept on file along with the ballots and other election materials from that precinct. (7-13-100)

Best Practice: Place both oaths on one form and include it in precinct supplies. Each manager signs the form attesting to both oaths. After the election make copies and file them with the clerk of court. Keep the originals with the election materials for that precinct. This practice simplifies the dual oaths into one process while ensuring the requirements of the law are met.

# 10.8 Voting Machine Instruction for Poll Managers and Clerks

Not more than 30 days before each election, the Board will instruct or provide instructions to poll managers and clerks about their duties in the conduct of the election and the use of voting machines. The Board will not permit any person to serve as a poll manager or clerk who is not fully qualified to conduct an election with the voting machine. Nevertheless, nothing will prevent the appointment of a person as a poll manager or clerk of election to fill a vacancy in any emergency. (7-13-1700)

# 10.9 Approval of Statewide Voting System

The SEC, acting as the State Board of Voting Machine Commissioners, has approved

a uniformed, statewide electronic voting system for use in South Carolina.

The iVotronic voting system has been approved for use in all precincts and for walk-in absentee voting. Optical scan voting has been approved for by-mail absentee voting. Optical scan ballots are tabulated using an M100 or M650 optical scanner.

## 10.10 Demonstrations for Instruction to Voters

The Board may designate suitable and adequate times and places for the demonstration of the voting machines. These machines should contain sample ballots, showing the titles of offices to be filled and, so far as practicable, the names of the candidates to be voted for at the next election. No voting machine will be used for this instruction after being prepared and sealed for use in an election. (7-13-1670)

## 10.11 Custodians of Voting Machines

For preparing, testing, and delivering the machines, the Board may employ one or more competent persons, to be known as the custodians of voting machines. They must be fully competent, thoroughly instructed and sworn to perform their duties honestly and faithfully. For these purposes, custodians will be appointed and instructed at least 30 days before the election and will be considered as election officers. (7-13-1690)

## 10.12 Number of Voting Machines

At least one voting machine for each 250 registered voters or portion thereof, or as near thereto as may be practicable is required. (7-13-1680)

## 10.13 Custody and Maintenance of Voting Machines

Voting machines must be kept in complete and accurate working order and in proper repair.

The voting machines should be used in all elections in the county or municipality as the officials holding the election may determine. The governing body of the county or municipality owning the machines will have custody of the machines when not in use at an election. (7-13-1680)

## 10.14 Preparation of Voting Machines

Before preparing a voting machine for any election at which candidates for more than one political party or candidates nominated by petition are to be voted for, written notice will be mailed to the chairperson of each of the county political parties that have certified candidates stating the time and place where the machines will be prepared.

At such time, one representative of each such political party will be afforded an opportunity to see that the machines are in proper condition for use at the election. When such representatives have examined a machine, it will be sealed with a numbered seal in their presence. Such representatives will certify as to the numbers of the machines; that all public counters are set at zero (000; and as to the number registered on the protective counter and the number on the seal.

When a voting machine has been properly prepared for an election, it will be locked or sealed against voting. The seals must be in the custody of the Board and properly recorded on a seal envelope. The voting machines must be delivered to the poll managers as provided by law. (7-13-1750)

## 10.15 Machines and Other Equipment Are In Place and In Good Order

The Board must have the voting machines and associated equipment at the polling places before the time fixed for the opening of the polls. The voting machines may be taken to the polls by the clerks or the Board may have the machines delivered prior to election-day. The machines must not contain votes and otherwise be in good and proper order for election use. (7-13-1760)

## 10.16 Duty to Protect Machines

After the voting machines have been delivered to the polling places, it shall be the duty of the Board to provide ample protection against molestation or injury to the machine. (7-13-1860)

## 10.17 Ballot Boxes

At least one ballot box per precinct should be provided for emergency, provisional,

and failsafe ballots. Each box must have a sufficient lock to ensure the security of the ballots. (7-13-840)

## 10.18 Sample Ballots

The Board must provide two sample ballots for each precinct. These ballots will be arranged in the form of a diagram of the entire front of the voting machine as it will appear on election-day. These sample ballots will be posted at the polling place on election-day. (7-13-1740)

## 10.19 Official Voter List and Poll List for Primary, General, Special and Municipal Elections

The Board will maintain custody of the voter registration list and poll list prior to each election. The voter registration list and poll list are provided to the clerks of election of each precinct who are responsible for the care and custody of the lists (7-5-430).

At least one week prior to each primary, general, or special election the SEC will provide the voter registration list and poll list to the Board. (7-5-430) All voter registration lists contain the names of both active and inactive voters.

At least one week prior to each municipal election the SEC will provide the voter registration list and poll list of all registered voters in each precinct or ward of the municipality to the municipal election commission. (7-5-430 and 7-5-660)

## 10.20 New Election Ordered By the Governor

When the election officials charged with ordering or conducting an election have neglected, failed, or refused to order, provide for, or hold the election at the scheduled time, or if for any reason a competent authority declares the election void, and these facts are made satisfactory to the Governor, he will, should the law not provide for otherwise, order an election to be held at a particular time and place. The Governor may designate the existing election official or another person as he may appoint to perform the necessary official duties pertaining to the election and to declare the result. (7-13-1170)

# 11. Checklist for Opening and Closing Polls with iVotronic

## 11.1 Assembling the Voting Booth

☐ 1. Find the seal near the handle of the booth. Verify the seal number and make sure seal is still intact. Break seal and place in envelope designated for used seals.




☐ 2. With the carrying case handle in front of you, slide the blue plastic lever to the right and open the lid exposing the voting booth legs and cord.

☐ 3. Remove the four folding legs and unfold them. Set them aside.




☐ 4. Close the lid.

☐ 5. Turn the unit over exposing the openings for the 4 legs.

**To insert the legs:**

☐ 6. Firmly push the black tipped end of the leg into the opening while making a quarter turn (either direction) until it is secure. Repeat for each leg.

☐ 7. With two people, set the booth on its feet.






☐ 8. Unwind the cord and put it in the notch on the lid.

☐ 9. The two blue latches indicate the front of the booth.

☐ 10. Unlatch the blue latches.

☐ 11. Open the cover.

☐ 12. Lift the two sides and snap into the back of the cover.

☐ 13. Lift the center panel upwards.

☐ 14. Unplug the power cable from the back of the voting terminal.




☐ 15. Tilt the terminal up from the rear and unsnap the prop bar located on the back of the voting terminal.

☐ 16. Reconnect the power cable to the terminal.

☐ 17. Daisy chain the power cords of the booths together plugging the last one into a main power outlet. You can have up to 10 booths daisy changed together.




## 11.2 Opening the Polls

☐ 18. Disconnect ***one*** terminal from its power source at the back of the terminal. **DO NOT** disconnect the booth from its main power source.

☐ 19. Remove the terminal from the booth and set it on a table.

☐ 20. Verify the seal on the flash card door with the number on the seal envelope.

☐ 21. Place the COMMUNICATION PACK on the table next to terminal.

☐ 22. ***THIS TERMINAL WILL BE OPENED LAST! DO NOT OPEN THIS TERMINAL AT THIS TIME***.

☐ 23. Remove the **GREEN MASTER PEB** from the COMMUNICATIONS PACK. Leave the **RED ACTIVATOR PEB'S** in the COMMUNICATIONS PACK.

☐ 24. Insert the **GREEN MASTER PEB** into the first terminal you wish to open. (**NOT THE ONE ON THE TABLE NEXT TO THE COMMUNICATIONS PACK**)

☐ 25. The following screen will appear:

WARNING: DO NOT REMOVE PEB

Retrieving ballot from PEB
You will be notified when it is safe to remove PEB.

PLEASE WAIT …

Caution: If the PEB is removed during this operation
The process will need to be restarted.

THIS PROCESS MAY TAKE A FEW MINUTES.

☐ 26. Wait until the precinct Name appears at the top of the screen.

☐ 27. Verify the name of the precinct.

☐ 28. If the polling location name is correct, select "**Yes**". If it not correct, select "**No**". You will be instructed to remove the **PEB** and contact your local election staff.

☐ 29. If "**Yes**" was selected the terminal will now display the following message:

> WARNING: DO NOT REMOVE
>
> PEB
>
> Terminal is being opened for voting.
> You will be notified when it is safe to
> remove PEB.
>
> PLEASE WAIT …
>
> Caution: If the PEB is removed during
> this operation,
> the process will need to be restarted.
>
> THIS PROCESS MAY TAKE A

☐ 30. The terminal will then display the following instruction:

> You must remove the PEB now to
>
> continue opening the terminal.

☐ 31. Remove the **GREEN PEB**. The terminal will continue to open.

☐ 32. The screen will then display the following message:

| |
|---|
| Terminal opening successful. |
| This terminal is now ready for voting |
| Insert PEB to Print Zero Tape |
| OR |
| Press VOTE Button to Exit |

☐ 33. Press vote button to exit. Remember you will only print a zero tape from the last terminal.

☐ 34. Repeat steps 24– 33 to open all terminals except for the one next to the communications pack.

➢ ***YOU WILL NOW OPEN THE LAST TERMINAL AND PRINT THE ZERO TAPE.***

☐ 35. Repeat steps 24– 33 for the last terminal. **DO NOT PRESS THE VOTE BUTTON.** Insert the **GREEN PEB** to print zero tape.

☐ 36. Select "Yes" to confirm you wish to print a zero tape.

☐ a. Make sure the communications pack is connected to the back of the voting terminal and is plugged into a power source.

☐ b. Turn the selector switch to" printer." A green light will indicate it is on.

☐ c. Press and hold the smallest black button on the printer until the green light turns on.

☐ 37. Press the **PRINT** button on the iVotronic screen to print the Zero Tape.

☐ 38. After the tape has printed, you will be asked, "**Print Another Tape?**" Select **"NO"** if you do not want to print another tape. Your election should already be set up to print two tapes.

☐ 39. Tear off the zero report by tearing towards the front of the printer.

☐ 40. The terminal will prompt you to turn off the Communications Pack. Turn the selector switch to the **OFF** position. Disconnect communication pack from terminal and unplug it from its power source. Set it aside in a secure place for the rest of the day.

☐ 41. 3 Poll Managers sign the zero tapes. One tape is to be hung at the entrance of your polling place and the other to be placed in the Communications pack with the **GREEN PEB**.

☐ 42. The terminal will be prompting you to "Press screen to continue…" Press the iVotronic screen. After the message "**Please remove PEB. Terminal is now open for voting"** appears, remove the **MASTER PEB (GREEN)**, place it in the communications pack.

☐ 43. Return the terminal to the voting booth, plug it back into the AC adapter, and make sure to unsnap the bar so the terminal is set up at an angle.

**Congratulations – The polls are now open for voting!**
**If you did not get your zero tape, you should still let voters begin voting at 7:00AM – Someone will be available to help you print your zero tape.**

## 11.3 During Voting Hours

☐ 44. To load a ballot:

a. Place an **RED ACTIVATOR PEB** into the terminal; leave the **RED ACTIVATOR PEB** in the terminal until the screen prompts you to remove it. The ballot will display.

b. If there is more than one ballot style: Select the correct ballot style, confirm the selection and remove the **PEB** to display the ballot.

➢ **Cast the vote for the voter who walked away or cancel a ballot that is accidentally loaded.**

☐ 45. Insert an **RED ACTIVATOR PEB.**

☐ 46. The screen displays **"Last ballot was not cast.**" Options are "**Cast"** or **"Cancel".**

☐

47. Touch **"Cast"** for a voter who has not cast their ballot OR touch cancel for a ballot that was loaded by accident.

☐ 48. The next screen will ask you to confirm your previous choice by pressing, **"YES"** or **"NO"**. Touch **YES**.

## 11.4 iVotronic ADA Terminal Instructions

When an Audio Ballot is selected (by pressing the diamond shaped button), the voter should be wearing the headset. The screen will go blank, the poll worker should remove the **PEB**, and the screen will display "Audio Assisted Ballot is Selected". Voting instructions will then be given.

☐ 49. To repeat instructions, press the up arrow button.

☐ 50. To begin voting, press the diamond-shaped button.

☐ 51. To move from contest to contest, use the arrow-shaped buttons to move up and down the contest titles.

☐ 52. To vote a contest, locate the contest and press the diamond-shaped button. The first candidate or selection will be read.

☐ 53. Use the up and down arrow buttons to move from one candidate/selection to the next.

☐ 54. When you locate the candidate/selection of your choice, press the diamond-shaped button to vote for that candidate/selection.

☐ 55. You may change your vote at anytime until you cast your ballot.

☐ 56. To move to the next contest, use the down arrow button. It will be necessary to scroll down through the remaining candidates/selections in the current contest, to get to the next contest.

☐ 57. When the voter reaches the end of the ballot, they will be prompted to press the vote button at the top center of the terminal. When the vote button is pressed the voter will be notified of any un-voted, or under-voted contests or even if the ballot has been left blank. The voter has the option of reviewing their ballot and making any desired changes before casting their ballot, or pressing the vote button a second time to go ahead and cast the ballot.

➢ **NOTE:** When scrolling through Contests, Candidates, or the Audio Alphabet for write-ins, it is not necessary to wait for the entire voice file to play before proceeding. This can be especially helpful when scrolling through the audio alphabet. You may press the up or down arrow buttons several times to "Skip ahead" to get to a desired alpha character, race or candidate.

## 11.5 Voting After Scheduled Poll Closing Time

☐ 58. When the terminal's internal clock reaches the pre-programmed official poll closing time and a **PEB** is inserted, the screen will display the **Close Option Menu.** If voters are still waiting in line, select the box next to "**Exit This Menu"** to initialize a ballot for the voter.

☐ 59. This Close Option Menu will come up **every time** a **PEB** is inserted past the scheduled poll closing time. Select "**Exit This Menu" each time** and initialize a ballot for each voter until all voters have been allowed to vote.

☐ 60. After all voters have completed voting, please go to the next page to Close the Polls on the iVotronic Terminals.

## 11.6 Closing the Polls

☐ 61. When closing time is reached and all voters have voted, put away all **RED ACTIVATOR PEB's** and follow the steps below to close each terminal.

☐ 62. Remove the last terminal from the voting booth and place it on a table with the Communications Pack. The last terminal is the one that you want to print your totals tape from.

| |
|---|
| ***THIS TERMINAL WILL BE CLOSED LAST!*** Please proceed to the next step. ***DO NOT CLOSE THIS TERMINAL AT THIS TIME***. |

☐ 63. Remove the **GREEN MASTER PEB** from the Communication Pack and insert

it into the first voting terminal you want to close.

☐ 64. When the terminal displays the **Close Option Menu**, select "**Close The Polls.**"

☐ 65. The terminal will display the following message:

| |
|---|
| WARNING: DO NOT REMOVE PEB<br>Preparing to collect votes to PEB<br>You will be notified when it is safe to remove PEB.<br><br>PLEASE WAIT …<br><br>Caution: If the PEB is removed during this operation,<br>the process will need to be restarted.<br><br>THIS PROCESS MAY TAKE A FEW MINUTES |

☐ 66. Remove the **GREEN MASTER PEB** when the following message is displayed:

| |
|---|
| **Terminal Closing is Complete!**<br><br>Vote Data Collection Successful<br>Audit Data Collection Successful<br>Please remove PEB. |

☐ 67. Continue closing all terminals by following the closing steps until all terminals are closed.

➢ **Print Totals Tape after all terminals are closed.**

☐ 68. Insert the **GREEN MASTER PEB** in to the machine you want to print your totals tapes from**.**

☐ 69. When prompted, answer '**Yes**' to **Print Totals**?

☐ a. Make sure the communications pack is connected to the back of the voting terminal and is plugged into a power source.

☐ b. Turn the selector switch to" printer." A green light will indicate it is on.

☐ c. Press and hold the smallest black button on the printer until the green light turns on.

☐ 70. Touch the **green** print area on the screen. Two tapes will automatically print.

☐ 71. The screen will ask, "**Do you want to print another?**" Select "**NO".**

☐ 72. Terminal will remind you to turn the communications pack off. Touch the screen to continue.

☐ 73. A message will be displayed: **"Do you want to re-collect this terminal?"**

a. Select "**No**".

b. A message in the lower left corner will display: **"Please remove PEB. Re-collection not chosen."**

☐ 74. After printing the Totals Tape, sign the tape. Place one in the communications box and one should be posted on the precinct door.

☐ 75. If your county intends to remove all flashcards from the iVotronic units at the precinct, continue with this step, if not please proceed to #76. Place in the plastic bag and place in the COMMUNICATION PACK.

☐ 76. Place the **MASTER PEB** in the COMMUNICATION PACK along with all **ACTIVATOR PEB'S.**

☐ 77. Disassemble the voting booths.

☐ 78. Verify that the COMMUNICATION PACK contains the **RED ACTIVATOR PEB's**, **GREEN MASTER PEB** and the **COMPACT FLASHCARDS** (If required by your county). Seal the COMMUNICATION PACK.

☐ Deliver the COMMUNICATION PACK to the Election's office.

# 12. Election Day / Night Procedures

## 12.1 Voter Photo ID Requirement and Exception

Voters must present one of five qualifying forms of ID listed below:

1. South Carolina driver's license
2. South Carolina ID card with photo issued by DMV *(Free of charge for persons older than 17)**
3. South Carolina voter registration card with photo
4. Military ID issued by the Federal Government**
5. United States Passport ***

* This includes the South Carolina Concealed Weapons Permit. (2016 AG Opinion)

** This includes all IDs issued by the U.S. Department of Defense to active personnel, retired personnel, spouses, dependents, civilian employees, contractors, visitors, etc. The Department of Veterans Affairs card is also considered a federal military ID under State law. (*AG opinion 2013)*

*** This includes both the booklet style U.S. Passport and the U.S. Passport card.

When a photo ID is presented, poll managers must compare the picture on the photo ID with the appearance of the voter prior to locating the voter's name on the voter registration list and proceed with allowing the voter to vote. If the manager disputes that the photo is that of the voter, the voter must be allowed to vote a provisional ballot.

If the voter has forgotten their photo ID, they may retrieve their ID and return to vote, or, vote a provisional ballot and present their photo ID to the Board prior to the provisional ballot hearing. This ballot will not count unless the voter presents their photo ID to the Board prior to the hearing.

The Board must keep a list of voters who provide the proper ID after Election Day and before the challenged ballot hearing. The list should be presented to the BOC at the challenged ballot hearing along with the challenged ballots.

### 12.1.1 Reasonable Impediment Exception

If a voter does not have one of the required forms of photo ID outlined in Section 12.1 they may still participate in the election by stating they have an obstacle preventing them from acquiring a photo ID (also known as a reasonable impediment). The voter must present a non-photo VR card and will be required to vote a Provisional Ballot after signing an affidavit stating the obstacle. This affidavit is then witnessed by a notary or, or if a notary is not present at the precinct, a poll manager. A notary may not charge the voter for witnessing services.

- A reasonable impediment is any valid reason, beyond the voter's control, which created an obstacle to the voter's obtaining the necessary photographic identification in order to vote. The reasonableness of the impediment is to be determined by the individual voter, not by a poll manager or Board. Examples of reasonable impediments are:
    - Religious objection to being photographed
    - Work Schedule
    - Unemployed and looking for work
    - Lack of transportation
    - Family responsibilities
    - Disability or illness
    - Lack of birth certificate

*This is NOT an exclusive list. Voters may suffer from a reasonable impediment that hinders their ability to obtain photographic identification not included in the examples listed above. It is not the responsibility of the poll manager to question the reasonableness of the claimed impediment.

## 12.2 Voter Name not on VR Lists

If a voter presents a valid Photo ID at the polling place and their name does not appear on the voter registration list, a poll manager must call the Board. The poll manager must give the Board the name of the voter as it appears on the Photo ID (or registration certificate if voting under the reasonable impediment exception). The Board must check its records and, if the name of the person is found and is eligible to vote in that precinct, the poll manager must verify the voter's date of birth. The voter must be permitted to vote if correctly verifying the date of birth. The Board must accept all collect calls from poll managers on Election Day. (7-13-820)

Poll managers should supply as much voter information as possible to the Board to facilitate the search for that voter's records.

If the voter's name cannot be verified by the Board, or the poll manager is unable to contact the Board, the voter must be allowed to vote a provisional ballot. These provisions are in addition to the procedure provided in 7-5-440 to determine the right of a person to vote who holds a valid registration certificate.

For all voters' names, the poll managers manually record in the back of the voter registration lists or through the "add voter" feature in EVRL. The Board is responsible for researching and updating the voter's record. When adding this record to the voter registration system, the date last voted and election number must be included.

## 12.3 Marking the VR List for General Elections

On the paper voter registration list located to the right of the voter's name are columns for the voter's ballot style, a place to indicate the voter has voted, a place for the poll manager's initials, and the voter's districts.

When a voter participates in the General Election, the poll manager must write his initials in the Mgrs Initials column and shade in the voting circle under the Voted column. Along with the voter's signature on the poll list, this gives the voter credit for voting.

## 12.4 Marking EVRL for General Elections

Refer to "EVRL Manual – Poll Worker User Manual," available on ElectionNET.

## 12.5 Marking the VR List for Primary Elections

Located to the right of the voter's name on the voter registration list are columns for the voter's districts, ballot style, and for the poll manager to initial. Also on this list are circles for the poll manager to fill in which indicate the specific party's primary the voter participated in. These columns must be completed and, along with the voter's signature on the poll list, give the voter credit for voting.

A voter can only vote in one party's primary election. (7-13-1010)

## 12.6 Marking EVRL for Primary Elections

Refer to "EVRL Manual – Poll Worker User Manual," available on ElectionNET.

## 12.7 Marking the VR List for Run-Off Elections

On the voter registration list located to the right of the voter's name are columns for the voter's districts, ballot style, which party the voter wishes to vote, and for the poll manager to initial.

If a voter voted in the primary election, the manager's initials and the party in which the voter voted should have been marked by the poll manager.

In the run-off election, the voter must sign on the appropriate line on the Run-off poll list. Also the poll manager must initial next to the voter's name. For a primary run-off, the poll manager must be aware in which party's primary the voter voted and assure that voter is issued the same party's ballot.

If the voter did not vote in the primary election, the voter must sign on the appropriate line in the Run-off poll list. The poll manager must initial next to the voter's name under the "Managers Initials" column. In a primary run-off, the voter may vote in either party's run-off if both parties are having run-offs.

## 12.8 Marking EVRL for Run-Off Elections

Refer to "EVRL Manual – Poll Worker User Manual," available on ElectionNET.

## 12.9 ABS on VR List

The names of voters who have been issued an absentee ballot will be marked with an "ABS" on the voter registration list. See Absentee chapter for details.

## 12.10 Additional ID May Be Required When Voting

Under HAVA, persons who register to vote by mail are required to provide proof of identification. If proof of identification is not provided when registering to vote, the

voter will be required to provide this ID at the polls prior to voting *in addition to* the required voting identifications.

Voters required to present additional identification at the polls will have the letters "ID" in the "page" column on the voter registration list.

A voter providing any one of the five qualifying photo IDs has satisfied this requirement, and no additional ID is necessary. However, if the voter is voting a provisional ballot under the reasonable impediment exception, the voter must provide additional ID to complete the voter registration process. Additional ID may include any one of the following current and valid documents:

- Current, valid photo identification (includes employee and student IDs, does not require address)
- Utility bill (must show address in county)
- Bank statement (must show address in county)
- Paycheck (must show address in county)
- Government document (must show address in county)

If the voter does not provide this additional ID, the manager should:

- Offer the voter a provisional ballot.
- Provide a Notice of Hearing on Provisional Ballots to the voter.
- Instruct the voter to present this ID prior to the provisional ballot hearing.

## 12.11 Only One Person in Voting Booth

Only one voter shall be allowed to enter a booth at a time, and no one except as provided by other state statutes (including assistance) is allowed to speak to a voter while in the booth preparing his ballot. Minor children of a qualified elector may accompany the qualified elector in the voting booth while he is casting his ballot. The qualified elector shall attest that the persons accompanying him are the minor children of the elector (7-13-740, 7-13-770).

## 12.12 Procedure When Voting Machine Becomes Inoperative

If notified by the managers, during the time that the polls are open, that a voting machine or machines are inoperative, the Board will, if possible, substitute a machine in good working order for the inoperative machine or direct the voting machine custodian to repair the machine.

If no other machine is available and the inoperative machine can be repaired, the Board will direct the poll managers to allow voters to vote on emergency paper ballots provided for this purpose, and if they exhaust those ballots, to prepare unofficial

ballots as provided by law for use by the voters.

The managers must tally the paper ballots used with the votes recorded on the voting machine and the results declared as if there had been no accident to the voting machine. The managers will return the voted paper ballots, along with a statement why they were used, to the Board along with other election returns. (7-13-1870)

Managers should be thoroughly instructed in the procedures that they are to follow in the case of machine breakdown or malfunction. They should also be instructed in the proper canvass and return procedure to follow under normal circumstances.

## 12.13 Failsafe Procedures

Failsafe voting is designed to allow registered voters, who have moved but have failed to register at their new address, to vote in the election. Failsafe voting is available to voters in the following categories:

1. Voter moves from one address to another address within the same precinct (7-5-440).
2. Voter moves from one precinct to another precinct within the same county (7-5-440).
3. Voter moves from one county to another county in South Carolina within 30-days prior to an election (7-5-440).
4. Voter moves from State A to State B and the move occurs after the deadline in State B to register to vote in a Presidential election (Voting Rights Act of 1965).

**<u>Failsafe Voting in Municipal Elections</u>**

Failsafe voting also applies to municipal elections. The process is similar to failsafe voting in other elections, but there is one major difference:

- A voter must have resided within a municipality for 30 days or more prior to a municipal election to be eligible to vote in the election (7-5-610).

When applying failsafe voting in municipal elections, failsafe procedures as detailed below should be followed, and the poll manager should always ask the voter exactly when their residence address changed. If the voter moved into the municipality after the 30-day deadline, the voter should not be allowed to vote for municipal offices.

1. If the voter moves from a residence <u>within</u> the municipality to another residence within the municipality, failsafe procedures apply.
   a. For multi-county municipalities if the move is within the municipality but crosses county lines:
      i. Before 30 days prior to the election, the voter must meet the 30-day voter registration deadline
      ii. After 30 days prior to the election, failsafe procedures apply.
2. If the voter moves from a residence <u>outside</u> the municipality to a residence inside the municipality, the voter must have resided within the municipality for at least 30 days

to be eligible to vote in the election (7-5-610). If the voter has been a resident for at least 30 days, failsafe procedures apply.

## 12.13.1 VOTER MOVES WITHIN THE SAME PRECINCT

### 12.13.1.1 Before Election

- Voter completes change of address form.
- Issue new VR card.
- Present voter with two options:
  1. Vote on election day at new polling place
     a. If change occurs before printing of VR lists, voter's new address and any new districts will appear on list.
     b. If change occurs after printing of VR lists, write voter's new address and any new districts on list.
  2. Vote an absentee ballot (if voter qualifies).
     a. If change occurs before printing of VR lists, "ABS" will appear beside voter's name.
     b. If change occurs after printing of VR lists, mark "ABS" beside voter's name on list.

### 12.13.1.2 On Election Day

- Voter must complete change of address form. Poll managers should ensure the form is returned to the voter registration office for processing.

- Voter votes a regular ballot. Poll managers should ensure the voter receives the correct ballot with correct districts. This can be done by calling the VR office or by referring to any maps or lists on hand at the polling place.

### 12.13.2 VOTER MOVES FROM ONE PRECINCT TO ANOTHER WITHIN THE SAME COUNTY

#### 12.13.2.1 Before Election

- Voter completes change of address form.
- Issue new VR card.
- Present voter with two options:
  1. Vote on election day at new polling place
     a. If change occurs before printing of VR lists, voter's name will appear on list at new precinct.
     b. If change occurs after printing of VR lists:
        i. Give voter a letter to take to new precinct.
        ii. If possible, write voter's name, address, districts, etc. on VR list at new precinct.
        iii. If possible, strike through voter's name on VR list at previous precinct.
  2. Vote an absentee ballot (if voter qualifies).
     a. If change occurs before printing of VR lists, "ABS" will appear beside voter's name on VR list.
     b. If change occurs after printing of VR lists:
        i. Strike through voter's name on VR list at previous precinct.
        ii. Write in voter's name on VR list at new precinct and mark "ABS."

#### 12.13.2.2 On Election Day

Voter has two options:

1. Go to previous polling place and vote a limited, failsafe ballot.
   a. Voter votes using "Failsafe Provisional" optical scan ballot containing only federal, statewide, and countywide offices.
   b. Change of address is recorded on failsafe ballot envelope.
   c. Ballots are not counted until the Provisional Ballot Hearing.
2. Go to voter registration office and vote a full ballot.

a. Voter provides valid South Carolina driver's license, ID issued by DMV, VR card with photo, Military ID, U.S. Passport, or uses the reasonable impediment exception.
b. Voter completes a change of address form.
c. Change voter's address in VREMS.
d. Complete failsafe information in VREMS.
e. Voter signs failsafe poll list.
f. Voter votes a full failsafe ballot (vote is not provisional).

### 12.13.3 VOTER MOVES FROM ONE SOUTH CAROLINA COUNTY TO ANOTHER WITHIN 30 DAYS PRIOR TO AN ELECTION

#### 12.13.3.1 Before Election

- Voter must be registered in previous county.
- Voter completes application.
- Back-date the date of registration so that the voter's name will appear on the voter registration list.
- Issue VR card
- Present voter with two options:

1. Vote on election day at new polling place
   a. If change occurs before printing of VR lists, voter's name will appear on list at new precinct. Voter's name will not appear on VR list in previous precinct.
   b. If change occurs after printing of VR lists:
      i. Give voter a letter to take to new precinct.
      ii. If possible, write voter's name, address, districts, etc. on VR list at new precinct.
      iii. Notify voter's previous county of residence so that voter's name may be struck through on VR list at previous precinct.
2. Vote an absentee ballot (if voter qualifies).
   a. If change occurs before printing of VR lists, "ABS" will appear beside voter's name on VR list. Voter's name will not appear on VR list in previous precinct.
   b. If change occurs after printing of VR lists:
      i. Write in voter's name on VR list at new precinct and mark "ABS."

ii. Notify voter's previous county of residence so that voter's name may be struck through on VR list at previous precinct.

#### 12.13.3.2 On Election Day

Voter has two options:

1. Go to polling place in previous county and vote a limited, failsafe ballot.
   a. Voter votes using "Failsafe Provisional" optical scan ballot containing only federal, statewide, and countywide offices.
   b. Change of address is recorded on failsafe ballot envelope.
   c. Ballots are not counted until the Provisional Ballot Hearing.
2. Go to voter registration office in new county and vote a full ballot.
   a. Voter completes a voter registration application
   b. Add voter to VREMS
   c. Print a paper VR card
   d. Complete failsafe information in VREMS.
   e. Voter signs failsafe poll list.
   f. Voter votes a full failsafe ballot (vote is not provisional).

### 12.13.4 Voter Moves from One State to Another After the Voter Registration Deadline for a Presidential Election

If a voter moves from State A to State B and the move occurs after the deadline in State B to register to vote in a Presidential election, the voter must be allowed to vote a ballot in State A that includes only President. This can be done in person in the voter's previous county of residence or by absentee ballot, if the voter otherwise qualifies. If voting absentee, the voter should be provided an absentee ballot; if voting in person on Election Day, he should be provided a failsafe ballot. In both cases, staff must strike through all offices on the ballot other than President and Vice President.

**42 U.S.C. § 1973aa-1(e):**

If any citizen of the United States who is otherwise qualified to vote in any State or political subdivision in any election for President and Vice President has begun residence in such State or political subdivision after the thirtieth day next preceding such election and, for that reason, does not satisfy the registration requirements of

such State or political subdivision he shall be allowed to vote for the choice of electors for President and Vice President, or for President and Vice President, in such election, (1) in person in the State or political subdivision in which he resided immediately prior to his removal if he had satisfied, as of the date of his change of residence, the requirements to vote in that State or political subdivision, or (2) by absentee ballot in the State or political subdivision in which he resided immediately prior to his removal if he satisfies, but for his nonresident status and the reason for his absence, the requirements for absentee voting in that State or political subdivision.

### 12.13.5 Election Night Failsafe Procedures

- Close failsafe precinct following normal precinct closing procedures
- Print Failsafe Log
- Compare the following numbers for consistency:
  - ✓ Signatures on Failsafe Poll List
  - ✓ Ballots cast as indicated on voting machines (plus any optical scan ballots cast)
  - ✓ Ballots cast as indicated on Summary Tape
  - ✓ Ballots cast from Master PEB after reading into Unity
  - ✓ Voters listed on Failsafe Log

### 12.13.6 Post Election Day Failsafe Procedures

Failsafe provisional ballots are processed at the same time as all other provisional ballots. This is an administrative challenge. You do not have to hold a hearing, but you must ensure the voter completed a Change of Address form and that the voted ballot contains only federal, statewide and countywide offices.

Review to ensure that:

- Records of all voters who voted failsafe at the county office are properly recorded in VREMS.
- The names of all voters who voted failsafe are marked with an "FS" on the VR list at their previous precinct to ensure they are given credit for voting.

# 12.14 Distributing and Displaying of Campaign Material at Polls

Refer to “Election Day Issues” section of the Poll Manager Handbook.

**Candidates and Candidate’s Representatives**

Refer to the “Election Day Issues” section of the Poll Manager Handbook.

# 12.15 Tabulating and Reporting Absentee Ballots

The Board is responsible for tabulating and reporting absentee ballots.

At the time indicated in the notice of election (not earlier than 9:00 a.m. on election-day), the managers of the absentee precinct may examine and tabulate absentee ballots. Absentee ballot totals may not be released until the closing of the polls.

Examining absentee ballots begins by viewing the return-addressed envelopes to assure that the oath on the back of the envelope has been properly completed. Watchers may be present for the examination of return addressed envelopes. All absentee ballots received by the Board before the time for closing the polls must be examined in this manner.

If a returned-addressed envelope is received on time, signed and witnessed, the voter’s name may be read aloud to determine if that voter’s ballot will be challenged. If a ballot is challenged, the return-addressed envelope may not be opened, but put aside and the established provisional ballot procedure followed. The absentee voter whose ballot is challenged must be given reasonable notice of challenge. 7-15-420

If no challenge is issued, the managers will open the return addressed envelope and remove the enclosed “Ballot Herein” envelope. To secure the secrecy of the ballot, the ballot must be separated from the envelope and deposited into the optical scan tabulation equipment.

After 7:00 p.m., results of the absentee ballot tabulation may be reported.

# 12.16 Duplicating Optical Scan Ballots

A duplicate ballot may be required (as for instant run-off ballots) or made when the original optical scan ballot fails to read in the optical scan ballot reader. There can be many causes of an unreadable ballot: ballot improperly marked, ballot folded on timing mark, ballot damaged, ballot improperly formatted, etc.

The Board may decide not to duplicate an unreadable ballot if it is impracticable to do so. For example, if a precinct has only two provisional ballots and one is unreadable, it makes sense to simply count the two ballots by hand. However, if a precinct has many more ballots and one is unreadable, it may make sense to duplicate that single unreadable ballot so all can be totaled together by machine.

The following is a procedure on how to duplicate a ballot:

1. Assemble a three-person "Resolution Board." This board should be balanced by equal partisan representation.
2. Have a supply of each ballot style to be duplicated.
3. Have a method of marking each original ballot and corresponding duplicate ballot with a unique number. One way to do this is to have two stamps: one that reads "Original #_______," and another that reads "Duplicate #_______." The ballot could also be numbered by hand or any other suitable method.
4. Set up in an area where the public (press, candidates, citizens, etc.) is able to view the process. A representative of the commission should explain the ballot duplication procedure to any observers.
5. One member of the Resolution Board should read the votes aloud from the original ballot, while a second marks the duplicate ballot. The third member should observe the process to ensure each ballot is read and marked correctly.
6. If there is a question regarding the intent of the voter in marking the ballot, refer to the SEC procedure titled "Determining What Constitutes a Vote." Remember, according to state law (7-13-1120), a vote is counted only when there is absolutely no question in determining the voter's intent of the candidate or issue selected. In some situations, the Board must interpret whether the voter's choice can be determined and if the vote for the office or issue should be counted.
7. After each ballot is duplicated, mark the original and corresponding duplicate with a unique number so that the ballots will be numerically linked. (For example: If the first ballot to be duplicated is numbered "Original Ballot #001," its duplicate would be numbered "Duplicate Ballot #001." The second ballot to be duplicated would be "Original Ballot #002," and its duplicate would be "Duplicate Ballot #002.")
8. When all unreadable ballots are duplicated and scanned, secure all original and duplicate ballots with other precinct materials.
9. The duplication process should be completed separately for each precinct that has unreadable ballots.

Below is part of the state law that applies to duplicating ballots:

Provided, that if it appears that a ballot is torn, bent, or otherwise defaced or has been marked by other than the marking device, so that it cannot be counted by the automatic tabulating equipment, the Board may duplicate a ballot to be marked so that it can be so counted.

Such duplicate ballots, when so authorized by the Board, shall be prepared at the counting station in the presence of witnesses and substituted for the original ballots, which duplicate ballots shall be counted by the automatic tabulating equipment. The original ballots shall be preserved and all such duplicate ballots shall be clearly labeled with the word "duplicate" and shall bear a serial number which shall also be recorded on the original. At the counting station, write-in votes tabulated by the precinct officials shall be added to the results from ballots tabulated with the automatic tabulating equipment and the totals certified as the precinct count on the summary sheet.

Duplications of defective ballots will be tabulated by precinct and kept along with the original defective ballots, by precinct, in a container clearly marked "Defective Ballots of ____________Precinct (s)" sealed, signed by at least two election officials, and kept with the other election ballots. (7-13-1410)

## 12.17 ELECTION NIGHT

### 12.17.1 RETURN OF RESULTS TO ELECTION CENTRAL

Precinct clerks will return voting equipment to election central immediately after closing the polls on election night. This equipment must be checked and verified that all expected equipment was received.

The Green Master PEB containing election results must be delivered immediately to the person operating the Unity election management system. The PEB will then be inserted into a special piece of equipment where the precinct results are extracted and added to results from all other PEB's.

### 12.17.2 VERIFICATION OF TOTALS BEFORE POSTING TO PUBLIC

Before results of the election are posted on election night, the Board should take special precautions to verify totals. Instructions are provided through the Unity manuals to use when proofing results before giving them to the public.

### 12.17.3 Procedure to Receive Information – Flow of Traffic

Several people play an important role on Election Night. Below are listed the people that are needed to have a successful election.

- Election Equipment Check-In:
  - Checks in all election equipment using inventory log.
  - Cuts numbered security seals on communication packs.
- Runner:
  - Takes communication packs to UNITY computers.
  - Organizes election equipment as it is being checked-in.
- UNITY Manager Employee 1:
  - Receives green PEBs and results tapes for each precinct.
  - Reads results from green PEBs.
- UNITY Manager Employee 2:
  - Organizes green PEBs and results tapes.
  - Assists in reading in election results.
  - Works with the Board Director in coordinating UNITY election results reports.
- Board Director:
  - Speaks to media/candidates.
  - Coordinates election results reports with UNITY employee 2.

## 12.18 Report Unofficial Results for Statewide Elections

Once all results have been accumulated, an electronic file will be created through Unity containing all results from the election. This file is transmitted via (7-13-740, 7-13-770) Election Night Results (ENR) reporting to the SEC where the results are accumulated and reported on a statewide basis.

## 12.19 Recording Provisional Ballots

After the provisional ballot hearing, the Board must record all voters who cast a provisional ballot. It must be recorded if the ballot was counted and, if not counted, the reason why the ballot was not counted. This is done using the Mass Participation Update feature in VREMS.

# 13. Post Election Procedures

## 13.1 Machines Will Remain Locked

Each precinct will have a sealed envelope having printed on it a certificate of the managers of election stating the numbers of the machines, the voting precinct, the numbers on all machine seals, and the number on the public counter. This envelope will be delivered to the Board by a manager.

The voting machines, after being sealed by the managers, will remain sealed for 30 days or as long as necessary because of any contest of the results of the election, except as may be necessary to prepare the machines for another election and except that they may be opened and all data examined by the authority responsible for conducting the election in order to ascertain or verify the machine results of the election. This examination may be conducted only if all candidates in an affected race, or their representatives, are notified of the time and place and given an opportunity to be present or upon the order of a court of competent jurisdiction. (7-13-1890)

## 13.2 Custody of Lists and Return

The Board should return the EVRL participation record and the printed voter registration lists within two weeks after the election to the SEC. After voter history has been updated, the EVRL record and printed lists will be sent to S.C. Department of Archives and History for safe storage.

## 13.3 Accounting For Polling Place Ballots and Supplies

After the managers have completed the counting and canvassing of votes, they will deliver back to the Board the PEB's, communication packs, voter registration list, ballot boxes containing any ballots, and written return of the results of the election in the precinct. Managers will account for all ballots using the Managers Return of Ballot form.

The Board will keep in their possession all unused and spoiled ballots until the time for contesting the election has expired. Any ballot that has been lost must be accounted for by a written statement from the chairperson of the particular precinct. (7-13-1150)

## 13.4 Retention of Election Materials

The Board must keep all election materials including voted ballots for 24 months according to S.C. Department of Archives and History Record Retention Schedule 12-517.4. Federal law requires election materials to be retained for 22 months following any election in which federal offices are on the ballot.

## 13.5 Reporting Election Results to SEC

Following the Board's canvass and certification hearing, certified results must be immediately transmitted to the SEC. This file is transmitted via (7-13-740, 7-13-770) Election Night Results (ENR) reporting to the SEC where the results are accumulated and reported on a statewide basis.

## 13.6 CANVASSING OF VOTES

### 13.6.1 Meeting and Organization as the Board of Canvassers

A quorum of the Board will meet in a convenient place at the county seat before one o'clock in the afternoon and will organize as the County Board of Canvassers. The Board should meet at the exact time specified in the public notice of election.

For a primary election, the Board will meet on Thursday following the primary.

For a general or special election, the Board will meet on Friday following the election.

A competent person may be appointed as secretary.

The Board chairperson will administer the constitutional oath to each member of the Board, as canvassers, and will administer the constitutional oath to the secretary, and the secretary will administer to the chair the same oath that he will have administered to the other members of the Board. (7-17-10)

### 13.6.2 Provisional Ballot Hearing

Before canvassing the votes, the Board must make a decision on all provisional ballots in the election (7-13-830). Provisional ballots are not counted by the managers of the various precincts but are kept separate from other ballots and turned over to the Board. The Board will hear all objections to such ballots at the meeting specified in 7-17-510. The Board may want to consider having its attorney present to obtain legal advice during the hearing.

A court ruling requires that adequate notice be given of the time and place that the hearing on provisional ballots will be held. This information must be indicated in the public notice of election. Poll managers should be instructed that whenever a voter's ballot is challenged both the challenger and the challenged voter must be given notice of the time and place that the Board will hold the provisional ballot hearing. If the voter is challenged for lack of valid photo ID, the manager must notify the voter that they are required to provide such ID prior to, or at, the challenged ballot hearing. The SEC provides a Notice of Provisional Ballot Hearing.

The Board should gather all ballot envelopes checked "Provisional" and the "Provisional Ballot Log for Absentee Voting Machines." *(Note: envelopes checked "Failsafe" and improperly witnessed/signed absentee ballots are not considered in the provisional ballot hearing; see below).* Most provisional ballots will have been cast on optical scan ballots which when challenged, are placed in an envelope and marked "Provisional." Any absentee ballots that are cast in-office on voting machines, and which are subsequently challenged, are recorded on the Provisional Ballot Log for Absentee Voting Machines. Detailed instructions on how to remove provisional ballots cast on voting machines from absentee totals can be found in the Election Preparation and Results Accumulation Guide.

The Board may choose to read aloud the name of the voter of each provisional ballot and ask if the challenger, voter, or other witness is present. If no challenger appears, produces witnesses, or offers evidence before the meeting to sustain a challenge, the Board should then examine the provisional ballot envelope (or log) to determine if there is reason to consider an administrative challenge. An example of a situation in which an administrative challenge may be appropriate is when a voter appears to

have voted in the incorrect precinct. This situation does not necessarily require a challenger or witness but can be resolved by the Board.

In the absence of any evidence sustaining a challenge, a ballot is no longer provisional and must be counted. The ballot will be removed from the provisional ballot envelope and mingled with all other provisional ballots that have been found to be valid.

If the challenger appears, or if there is an administrative challenge; the Board will proceed to hear the challenge. The Board should first hear from the challenger(s), including supporting witnesses and evidence. The Board should then hear from the voter (if present), including any supporting witnesses and evidence. The Board may ask questions of the participants throughout the proceedings. If a vote of the Board is necessary to decide the outcome of the challenge, the vote must be taken in public prior to examining the next provisional ballot.

If the Board declares a provisional ballot to be invalid, the ballot should remain in the unopened provisional ballot envelope and kept with other election materials. Detailed instructions on removing invalid provisional ballots from in-office absentee voting machine totals can be found in the Election Preparation and Results Accumulation Guide.

If the Board declares a provisional ballot to be valid, the ballot should be removed from its envelope and mingled with all other provisional ballots that have been found to be valid. All provisional ballots found to be valid should be shuffled in a way to protect the secrecy of the ballots and counted. In the final canvass of votes, the provisional ballots that are counted should be reported as a separate precinct without regard to the resident precinct.

All decisions of the Board in regard to provisional ballots will be final.

A best practice the Board may choose is separating all provisional ballots by the “reason for the challenge.” This may expedite the hearing process by allowing the Board to approve or deny entire stacks of provisional ballots at one time.

Another best practice used by some Boards is to copy the front of the provisional ballot envelope on election night, then place the original envelopes back in a locked ballot box. The copied envelopes can be used to research voter qualifications without using the actual envelopes. This procedure keeps ballots secure and accountable.

**Improperly Witnessed/Signed Absentee Ballot Envelopes**

An absentee ballot contained in a ballot envelope that is not properly witnessed or not signed by the voter, is not counted. These ballots are not considered in the provisional ballot hearing. The Board has no discretion in counting this ballot (7-15-380, 7-15-385, 7-15-420). Such ballots should be placed in an “Attention” envelope and retained with other election materials.

**Envelopes Checked "Failsafe"**

The purpose of challenging these ballots on election day is for the Board to make sure the Change of Address form was completed on the outside of the envelope. The Board should verify that the change of address form has been completed. The Board may then open the envelope, remove the ballot, and mingle it with all other provisional ballots that have been found to be valid. The Board must count this ballot, without discretion (7-5-440). The Board should verify the voter voted a "failsafe" ballot containing only federal, countywide, and/or municipal-wide offices. If the voter voted a ballot containing offices not qualified under failsafe law, votes for those additional offices should not be counted.

If the Board finds the Change of Address has not been completed, the Board must not count the ballot.

**Photo Does Not Match**

The poll manger does not have to be present at the challenged ballot hearing. The signed envelope stands for itself as an administrative challenge

If the voter is present, and can show that he was in fact the person who presented himself to vote, the ballot should be counted. To verify this fact, the voter may present photo ID and signatures may be compared to the provisional ballot envelope.

**Reasonable Impediment Exception** *(See PRO 1500 – Reasonable Impediment/Religious Objection Procedures)*

Voters using this exception to vote did not have one of the five forms of photo ID required to vote and chose to sign an affidavit indicating an obstacle to obtaining such ID. If the CBC receives information purporting to show a voter's reasonable impediment affidavit is false, the CBC will make every attempt to notify the voter by telephone, email, or mail (if time allows). This notification is in addition to the Notice of Provisional Ballot Hearing presented to the voter at the polls.

Considering provisional ballots cast due to a reasonable impediment:

- Ensure that the voter listed on the affidavit located on the Provisional Ballot Envelope suffers from a reasonable impediment and signed the affidavit.

- Consider any evidence purporting to prove the affidavit is false.

    - If no evidence is presented, the ballot is no longer provisional for reason of failing to provide photo ID. If not challenged for any other reason, the ballot is removed from the envelope and comingled with other provisional ballots found valid and subsequently counted.

    - If evidence is presented purporting to prove the affidavit is false,

the CBC shall hear and consider such evidence. The CBC has the sole decision of determining if the statement on the affidavit is false, based on evidence provided, or was included with reckless regard for the truth.

If the Board determines that the voter's impediment is a false statement, such as 'all stop signs in SC are square', then the provisional ballot envelope should not be opened and the ballot not counted.

The status of the provisional ballots, whether accepted or rejected and reason why, must be entered into VREMS no later than noon the day following the provisional hearing. This also includes ballots that were placed in an "Attention" envelope.

### 13.6.3 Canvassing Votes

The Board will canvass the votes following the primary, primary runoff, special, or general election. (7-17-20) Canvassing occurs immediately after the Provisional Ballot Hearing and is part of the meeting of the County Board of Canvassers.

Canvassing is counting all votes cast in an election by precinct. These totals include the unofficial election night totals and any provisional ballots found to be valid.

It is imperative to be certain that every vote has been counted. You should refer to the Election Preparation and Results Accumulation Guide to make sure all results accumulation procedures have been followed. This includes comparing the paper tape totals with your electronic results. This guide is located on ElectionNET. It is also important to physically check all ballot boxes used in the election to be certain all ballots are counted.

### 13.6.4 Certifying Election Results

After canvassing, the Board certifies the final vote totals making them official. Election results are certified by a quorum (majority) of the Board signing their names to a canvass sheet. Canvass sheets should contain:

- Name of the election (if a primary, include party name)
- Election date
- County name
- Signature blanks
- Certification date

Canvass sheets for various types of elections are available for download on ElectionNET.

Once certified, election results are final. There is no provision in state law for vote totals to be changed after certification.

Immediately after certifying the vote totals, the Board should transmit the canvass sheet and the certified election results to the SEC. (7-17-20) The results should denote winners and all candidate's party affiliations, including non-partisan candidates.

### 13.6.5 MANDATORY RECOUNTS

A recount is a re-tabulation of all votes for all candidates for a specific office or a re-tabulation of a ballot question. "All votes" means all the votes that were counted (or should have been counted) on Election Night for that particular office. These votes include voting machine, absentee, provisional, emergency, and failsafe votes. See also the S.C. Code of Laws Title 7, Chapter 17, Section 280 (7-17-280). *Note: Recounts are not Runoffs. There are different laws governing recounts and runoffs, for example, they are triggered by different result numbers.*

A recount must be ordered in the following situations:

1. In any election (General, Special, Primary, Runoff) when the difference between the number of votes received by the winning candidate and the losing candidate is 1% or less.

   The mandatory recount can be waived in writing by the losing candidate(s).

2. In any election for an office with multiple seats to fill, when the difference between the number of votes received by the lowest of the winners and the highest of the losers is 1% or less.

   For example, if there are five candidates competing for three seats, the only two candidate vote totals that determine eligibility for a recount are the 3rd highest and the 4th highest vote-getting candidates. If the vote totals of these two candidates are within 1% of each other, then a recount is required.

   The mandatory recount can be waived in writing by the losing candidate(s).

3. In any election when the difference between the number of votes received for the ballot question and against the ballot question is 1% or less.

The state law provides for a recount only when the difference in the results is 1% or less. There is no provision in our state law that provides for a recount when the difference between the vote totals is more than 1%.

The authority charged by law with conducting the election is responsible for ordering a recount:

- The Board orders a recount for county-wide and less-than-county-wide offices and ballot questions.
- The SEC orders a recount for federal and state-level offices, including State House of Representatives, State Senate, and State Solicitor.

**Recount Procedures**

1. The Board canvasses, certifies the official results, and orders a recount – all at the same time. Offices to be recounted should be flagged in the official results.

2. The recount date is established when the recount is ordered. The recount can be performed on the same date as the certification.

   *Note: Do not conduct a recount on Election Night. A recount cannot be performed until officially ordered by the Board*.

3. For planning purposes, informally notify the political parties and candidates for the office to be recounted and let them know when and where the recount will take place.

   *Note: In the specific situation where a state-level recount is expected, the Board may want to consider performing a local recount to coincide with the state-level recount to avoid duplicating work.*

4. Official notification to all candidates may be issued on the same date as the recount is actually held.

5. Count all ballots for all precincts that elect this office.

   *Note: The Election Preparation and Results Accumulation Guide contains additional detail on carrying out the recount.*

   *Note: If your recount total differs from your original total, take any necessary steps to identify the cause of the discrepancy, and to insure the recount was conducted accurately and completely.*

6. The Board must meet after the recount to certify the recount results.

   The Board must post a public notice at least 24 hours prior to meeting.

### 13.6.6 Elections That End In A Tie Vote

If any primary, general or special election, other than a nonpartisan municipal election, results in a tie vote and no candidate withdraws, the Board will conduct a

mandatory recount. If after the recount the result is still a tie, a runoff election is required to be held two weeks after the first election. If the date for the tie-breaking runoff falls on a legal holiday, it must be held on the same day of the first week following which is not a legal holiday. (7-13-2210)

If a tie-breaking primary runoff election is required, any remaining primary elections required are postponed for two weeks. If the date for a postponed election falls on a legal holiday, it must be set for the same day of the first week following which is not a legal holiday. (7-13-2220)

### 13.6.7 Majority Vote Needed To Win First Primary Election

No candidate is declared nominated in a first primary unless he received a majority of the votes cast for the office which he was a candidate. The majority is determined by the number of votes cast for a particular office and not by the whole number of votes in the primary. (7-17-600)

### 13.6.8 What Constitutes Majority Vote

**Single office** – if there is more than one person seeking nomination for one office, the majority is determined by:

- adding the total votes cast for that office
- dividing the total by two

Any *excess* of this total is a majority. The Board will declare the candidates who obtain a majority to be the nominees.

**Two or more offices** - if there are more persons seeking nomination than there are offices, the majority is determined by:

- adding the total votes cast for all candidates
- dividing the total by the number of positions to be filled
- dividing this result by two.

Any *excess* of this total is a majority. The Board will declare the candidates who obtain a majority to be the nominees. If more candidates obtain a majority than there are positions to be filled, the Board will declare the candidates having the highest votes equal to the number of positions to be filled the nominees. (7-17-610)

It is a common perception when explaining majority to use the term “50% +1". However, this may not be correct, as the law clearly states that any *excess* (even a fractional portion) of the total obtained after adding and dividing is a majority.

### 13.6.9 Second and Other Primaries or Run-Off Elections

A second primary, when necessary, must be held two weeks after the first. At the second primary, the two candidates among those who do not withdraw their candidacies who received more votes in the first primary than any other remaining candidate will run for office. If only one candidate remains, he is considered nominated. If there are two more vacancies for a particular office, the number of candidates must be double the number of vacancies to be filled if so many candidates remain.

In all second primaries, the candidate receiving the highest number of votes cast for a given office must be declared the nominee for the office whether or not he has received a majority of votes cast for that office. When there are several candidates for several different offices, then the several candidates receiving the largest number of votes for several offices are considered the nominees whether or not they received a majority of votes cast. (7-13-50)

### 13.6.10 Determining Winners by Plurality

General election winners usually are determined by a plurality vote. This simply means the candidate/issue with the most votes wins.

# 14. Allowable Election Expenses and Reimbursement Policy

## 14.1 Legal Notices

7-13-35 requires that the authority charged by law with conducting an election must publish two notices of general, municipal, special and primary elections held in the county in a newspaper of general circulation in the county or municipality, as appropriate. Included in each notice must be a reminder of the last day persons may register to be eligible to vote in the election for which notice is given, notification of the date, time, and location of the hearing on ballots challenged in the election, a list of the precincts involved in the election, the location of the polling places in each of the precincts, and notification that the process of examining the return-addressed envelopes containing absentee ballots may begin at 2:00 p.m. on election day at a place designated in the notice by the authority charged with conducting the election.

The first notice must appear not later than 60 days before the election and the second notice must appear not later than two weeks after the first notice.

15-29-80 Charges for notices of election shall not be more than the local retail display rate shown on the newspaper's rate card or rates published in the newspaper. The advertisement must be set in **solid six point type, including the caption and all other parts of the advertisement.** Newspapers that do not use six point type shall receive compensation based on solid six point measurement.

The SEC does not reimburse for legal notices for runoff elections since they are not required by law.

Additionally, if a county is holding a special election or local referendum on the date of the primary or general election, that notice of election must be run separately. Do not include that notice with the notice of election printed for the statewide primary or statewide general election. Any notice for a special election or a local referendum is a county expense and needs to be billed separately.

## 14.2 Ballots

For statewide primaries, the SEC will furnish or reimburse the county for all ballots.

For statewide general elections, the SEC pays for only a prorated share of the ballot cost.

For statewide general elections, the following offices are considered the SEC's portion of the ballot:

- President/Vice President
- United States Senators
- Members of Congress (U.S. House of Representatives)
- Constitutional Officers which includes the following:
    - Governor
    - Lieutenant Governor
    - Secretary of State
    - State Treasurer
    - Attorney General
    - Comptroller General
    - State Superintendent of Education
    - Adjutant General
    - Commissioner of Agriculture
- Solicitor
- Statewide Constitutional Amendments

7-13-340 requires that the printing and distribution of ballots in all elections for State Senate, State House of Representatives, county, local offices shall be arranged and handled by the Board and shall be paid for by the respective counties.

## 14.3 Poll Managers

For statewide primary and general elections, the Board shall appoint three managers for the first 500 registered voters in the precinct and three managers for each additional 500 or portion thereof.

Poll managers can receive pay for up to two days, and a clerk, who is appointed from among the managers, may be paid for up to three days.

In the event a runoff is necessary, the Board shall appoint three managers for the first 500 registered voters in the precinct and may appoint one additional manager for each additional 500 or portion thereof.

Poll managers can receive pay for one day and a clerk, who is appointed from among the managers, may be paid for up to two days.

For all other primaries and special elections, the Board shall appoint three managers for the first 500 voters registered to vote in the precinct and one additional manager for each additional 500 voters or portion thereof.

Poll managers can receive pay for one day and a clerk, who is appointed from among the managers, may be paid for up to two days.

For municipal elections, 7-13-70 provides that the authority charged by law with conducting municipal elections shall appoint three managers of election for the first 500 registered voters in each precinct in the municipality and one additional manager for each additional 500 registered voters in the precinct. A clerk for each precinct shall be appointed from among the managers. The expense must be borne by the municipality.

The number of poll managers allowed to be appointed to work in the absentee precinct is based on the number of absentee ballots issued, not the number returned.

Proviso 62.2 of the Appropriations Act allows up to three additional managers per county to be appointed to assist the Board with the absentee/failsafe voting process prior to, on election-day and immediately following the election. A total of 15 days may be reimbursed for the absentee/failsafe managers. If one person is appointed, they may be reimbursed for 15 days, two people may be reimbursed for 7 1/2 days each, and three people may be reimbursed for 5 days each.

The poll managers appointed to work in the absentee precinct (which is based on the number of absentee ballots issued) is in addition to the managers mentioned in Proviso 62.2.

7-13-110 allows one 16 – 17 year old to be appointed to work in the precinct for every two regular poll managers appointed. They must be supervised by the clerk of the managers in the precinct. Since the 16-17 year old poll workers do not have a voter registration number, you will need to attach a separate sheet to the poll manager pay sheet which lists them as 16-17 year old workers.

Prior to statewide elections, two poll managers per precinct may receive $100 for additional training on the voting machines. This training should be conducted by the counties. The class is three hours and should be attended twice.

The rate of pay is currently $75.00 per day for ALL poll managers.

## 14.4 Poll Manager Pay Form

To receive reimbursement for poll managers, you must complete a poll manager pay form. Instructions for completing the form are:

1. Complete the top portion of each form
2. Total each precinct
3. Total each page
4. Make absentee precinct your last precinct listed and indicate under that precinct the number of absentee ballots issued
5. Total all pages and put in bottom margin
6. Count number of poll managers and clerks on each page and put total in bottom left margin. On the last page, put the total number of poll managers for that page and put the grand total of poll managers used in the election
7. Make sure you have a majority of your Board sign the oath certifying that the poll manager form is correct
8. Mail original poll manager form to SEC

**Note: Do not list the poll manager pay on the cover sheet.**

## 14.5 Mileage

The Board's mileage is currently .58 cents per mile for travel on election-day to the precincts. Directors and office staff may not be reimbursed by the State for mileage.

Do not include the Board's mileage on the poll manager sheets. The Board's mileage may be combined with the other expenses, but the poll manager pay has to be submitted separately.

## 14.6 Rovers

The SEC will reimburse the Board for one (1) rover per ten (10) precincts in each county. The county will be reimbursed at a flat rate of $100 per rover. The SEC will

also reimburse rover's mileage at .58 cents per mile to travel to the various precincts on election-day only. Please list rovers separately. Do not list them on the poll manager pay form. Commissioners and staff will not be reimbursed by the State as rovers.

## 14.7 Documentation for Reimbursement

To receive reimbursement, send the following documentation to the SEC:

- A cover sheet which outlines items for which reimbursement is being requested and states that county purchasing procedures were followed
- Copy of invoice
- Copy of tear sheet for notice of election
- An oath signed by the majority of the Board for Board member mileage

Poll manager pay sheets may be mailed in the same envelope as all other reimbursement requests, **but do not include it on the cover sheet**. It will be paid on a separate voucher and does not need a cover sheet. Also, make sure a majority of the Board have signed the oath for the poll managers.

If either the Comptroller General's Office or the Auditor's Office have questions regarding your request for reimbursement, the following may be requested:

- Copy of written solicitation of quotes
- Copy of quotes from vendors
- Copies of purchase orders or requisitions annotated fair and reasonable, and signed by county purchasing agent
- Sole source justification
- Emergency procurement justification

Please keep this documentation on hand, but do not send it to the SEC unless requested.
In the event that a runoff election is necessary, always keep the bills for the primary or general election separate from those for the runoff. They may be mailed to the SEC together, but the SEC needs a separate cover letter and backup. This is because a runoff is considered a separate election for expense purposes. Procedures for requesting reimbursement for runoff expenses are the same as for primary expenses.

# 14.8 Miscellaneous Primary Expenses

The SEC reimburses for most expenditures for the statewide primaries. However, the SEC has received requests for some items in the past that are not reimbursable. Listed below are some miscellaneous primary expenses that have been broken down by category of reimbursable and non-reimbursable expenses. Some items (such as supplies) that would not normally be reimbursed may be if they are required for use with the voting system.

- Reimbursable Expenditures:
  - County charges for polling place on election-day (only). This includes costs for maintenance personnel (custodian) or rent.
  - Stamps to mail out absentee applications and ballots. You will need to indicate on the cover sheet how many ballots and applications were mailed and the postage rate for each so that you can receive reimbursement for postage. Postage is only reimbursable for primaries. It is not reimbursable for the statewide General Election.
  - 5 x 7 newspaper ad that the political party has to insert prior to opening of filing period. This is reimbursable to the county parties only.
  - Court reporters for protests and appeals following the primary.
- Non-reimbursable Expenditures:
  - Vote here signs.
  - Food on election-day.
  - Demonstration ballots.
  - Training class instructor.
  - Rent for auditorium/room for training.
  - Advertisement-flyers in newspapers.
  - Standard office supplies such as labels, paper, etc.
  - County generated forms.

- Standard operating expenses such as telephone, fax bills, cell phone bills (even if you are conducting election business on them).

## 14.9 Expenses Payable by the County

The counties shall pay for all necessary expenses incurred by the Board and managers of election for stationery, election boxes, and similar expenses. (7-23-40)

## 14.10 Penalty for Late Submission of Reimbursement Requests

The Board should make every attempt to submit bills for reimbursement within 30 days of an election. Per Proviso 62.10 of the Appropriations Act, the SEC may now deduct 10% for all bills received more than 30 days after an election is held.

## 14.11 Expedited Freight Charges

Expedited freight charges will only be reimbursed if a reasonable explanation for the charges is submitted and approved. The explanation should be included on the cover sheet. If an explanation is not given, the charges will not be reimbursed by the SEC.

# 15. Protests

The Board, acting as the county board of canvassers, will decide all cases under protest, in general or special elections only, that may arise in the county in the case of a county and less than county offices. The county or state executive committee of a party hears protests that may arise following primary elections held by that party. (7-17-30, 7-17-70 and 7-17-530 through 7-17- 570)

The SEC will decide all cases under protest in general or special elections in the case of federal and state offices, members of the State Senate and State House of Representatives, and offices involving more than one county. (7-17-260)

Candidates in a general election may file a protest in writing with the chair of the Board, with a copy for each candidate in the race, by noon Wednesday following the declaration by the Board of the result of the election. If the chair is not available, the candidate may file the protest with the county sheriff along with a copy for each candidate in the race. The sheriff will take immediate steps to deliver these copies to the chair. (7-17-30)

The SEC must be notified of any protest filed with your Board in any general or special election.

The protest must contain each ground of protest concisely stated separately.

The chair of the Board will serve a copy of the protest and provide a notice of the time and place of the protest hearing for each candidate in the protested race. (7-17-30)

The voter registration list and poll list of each polling place in a general, special or primary election must accompany the ballots, printouts or other form of voter tabulation in each proceeding in which the votes cast at that polling place are involved in a protest. (7-17-40)

## 15.1 Protests in Primaries

A candidate may file a protest in writing with the chair of the county party executive committee, by noon Monday following the declaration by the Board of the result of the election. At the time the protest is filed, copies must be provided for each candidate in the race. If the chair is not available, the candidate may file this protest with the county sheriff.

The executive chair of the party will serve upon each candidate in the protested race a copy of the protest and serve a notice of the time and place of the protest hearing. (7-17-520)

The county political party must conduct a hearing on the Thursday following the deadline for filing the protest. Testimony at the hearing shall be limited to the grounds stated in the written protest. (7-17-530 through 7-17-620) The decision of the county party may be appealed to that party's state executive committee no later than 3:00 pm on the Friday following such decision. A hearing on the appeal must be heard on the Saturday following the deadline for filing the appeal.

## 15.2 Municipal Election Protests

Municipal election protests are filed with the municipal election commission. See S.C. Code of Laws § 5-15-130, § 5-15-140, and § 5-15-145.

In cases where the Municipal Election Commission's protest duties have been transferred to the Board, the Board will hear all protests filed by municipal candidates. The time frame for filing and hearing municipal protests differs from the time frame for county protests. Municipal candidates must file their protests within 48 hours after the polls close (generally by 7 p.m. on Thursday). The protest must be heard, after due notice to the parties concerned, within 48 hours after the protest is filed.

The preparation and conduct of the hearing is the same as listed in this chapter for General and Special Elections. The Board conducts a hearing on the contest, decides the issues raised, files its report together with all recorded testimony and exhibits with the clerk of court of the county in which the municipality is situated, then notifies the parties concerned of the decisions made. When the decision invalidates the election, the Board must notify the town/city council. Council orders a new election as to the parties concerned.

Within 10 days after the decision of the Board, any party aggrieved may appeal to the court of common pleas. Notice of appeal shall be served on the opposing parties or their attorneys and filed in the office of the clerk of court within 10 days. The notice of appeal shall act as a stay of further proceedings pending the appeal.

## 15.3 General and Special Elections

The Board serving as the county board of canvassers must hear the protest on Monday following the deadline for filing the protest. If the Board does not have an attorney as a member, call on your county attorney for help and guidance in conducting any protest hearing.

It is imperative that complete and accurate transcripts are kept of any protest hearing you conduct. In the event that your decision is appealed, a complete transcript of your proceedings is an absolute necessity. It is necessary that you arrange for the services of court reporter or stenographer at any protest hearing to ensure proper records are created.

The protestant and all other candidates in the protested race have the right to be present at the hearing, to be represented by counsel, to examine and cross-examine witnesses and to produce evidence relevant to the grounds of the protest (7-17-50).

Testimony at the hearing of the protest must be limited to the grounds stated in the written protest. The chair of the Board must conduct the hearing in accordance with the procedures and rules of evidence observed by the circuit courts of this State. The Board Chairperson has the authority to administer oaths and subpoena witnesses.

The Board must remain in session until they have reached a conclusion. Upon the conclusion of the hearing of the protest, the Board must determine all issues by majority vote, made in public, and certify the results of the election. The Board must immediately notify all candidates in the protested race and the chair of the State Board of Canvassers of the Board's decision (7-17-50).

The Board must submit the written transcript of the protest hearing to the State Board of Canvassers by noon, Monday, following the hearing (7-17-50).

As soon as possible following the protest hearing, the Board should prepare a written order setting out its decision and directions. They should provide copies of this order to all parties involved in the protest and to the SEC.

## 15.4 Continuation of Protests

If any candidate in a primary, general, special, or nonpartisan election dies after the election but before the time for filing a protest or dies after a protest has been timely filed, his political party or a representative duly appointed by the court may file or continue the protest on the candidate's behalf. The Board reviewing the protest may then certify the results. They will either deny the protest or uphold the protest in which case a new election must be ordered. In this event, they will allow additional filings of candidacy and hold a new election. (7-17-700 and 7-17-710)

## 15.5 Appeal from Decision of Board

Any candidate adversely affected by the decision may appeal the decision of the Board to the State Board of Canvassers.

Notices of such appeal, including grounds of the appeal, must be made to the State Board by noon Monday following County Board's decision. Candidates can also deposit a copy of the grounds of appeal at the office of the Chief of the State Law Enforcement Division. The Chief will also deliver a sufficient number of copies to be served upon all candidates in the protested race to the county sheriff. Such officers will take all steps necessary to deliver the notices to the respective parties. (7-17-60)

## 15.6 Hearing of Appeals

The State Board will meet in Columbia no later than noon on Monday, 14 days following the filing of the appeal. The appellant and each candidate in the protested race will have the right to be present at such hearing, to be represented by counsel and to be heard on the merits of the appeal. The State Board will be bound by the facts as determined by the county Board. If in the opinion of at least two members of the State Board they should review such facts and determine that additional information can be added, the State Board will hold a hearing de novo. In case of such review, the State Board may receive any new evidence or exhibits as it will, in its discretion, deem necessary to determine the appeal. (7-17-70)

# 16. U.S. Department of Justice Preclearance

Prior to June 2013, the entire State of South Carolina was covered by Section 5 of the 1965 Voting Rights Act, as amended. This section requires any new election practices or procedures, or changes to existing election practices or procedures, to be submitted to the Voting Section of the Civil Rights Division of the U.S. Department of Justice (DOJ) for review and approval (preclearance).

The U.S. Supreme Court decision in Shelby County, AL -vs- Holder issued in June 2013 struck down Section 4 of the Voting Rights Act. Section 4 provides the definition of which jurisdictions are covered under Section 5. In effect no jurisdictions are now covered under Section 5. Preclearance is no longer required for any change to election laws or procedures in any jurisdiction in the State.