UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| League of Women Voters, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>Marci Andino, *et al.*,<br><br>Defendants. | No.: 2:20-cv-03537-RMG<br><br><br>**Motion to Dismiss** |

Defendants Marci Andino, John Wells, JoAnne Day, Clifford J. Edler, Linda McCall, Scott Moseley, and Howard Knapp ("Election Defendants"), all of whom have been sued in their official capacities with the State Election Commission, move to dismiss the Second Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## **Introduction**

The Plaintiffs challenge on two grounds South Carolina's requirement that a voter casting an absentee ballot sign the voter's oath. First, they allege that signature matching cannot occur without sufficient notice-and-cure procedures. Second, they contend that they must be allowed to cure their own failure to sign the voter's oath.

Neither theory has merit. The first theory fails because South Carolina law already prohibits signature matching—a point on which all parties agree. That means there is no case or controversy (an Article III problem) and any injunction would merely order State officials to comply with State law (a sovereign-immunity problem). The second theory fails because no government action has deprived the voter of anything when the voter fails to sign the voter's oath; rather, it is the voter's

own failure to sign that oath that is the cause of the absentee ballot not being counted. The Second Amended Complaint should therefore be dismissed.

## Legal Standard

When a case does not satisfy Article III's case-or-controversy requirement, it must be dismissed under Rule 12(b)(1). *CGM, LLC v. BellSouth Telecomm'ns, Inc.*, 664 F.3d 46, 52 (4th Cir. 2011). And when a complaint does not allege claims that are "plausible on [their] face," the complaint must be dismissed under Rule 12(b)(6). *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020). Rule 12(b)(6) also requires dismissal of claims barred by sovereign immunity. *See Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 545 (4th Cir. 2014).

## Argument

**I.    The claims based on signature matching should be dismissed because the Court lacks jurisdiction under Article III and the relief sought is barred by sovereign immunity.**

The Plaintiffs contend that any signature-matching process violates due process and the *Anderson-Burdick* standard if it does not give them (1) notice of a signature on the return envelope that allegedly does not match the signature on file and (2) an opportunity to cure the nonmatching signature. They seek an injunction from this Court that prohibits such signature-matching processes without accompanying notice-and-cure procedures. These claims have two fatal flaws.

*First*, there is no actual controversy here. The Plaintiffs alleged that State law does not allow for signature matching. *See* ECF 53 at 2. The Election Defendants agree. In fact, the Commission's Executive Director instructed county boards that

State law does not permit signature matching the very day the Commission learned some county boards had engaged in that practice.[1] *See* ECF 66-1, 71-1; *see also* ECF 72 at 15.

This agreement that State law does not allow signature matching is fatal to the Plaintiffs' claims. Federal courts have jurisdiction only over cases and controversies. *See* U.S. Const. art. III, § 2; *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). There is no case or controversy when the parties agree on what the law is requires. *See, e.g.*, *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (holding there was no justiciable controversy when the parties did not dispute ownership of the property at issue). Here, because State law does not allow any signature matching, there is necessarily no need for any procedures about a notice and a cure for mismatched signatures. The Plaintiffs therefore seek relief that is unnecessary and not allowed under State law. In other words, because the litigants all agree that State law does not permit signature matching here, there is no controversy that gives this Court jurisdiction over the Plaintiffs' claims about signature matching.

*Second*, the relief the Plaintiffs seek on their claims about signature matching raises another constitutional problem: They ask this Court to enjoin State officials to follow State law. At its core, the injunction they demand seeks to have the Court order State officials not to match signatures unless certain conditions (*i.e.*, notice-and-cure

---

[1] Additionally, this Court noted that State law does not authorize county boards to match signatures in denying in part the motion for a preliminary injunction. *See* ECF 72 at 4.

procedures) are imposed. *See* ECF 53 at 22. But the Eleventh Amendment and sovereign immunity prohibit federal courts from ordering State officials to follow State law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124–25 (1984).

The Supreme Court took up this specific issue in *Pennhurst*. There, residents of a state mental-health facility brought a class action lawsuit challenging the conditions in that facility under both federal and Pennsylvania law. *See id.* at 92. The lower courts found for the plaintiffs, and ultimately, the Third Circuit based the relief awarded solely on a Pennsylvania statute. *See id.* at 95–96.

The Supreme Court held that federal court relief based solely on Pennsylvania law violated sovereign immunity and the Eleventh Amendment. Although *Ex parte Young*, 209 U.S. 123 (1908), allows claims for prospective, injunctive relief against State officials, that doctrine applies only to injunctions that ensure State officials comply with *federal* law. It does not go so far as to allow federal courts to enjoin State officials to comply with *State* law. *Pennhurst*, 465 U.S. at 124–25. As the Fourth Circuit has explained, "the Supreme Court has strictly limited the application of the *Ex parte Young* doctrine to circumstances in which injunctive relief is necessary to give life to the Supremacy Clause." *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 292 (4th Cir. 2001) (internal alteration and quotation mark omitted). Here, there is no Supremacy Clause issue because nothing about South Carolina's prohibition on signature matching conflicts with federal law. *Ex parte Young* therefore does not apply here, and the Court has no authority to grant the relief the Plaintiffs seek.

4

**II.     The claims based on a voter's own failure to sign the voter's oath should be dismissed because they are not plausible.**

The Plaintiffs also demand an injunction to require election officials to provide notice and an opportunity to cure their own failure to sign the voter's oath on the envelope in which an absentee ballot is returned. *See* ECF 48-1 at 2, 8–9. These claims have no merit, as this Court's order denying the motion for a preliminary injunction explained. *See* ECF 72 at 9–11.

The Plaintiffs have not identified a single case holding that a voter is constitutionally required to be given notice of and an opportunity to cure his *own* failure to follow instructions when voting absentee. Indeed, the cases on which they rely are signature-matching cases, not failure-to-sign cases. *See* ECF 72 at 10 (citing *Ga. Muslim Voter Project v. Kemp*, 918 F.3d 1262, 1268–75 (11th Cir. 2019); *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1319–20 (11th Cir. 2019); *Zessar v. Helander*, No. 05 C 1917, 2006 WL 642646 (N.D. Ill. Mar. 13, 2006)). These cases are, as this Court has already explained, of no help to the Plaintiffs' failure-to-sign claims for at least three reasons. First, the failure to sign is the voter's error, not the government's. Second, there is little risk of erroneous deprivation, as election officials can easily tell if there is a signature on the line below the voter's oath. And third, these claims do not seek a hearing to contest a government decision but rather an opportunity to fix a deficient ballot. *See* ECF 72 at 10–11.

Ultimately, the Plaintiffs ask this Court to break new legal ground on this claim. "Neither Plaintiffs' counsel nor this Court could find even one reported case where a court ordered state officials to adopt and implement a notice and cure

5

procedure when state law did not mandate such a process." ECF 72 at 10–11. But building a new line of jurisprudence on that ground requires a solid foundation—a foundation that is, as this Court has already said, lacking. Indeed, this Court put it plainly: "Plaintiffs have no constitutional right to notice and an opportunity to cure defectively submitted absentee ballots." ECF 72 at 12. Consequently, their second theory, whether brought under procedural due process or *Anderson-Burdick*, necessarily fails.

## Conclusion

The Second Amended Complaint should be dismissed.

Respectfully Submitted,

s/ Wm. Grayson Lambert
Wm. Grayson Lambert
Fed. ID No. 11761
M. Elizabeth Crum
Fed. ID No. 372
Jane W. Trinkley
Fed. ID No. 4143
BURR & FORMAN LLP
Post Office Box 11390
Columbia, SC 29211
(803) 799-9800

*Counsel for Election Defendants*

6