UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| League of Women Voters, *et al.*, | No.: 2:20-cv-03537-RMG |
| Plaintiff, | |
| v. | **INTERVENOR DEFENDANTS'** |
| Marci Andino, *et al.*, | **MOTION TO DISMISS SECOND** |
| Defendants. | **AMENDED COMPLAINT** |

Representative James H. ("Jay") Lucas, in his capacity as the Speaker of the South Carolina House (hereinafter "Speaker Lucas") and Senator Harvey Peeler, in his capacity as President of the South Carolina Senate (hereinafter "President Peeler"), as Intervenor Defendants in this matter (collectively "Intervenor Defendants"), respectfully move to dismiss the Second Amended Complaint (ECF No. 53) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

**INTRODUCTION**

The Plaintiffs challenge South Carolina's failure to provide voters with notice and an opportunity to cure signature-related deficiencies. Specifically, they contend that absentee voters who fail to sign the voter's oath required under S.C. CODE. ANN. § 7-15-230 must be allowed the opportunity to cure their own failure to sign the voter's oath. Additionally, they allege that signature matching cannot occur without sufficient notice-and-cure procedures. Neither argument is meritorious.

---

[1]Intervenor Defendants adopt and incorporate by reference all arguments raised by the Motion to Dismiss filed by the State Election Defendants, ECF No. 79.

First, South Carolina's Election Code does not provide that voters who fail to sign the requisite oath on their absentee ballots (the result of which is the rejection of their ballots) be notified of their own failure and given an opportunity to cure that failure. In order to provide the procedural remedies sought by Plaintiffs' Second Amended Complaint (ECF No. 53 at 3-4), the South Carolina General Assembly would need to pass legislation to amend or supplement the present Election Code. Without dispute, the creation of a new statute or an amendment to an existing one is solely the role of the legislature.

Second, signature matching is not permitted under South Carolina law. Plaintiffs' Second Amended Complaint acknowledges the same. ECF No. 53 at 2. Accordingly, there is no case or controversy here. Therefore, the Plaintiffs' Second Amended complaint should be dismissed with prejudice.

## **LEGAL STANDARD**

"A finding of nonjusticiability under the political question doctrine deprives the court of subject matter jurisdiction." *Taylor v. Kellogg Brown & Root Servs., Inc.,* 658 F.3d 402, 412 (4th Cir. 2011). "Pursuant to the political question doctrine, the judiciary is deprived of jurisdiction to assess decisions exclusively committed to a separate branch of government." *Id.* at 407 n.9.

In *Baker v. Carr,* 369 U.S. 186, 217 (1962), the Supreme Court set forth six guidelines to aid in identifying a political question: (1) "textually demonstrable constitutional commitment of the issue to a coordinate political department;" or (2) "a lack of judicially discoverable and manageable standards for resolving it;" or (3) "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;" or (4) "the impossibility of a court's undertaking independent resolution without expressing lack of respect due to the coordinate branches of government;" or (5) "an unusual need for unquestioning adherence to a political

decision already made;" or (6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question. In applying these guidelines, a court must engage in a "discriminating inquiry into the precise facts and posture of the particular case," while understanding "the impossibility of resolution by any semantic cataloguing." *Id.*

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the judiciary's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D.Md.2005). "Motions to dismiss for lack of subject matter jurisdiction are appropriate where a claim fails to assert facts upon which jurisdiction may be based." *Martin v. Obama*, No. CIV.A. RDB-11-3444, 2012 WL 1380366, at *2 (D. Md. Apr. 18, 2012), *aff'd*, 474 F. App'x 396 (4th Cir. 2012) (granting Defendant's motion to dismiss "on the ground that Plaintiff's claim raises a nonjusticiable political question.").

Additionally, when a case does not satisfy Article III's case-or-controversy requirement, it must be dismissed under Rule 12(b)(1). *CGM, LLC v. BellSouth Telecomm'ns, Inc.*, 664 F.3d 46, 52 (4th Cir. 2011).

## ARGUMENT

**I.     The Court should dismiss this case because the determination of the content of South Carolina's Election Code, or whether to amend the same, is exclusively within the province of the South Carolina General Assembly.**

The claim in this case that voters who do not sign their own absentee ballots are entitled to notice and a right to cure is a political question that must be determined by the legislative branch of government and is not justiciable. *See Saunders v. Wilkins,* 152 F.2d 235, 237 (4th Cir.1945). The remedy sought in the Plaintiffs' Second Amended Complaint is the creation of new legislation providing for notice and cure of deficient ballots. The first factor of the *Baker* guidelines applies in this case as there is clearly "textually demonstrable constitutional" authority

3

committing the creation of legislation and the regulation of elections to the state legislature. "Pursuant to the political question doctrine, the judiciary is deprived of jurisdiction to assess decisions exclusively committed to a separate branch of government." *Taylor v. Kellogg Brown & Root Servs., Inc.,* 658 F.3d 402, 407 n.9 (4th Cir. 2011). The Supreme Court has explained that courts should "avoid judicial policymaking or *de facto* judicial legislation." *Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335, 2351 (2020) (noting "the confined role of the Judiciary in our system of separated powers—stated otherwise, the presumption manifests the Judiciary's respect for Congress's legislative role by keeping courts from unnecessarily disturbing a law apart from invalidating the provision that is unconstitutional.").

The Elections Clause of the Constitution of the United States directs that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives shall be prescribed in each State by the Legislature thereof." Art. I, sec. 4. The South Carolina General Assembly has fulfilled these solemn responsibilities by enacting, and updating as needed, a balanced, comprehensive election code.

Here, the Second Amended Complaint, which seeks the creation of an entirely new statute applicable to certain absentee voters, presents a nonjusticiable political question and therefore the Court should deny the motion and dismiss the case. This is so because, indisputably, the legal authority for making new provisions (or choosing not to alter) South Carolina's Election Code belongs exclusively to the General Assembly:

> The General Assembly shall provide for the nomination of candidates, regulate the time, place and manner of elections, provide for the administration of elections and for absentee voting, insure secrecy of voting, establish procedures for contested elections, and enact other provisions necessary to the fulfillment and integrity of the election process.

4

S.C. Const. art. II, § 10.  The Intervenors, as representatives of the House and the Senate, have a fundamental interest in equal, fair, and consistent enforcement of South Carolina's election laws. Precisely because "[v]oting is of the most fundamental significance under our constitutional structure," *Burdick v. Takushi*, 504 U.S. 428, 433 (1992), states must have in place a system that balances election security with access to the ballot box. *See Crawford v. Marion County Election Bd.*, 553 U.S. 181, 196-97 (2008) ("There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters;" "public confidence in the integrity of the electoral process has independent significance, because it encourages citizen participation in the democratic process.").  Too little security, and legitimate votes might be diluted by fraudulent votes.  Too little access, and voter participation might suffer unnecessarily.  Because there is not one single solution, legislatures must account for numerous circumstances when weighing, as a matter of public policy, competing demands for security and access. *See Bailey v. S.C. State Election Comm'n*, No. 2020-000642, 2020 WL 2745565 at *1 (S.C. May 27, 2020) (holding that "whether [the] law should allow all general election voters vote absentee" in response to the coronavirus outbreak is a non-justiciable political question).  This Court should follow the South Carolina Supreme Court's lead and dismiss this matter  to the extent it presents non-justiciable political questions.  While it is certainly true that the Court  generally has authority and even an obligation to resolve constitutional challenges, it should not  be misled by the Plaintiffs' attempt here to graft an entirely new provision affecting absentee voting onto the laws already evaluated and enacted by the General Assembly and claim that to do otherwise amounts to a Constitutional violation.

At its core, the decision to enact a cure provision for absentee ballots (only 18 of 50 states have done so) is a policy judgment that this Court is neither equipped nor authorized to  make.

5

Just last year, the United States Supreme Court explained that an issue—even when packaged as a constitutional claim—amounts to a non-justiciable political question when the case presents "a lack of judicially discoverable and manageable standards for resolving it." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2496 (2019) (quoting *Baker v. Carr*, 369 U.S. 186, 226 (1962)); *see id.* at 2498–2508 (vacating pursuant to the political question doctrine decisions of district courts in North Carolina and Maryland that evaluated those states' congressional districting plans against numerous constitutional challenges); s*ee also Coalition for Good Governance v. Raffensperger*, Case No. 1:20-cv-1677-TCB, 2020 U.S. Dist. LEXIS 86996, at *6–10 (N.D. Ga. May 14, 2020) (dismissing claims regarding Georgia's absentee-voter laws in light of COVID-19 because "they present a nonjusticiable political question" and "there are no judicially discoverable and manageable standards for resolving it").

The Second Amended Complaint calls for the adoption of a completely new law to South Carolina's Election Code. As has been discussed, there is a "textually demonstrable constitutional commitment of the issue" to the legislative branch and the requested remedy falls squarely within the purview of the General Assembly. Therefore, this is a nonjusticiable political question and must be dismissed for lack of subject-matter jurisdiction.

II.     **The parties' agreement that South Carolina law does not permit signature matching means there is no case or controversy, mandating dismissal.**

Federal courts have authority only over cases and controversies. *See* U.S. Const. art. III, § 2; *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). There is no case or controversy when the parties agree on what the law is requires. *See, e.g.*, *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (holding there was no justiciable controversy when the parties did not dispute ownership of the property at issue). South Carolina law does not allow any signature matching, a point this Court has noted (ECF No. 72, 4) and to which the parties all agree. Consequently, there is no case or

controversy, and no jurisdiction with this Court, regarding Plaintiffs' claims for any procedures regarding a notice and a cure for mismatched signatures.

## CONCLUSION

Plaintiffs' Second Amended Complaint should be dismissed with prejudice. The notice and right to cure remedies sought in the Second Amended Complaint where the absentee voter fails to sign the voter's oath present a nonjusticiable political question as they entail enacting new legislation. In addition, no signature matching is permitted under the South Carolina Election Code, a fact Plaintiffs acknowledge. This lack of case or controversy as required under Article III defeats any relief sought by Plaintiffs.

Pursuant to Local Civil Rule 7.04, a supporting memorandum is not required as a full explanation of this Motion is contained herein and a memorandum would serve no useful purpose.

Respectfully submitted,

NEXSEN PRUET, LLC

s/Susan P. McWilliams
Susan P. McWilliams        Fed. ID No. 3351
smcwilliams@nexsenpruet.com
Mark C. Moore              Fed. ID No. 4956
mmoore@nexsenpruet.com
1230 Main Street, Suite 700
Columbia, SC 29201
(803) 253-8221

*Attorneys for Rep. James H. ("Jay") Lucas, in his capacity as Speaker of the South Carolina House of Representatives*

WOMBLE BOND DICKINSON (US) LLP

s/ M. Todd Carroll
M. Todd Carroll            Fed. ID No. 9742
Todd.carroll@wbd-us.com
Kevin A. Hall              Fed. ID No. 5375
Kevin.hall@wbd-us.com

7

1221 Main Street, Suite 1600
Columbia, SC 29201
(803) 454-6504

November 23, 2020
Columbia, South Carolina

*Attorneys for Sen. Harvey Peeler, in his capacity as President of the South Carolina Senate*