**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF SOUTH CAROLINA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MARCI ANDINO, *et al.*, <br><br> Defendants. | Case No. 2:20-cv-03537-RMG <br><br><br> **Plaintiffs' Opposition to Defendants' and Intervenor-Defendants' Motions to Dismiss** |

## <u>INTRODUCTION</u>

Plaintiffs have filed a motion seeking leave to file a Third Amended Complaint, which, if granted, would moot Defendants' and Intervenor-Defendants' Motions to Dismiss Plaintiffs' claims with respect to missing signatures, as well as implicate Plaintiffs' claims with respect to signature matching.  *See* Dkts. 79, 80; *see also Sennott v. Adams*, No. 6:13-cv-02813-GRA, 2014 WL 2434745 at *3 (D.S.C. May 29, 2014) (citing *Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001)).  Nevertheless, because this Court has not yet granted leave for Plaintiffs to file the Third Amended Complaint, Plaintiffs also submit this consolidated Opposition to Defendants' and Intervenor-Defendants' Motions to Dismiss the Second Amended Complaint to address Defendants' arguments with respect to their signature matching claims.

Defendants' arguments that Plaintiffs' signature-matching claims should be dismissed because the Eleventh Amendment deprives the Court of jurisdiction is fundamentally flawed.  Because Plaintiffs' claims are predicated on violations of federal law and are based on the U.S. Constitution,  the *Ex parte Young* exception to the Eleventh Amendment applies, and Defendants' reliance on *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984), is inapposite.

Defendants' and Intervenor-Defendants' argument that there is allegedly no "case or controversy" is equally unavailing, and attempts to sidestep the uncontested fact that when Plaintiffs commenced this litigation, counties across South Carolina were engaging in signature matching.  They were doing so haphazardly, without any consistent procedural protections or oversight.  And they were doing so without intervention from Defendants, despite Defendants' statutory mandate to ensure compliance by county elections officials with federal and state law.  Further, contrary to Defendants' and Intervenor-Defendants' argument, Plaintiffs do not agree that State law clearly prohibits signature matching, and even if it did, the threat of state officials acting *ultra vires* to federal law by instituting unconstitutional signature matching procedures would bring this case within this Court's jurisdiction.

Finally, the Intervenor-Defendants' argument that Plaintiffs' request for notice-and-cure procedures presents a non-justiciable political question is waived with respect to Plaintiffs' signature matching claim.  Even if that argument was squarely presented, however, it fails because Plaintiffs have only sought the application of already-

2

established State procedures to a narrow set of circumstances to ensure that State practice is in line with federal law.

For these reasons, Defendants' and Intervenor-Defendants' Motions to Dismiss should be denied in their entirety.

## **LEGAL STANDARD**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), "where the sufficiency of the jurisdictional allegations in the complaint is challenged facially, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Columbia Ins. Co. v. Reynolds*, No. 2:18-cv-2975-RMG, 2019 WL 3718477, at *2 n.4 (D.S.C. Aug. 7, 2019) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (noting that, where the defendant contends that the complaint fails to allege facts upon which subject matter jurisdiction can be based, as is the case here, "the plaintiff, in effect, is afforded the same procedural protection as he would received under a Rule 12(b)(6) consideration" (internal citations omitted)). On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "the Court must accept the facts in a light most favorable to the non-moving party," though "it 'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Id.* at *2 (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). "To survive a motion to dismiss, the complaint must state 'enough facts to state a claim to relief that is

plausible on its face.'" *Id.* at \*3 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

### I.       Plaintiffs are Voluntarily Dismissing Their Claims Based on Missing Signature

Plaintiffs have filed a motion for leave to amend their complaint to drop claims based on missing signatures. (ECF # 8)  Should leave to amend be granted, Defendants' argument that Plaintiffs' claims regarding missing signatures should be dismissed would be moot.  Plaintiffs request the Court to hold the  Motions to Dismiss in abeyance until the Motion to Amend has been resolved.

### II.      The Claims Based on Signature Matching Should Not Be Dismissed[1]

#### A.       The relief sought is not barred by the Eleventh Amendment

Defendants' argument that Plaintiffs "ask this Court to enjoin State officials to follow State law," Dkt. 79 at 3, is premised upon a fundamental misunderstanding of Plaintiffs' amended complaint.  Relying on *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), Defendants argue the Court has no power to order the relief sought by Plaintiffs.  *See* Dkt. 79 at 3-4.  Defendants misconstrue *Pennhurst*, which is inapplicable here.

---

[1]       Defendants have filed a partial appeal of the Court's October 27, 2020 order (Dkt. No. 72) which raised arguments that are substantially similar to those raised in the instant motion.  *See* Dkt. No. 74.  To the extent guidance from the Fourth Circuit would aid the Court in deciding Defendants' motion, principles of judicial economy counsel in favor of holding this motion in abeyance pending resolution of Defendants' appeal.

4

In *Pennhurst*, the Supreme Court confined its analysis to the question of "whether the claim that petitioners violated *state law* in carrying out their official duties . . . is one against the State and therefore barred by the Eleventh Amendment." 465 U.S. at 103 (emphasis in original). Specifically, the Supreme Court found that the court of appeals erred because it "upheld the judgment of the District Court *solely* on the basis of" the court of appeals' interpretation of a *Pennsylvania statute*. *Id*. at 124-25 (emphasis added). However, the Supreme Court also noted that the court of appeals, on remand, nonetheless may uphold the district court's decision on the basis of its assessment of federal law. *Id*. at 125. Cases finding an application of *Pennhurst* rest on similar grounds. *See*, *e.g.*, *LaRouche v. Sheehan*, 591 F. Supp. 917, 919 (D. Md. 1984); *Democracy N.C. v. N.C. State Bd. of Elections*, No. 1:20-cv-457, 2020 WL 6383222, at *7 (M.D.N.C. Oct. 30, 2020) (holding "this court's authority to address the type and manner of a 'cure' under state law, by state actors, is limited by the absence of any federal claim related to that issue in this case"); *Boger v. Johnson*, No. 7:10-cv-00194, 2010 WL 5174364, at *6 & n.6 (W.D. Va. Dec. 15, 2010).

Here, Plaintiffs' claims are based on federal constitutional issues, as the Court properly noted. *See* Dkt. 72 at 19–21. Such claims do not raise concerns under *Pennhurst*. *See*, *e.g.*, *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255 n. 7 (3d Cir. 1994) ("*Pennhurst II* did not address the Eleventh Amendment's bar of suits against state officials in federal court when the claims are based on deprivation of federal constitutional or statutory right"); *Assured Guaranty Corp. v. Garcia-Padilla*, 214 F. Supp. 3d 117, 124 (D.P.R. 2016); *Ctr. for Disease Det., LLC v. Rullan*, 288 F. Supp. 2d

136, 142 (D.P.R. 2003) (characterizing the case, which required the court to "ascertain what state law means" but which raised constitutional issues, as "a far cry from a prohibited *Pennhurst*-type action which seeks injunctive relief on the basis of state law") (quoting *Coal. of N.J. Sportsmen v. Whitman*, 44 F. Supp. 2d 666, 672 (D.N.J. 1999)); *Nielsen v. Desantis*, No. 4:20-cv-0236-RH, 2020 WL 6548462 at *1 (N.D. Fla. June 10, 2020) (finding that "intervenors assert claims under federal law, not state law, so *Pennhurst* does not bar the claims").

Even if State law did bar signature matching, *Pennhurst* does not restrict federal courts from enjoining violations of federal law that also violate State law. *See Benjamin v. Malcolm*, 803 F.2d 46, 51 (2d Cir. 1986) ("[I]f the plaintiffs in the present action had joined the State officials as defendants, alleging as an independent basis of jurisdiction that the State officials had contributed to the constitutionally impermissible conditions at the City's HDM, the Eleventh Amendment would not bar the issuance of injunctive relief against them even though their conduct would also violate state law").

Defendants' reliance on *Bragg v. West Virginia Coal Association*, 248 F.3d 275 (4th Cir. 2001), is thus misplaced. In *Bragg*, the alleged violation of federal law at issue was dependent on the question of whether the state complied with parallel West Virginia law and its own regulations. *Bragg*, 248 F.3d at 290, 295-96 (holding that any violation of minimum standards "involves State law, not federal law," and that "any injunction against State officials . . . would command them to comport with the State's own law, not federal law, because only the State law is operative and directly regulates the issuance of permits"). Unlike the state action in *Bragg*, the state action at issue here—the use of

signature matching without notice and cure procedures—violates federal law regardless of whether it is permissible under state law.  *Cf. id.* at 292–93.

Defendants' interpretation stretches *Pennhurst* well beyond its limits, encroaching upon the Supreme Court's well-established *Ex parte Young* jurisprudence, and would threaten federal courts' ability to enforce the U.S. Constitution by allowing state defendants to use ambiguous sections of state law as an inviolable shield when threatened with liability for clear federal constitutional violations.  *See Pennhurst*, 465 U.S. at 105 (observing that the *Young* doctrine is "necessary to permit the federal courts to indicate federal rights and hold state official responsible to 'the supreme authority of the United States'") (quoting *Ex parte Young*, 209 U.S. 123, 160 (1908)).

Since Plaintiffs' claims are based on federal, not state law, *Pennhurst* is inapplicable.  The *Ex parte Young* exception to sovereign immunity therefore applies.

**B.      The Court has jurisdiction over this action**

As *Pennhurst* itself demonstrates, the fact that a state action may also violate state law does not deprive the court of its authority to decide violations of federal law. However, Defendants also incorrectly argue that Plaintiffs "alleged that [South Carolina] State law does not allow for signature matching."  Dkt. 79 at 2 (citing Dkt. 53 at 2).  In fact, Plaintiffs do not agree that the South Carolina law prohibits county election officials from conducting signature matching—as evidenced by the fact that, until recently, at least ten counties interpreted it as permitted, without intervention from Defendants.

7

State law provides that, beginning the day before Election Day, election officials "may begin the process of examining the return-addressed envelopes . . . making certain that each oath has been *properly signed*," S.C. Code Ann. § 7-15-420(B) (emphasis added), and that "[a] ballot may not be counted unless the oath is *properly signed . . . .*" *Id.* (emphasis added). Further, South Carolina law provides that "[t]he county board of voter registration and elections . . . is responsible for the tabulation and reporting of absentee ballots," thereby conferring broad authority upon county officials to exercise discretion in executing the review process absent guidance. *Id.* § 7-15-420(A). Thus, while it raises federal constitutional concerns, matching signatures on the voter oath is at least arguably consistent with election officials' responsibility under S.C. Code Ann. § 7-15-420(B) to "examin[e]" envelopes and "mak[e] certain that each oath has been properly signed" by the voter. *Id.* § 7-15-420(B).

The undisputed fact is that at least ten counties in South Carolina appear to have construed the law as granting them the authority to undertake signature matching. *See* Dkt. 72 at 15–16. And until the onset of this litigation, Defendants offered no guidance or instruction to the contrary, despite their statutory mandate to "ensure [county] boards' compliance with the requirements with [*sic*] applicable state or federal law." *See* S.C. Code Ann. § 7-3-20(C)(1)–(2). In this context, there was nothing preempting county officials from interpreting § 7-15-420(B)'s "properly signed" requirement as they did.

Defendants' reliance on *Alvarez v. Smith*, 558 U.S. 87, 92 (2009), for the proposition that "[t]here is no case or controversy when the parties agree on what the law is [*sic*] requires," Dkt. 79 at 3, is misplaced. In that case, the Supreme Court found that

8

there was no case or controversy where all disputes regarding the disposition and ownership of seized assets had been settled, rendering the relief sought—return of property—moot.   By contrast, Defendants' actions here, in particular, Defendant Andino's October 26 Directive, do not moot the case under clear Fourth Circuit precedent, which confirms the common-sense principle that a state agency cannot moot a constitutional case by changing its policy on the eve of an anticipated adverse judgment. *See 6th Cong. Dist. Republican Comm. v. Alcorn*, 913 F.3d 393 (4th Cir. 2019) (holding that while election officials' action to update challenged forms during the pendency of litigation "may well have been the right thing to do in accordance with state law . . . such backpedaling will rarely serve to moot a case in federal court." (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 189–94 (2000))).  The Fourth Circuit held in *Alcorn* that "mootness doctrine ordinarily does not extend to situations where a party quits its offending conduct partway through litigation" because "'a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior.'"  *Id*. (quoting *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017)).

Further, since it is not a regulation promulgated subject to the procedures and protections of the South Carolina Administrative Procedures Act, the Directive may be withdrawn or amended at any time without notice to the public.  *See* S.C. Code Ann. § 7-15-10 (referencing *id*. § 1-23-110).  The Fourth Circuit has concluded that retaining the authority to rescind or alter the state action renders dismissal on mootness inappropriate. *See Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014) (holding that "when a defendant

9

retains the authority and capacity to repeat an alleged harm, a plaintiff's claims should not be dismissed as moot. . . . Nothing in the memo suggests that VDOC is actually barred—or even considers itself barred—from reinstating the 2010 Ramadan policy should it so choose.") (internal citations omitted); *see also Nat'l Fed'n of the Blind, Inc. v. Lamone*, 438 F. Supp. 3d 510, 522 (D. Md. 2020); *N.C. Right to Life Political Action Comm. v. Leake*, 872 F. Supp. 2d 466, 471 (E.D.N.C. 2012).

### C.    Notice and cure for signature matching does not pose a non-justiciable political question

Intervenor-Defendants do not appear to raise their political question argument in the context of signature matching, only missing signature, and thus have apparently waived that argument.  *See* Dkt. 80 at 3; *see also United States v. Lewis*, 235 F.3d 215, 218 n.3 (4th Cir. 2000) ("This court has held that 'an issue first argued in a reply brief is not properly before a court of appeals'" (quoting *Cavallo v. Star Enter.*, 100 F.3d 1150 n.2 (4th Cir. 1996))); *Funderburg v. S.C. Elec. & Gas Co.*, 395 F. Supp. 3d 695, 707 n.7 (D.S.C. 2019) ("To the extent that CSX possibly challenges Mr. Cometto's qualifications as a "metallurgist" . . . CSX has waived that argument because it was not included within the instant Motion, but within their reply brief.").

However, to the extent the Court considers this argument as applied to signature matching, this argument fails.  In the circumstances of this case, the haphazard and inconsistent signature matching without procedural protections or any opportunity for notice and cure violates the United States Constitution.  While the authority to establish election procedures may "belong [ ] exclusively to the General Assembly," Dkt. 80 at 4,

10

the authority to determine whether such election procedures, once established, violate the U.S. Constitution belongs to the Court. *See Marbury v. Madison*, 5 U.S. 137, 178 (1803) (resolving conflicts between statutory law and the Constitution is the "very essence of judicial duty."). The Supreme Court has, time and time again, analyzed the justiciable question of whether state election laws violate the Constitution. *See Burdick v. Takushi*, 504 U.S. 428, 433–34 (1992) (conducting an "inquiry into the propriety of a state election law" and collecting prior Supreme Court cases applying the Constitution to election laws). No court is bound to apply unconstitutional election procedures adopted by a State General Assembly.

While Defendants rely on partisan gerrymandering redistricting cases to argue this case is not justiciable, these cases are inapplicable. While the Framers may have concluded that a "jurisdiction may engage in constitutional political gerrymandering" through redistricting plans, *Rucho v. Common Cause*, 139 S. Ct. 2484, 2497 (2019), that does not permit States to violate the Constitution. *See generally*, *e.g.*, *Baker v. Carr*, 369 U.S. 186, 217-34 (1962) (rejecting political question defense in an apportionment case). This principle applies to violations of the fundamental right to vote through election procedures like those at issue in this case.

Outside of the unique political circumstances present in the partisan gerrymandering context, courts routinely apply the *Anderson-Burdick* framework to state election laws because it is a judicially manageable standard. *See Middleton v. Andino*, No. 3:20-CV-01730-JMC, 2020 WL 5591590, at *24 (D.S.C. Sept. 18, 2020) (finding claim justiciable because plaintiffs "moor[ed] their claims to constitutional standards"),

11

*stayed on other grounds*, No. 20A55, 2020 WL 5887393 (U.S. Oct. 5, 2020); *Democracy N.C. v. N.C. State Bd. of Elections*, No. 1:20-cv-457, 2020 WL 4484063 at *21–22 (M.D.N.C. Aug. 4, 2020) (similar); *Texas Democratic Party v. Abbott*, 978 F.3d 168, 182 (5th Cir. 2020) (holding that whether a state election law on absentee voting violated the Constitution was "a question susceptible to judicial resolution without interfering with the political branches" because the courts analysis "will not focus on policy determinations from Texas's executive and legislative officials."); *Harding v. Edwards*, No. 20-cv-495-SDD-RLB, 2020 WL 5371350 at *3 (M.D. La. Sept. 7, 2020) (finding election law claims justiciable and observing that "the Court hardly lacks jurisdiction to assess the constitutionality of the state's voting scheme simply because the scheme arises out of the political process").

Against the weight of this authority, Intervenor-Defendants' reliance on *Coalition for Good Governance v. Raffensperger* is misplaced. *See generally* No. 1:20-cv-1677-TCB, 2020 WL 2509092 (N.D. Ga. May 14, 2020). The *Raffensperger* plaintiffs sought a broad re-engineering of Georgia's 2020 primary election due to the COVID-19 pandemic. *See id.* at *1–3 (plaintiffs sought "postponement of the [June primary] election until June 30, along with myriad other changes to the voting process," including requiring use of paper ballots rather than electronic voting machines, due to public health and safety reasons but court cannot determine "how early is too early to hold the election or how many safety measures are enough"). The court also distinguished that case from those—like Plaintiffs' here—involving "a burden on the right to vote that was created by the Government." *Id.* at *3, n.2. The Fifth Circuit has similarly characterized the

plaintiffs in *Raffensperger* as challenging "the *wisdom* of Georgia's policy choices," including "whether to use electronic voting machines or paper ballots," rather than raising substantive constitutional issues. *See Texas Democratic Party v. Abbott*, 961 F.3d 389, 398 (5th Cir. 2020). Here, however, Plaintiffs are not challenging the manner of the process by which voters cast their ballots, or the date of the election; rather, Plaintiffs simply seek the application of a narrowly tailored and straightforward notice-and-cure process that the State already uses for other types of ballot deficiencies. This presents a justiciable legal question regarding the constitutionality of South Carolina's scheme for addressing signature-related deficiencies. This Court should, and indeed must, adjudicate Plaintiffs' remaining claims.

## CONCLUSION

The Court should deny Defendants' Motion to Dismiss (Dkt. 79) and Intervenor-Defendants' Motion to Dismiss (Dkt. 80).

Dated: December 21, 2020          Respectfully submitted,

    s/ Susan K. Dunn

Julianne J. Marley              Susan K. Dunn (Fed. Bar #647)
Rhianna Hoover                  sdunn@aclusc.org
DEBEVOISE & PLIMPTON LLP        Shirene C. Hansotia (Fed. Bar #12558)
919 Third Avenue                shansotia@aclusc.org
New York, NY 10022              AMERICAN CIVIL LIBERTIES UNION
(212) 909-6000                  FOUNDATION OF SOUTH CAROLINA
                                P.O. Box 20998
*Of Counsel for Plaintiffs*     Charleston, South Carolina 29413-0998
                                Telephone: (843) 282-7953
                                Facsimile: (843) 720-1428

Ezra Rosenberg*
erosenberg@lawyerscommittee.org
John Powers (admitted *pro hac vice*)
jpowers@lawyerscommittee.org
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
Phone: (202) 662-8389
Fax: (202) 783-0857

Catherine Amirfar (admitted *pro hac vice*)
camirfar@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000

Tara Ganapathy (admitted *pro hac vice*)
tganapathy@debevoise.com
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue NW
Washington, DC 20004
202-383-8000

\**pro hac vice motion forthcomin*g

*Counsel for Plaintiffs*

14