UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| League of Women Voters, *et al.*,<br><br>        Plaintiff,<br><br>    v.<br><br>Marci Andino, *et al.*,<br><br>        Defendants. | No.: 2:20-cv-03537-RMG<br><br><br>**Defendants' Brief Pursuant to<br>April 6, 2021 Order (ECF 95)** |

Defendants Marci Andino, John Wells, JoAnne Day, Clifford J. Edler, Linda McCall, Scott Moseley, and Howard Knapp ("Election Defendants"), all of whom have been sued in their official capacities with the State Election Commission, and Intervenor-Defendants Speaker James H. Lucas and Senate President Harvey Peeler submit this brief in response to the Court's April 6, 2021 Order (ECF 95), and, pursuant to the Court's direction, address whether a preliminary injunction should be issued based only on the facts as they existed on October 26, 2020 after the Commission's executive director issued Directive 2020-001.

## **Introduction**

The Court's Order from October 27, 2020 (ECF 72) explained why Plaintiffs' claims regarding missing signatures lack merit, and Plaintiffs have indicated that they have no interest in pursuing those claims (ECF 84), so this brief focuses only on the signature-matching claims and only on the two elements of the preliminary-injunction test identified by the Fourth Circuit that should be reconsidered on remand.

Plaintiffs' signature-matching claims are likely to prevail only if signature matching is actually happening. It is not now. The Directive clarifies any confusion at the county-board level over whether signature matching is permitted: It is not. And there is nothing to suggest that county election officials will not comply with the Directive. In fact, the law presumes otherwise. Therefore, no absentee ballots will be rejected based on signature matching, so Plaintiffs cannot prevail on their motion for a preliminary injunction.

## Legal Standard

When plaintiffs seek a preliminary injunction or a temporary restraining order, they must satisfy each of four elements: "(1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 595 (4th Cir. 2013). This type of preliminary relief is "an extraordinary remedy." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

## Argument

**I.     Plaintiffs are not likely to prevail on the merits.**

**A.     State law does not permit signature matching.**

When they first filed this lawsuit, Plaintiffs alleged that South Carolina law did not permit signature matching. *See* ECF 53 at 2. Now, their position has morphed into South Carolina law does not require signature matching, *see* ECF 84-1 at 2, or,

as they put it in the Fourth Circuit, does not prohibit signature matching, *see* Br. 14 (4th Cir. ECF 47).

Actually, when the rules of statutory construction are applied, South Carolina law is unambiguous: Signature matching is not allowed. In South Carolina, agencies (such as county boards) "have only the authority granted them by the legislature." *Responsible Econ. Dev. v. S.C. Dep't of Health & Envtl. Control*, 371 S.C. 547, 553, 641 S.E.2d 425, 428 (2007). Agencies do not, as Plaintiffs' position assumes, have any authority not expressly denied to them.[1] Not only is this true as a general proposition of South Carolina law, but it is especially true in the context of elections: The South Carolina Constitution gives the General Assembly alone the authority to establish State law on that issue. *See* S.C. Const. art. II, § 10. Nothing in section 7-15-420 (nor anywhere else in Title 7 of the South Carolina Code) gives county boards the authority to match signatures for absentee ballots.

Further confirming this, when a legislature uses "particular language in one section of a statute but omits it in another," the legislature is presumed to have "act[ed] intentionally and purposely." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993); *see also Doe v. Marion*, 373 S.C. 390, 397–98, 645 S.E.2d 245, 249 (2007) (applying this rule). In South Carolina, when determining whether a candidate has obtained sufficient signatures to be nominated by petition, those signatures "must be

---

[1] To the contrary, the S.C. Constitution is a limitation on the authority of the General Assembly. Thus, the General Assembly, unlike counties, has all authority, unless expressly limited by the Constitution. *See Knight v. Salisbury*, 262 S.C. 565, 570, 206 S.E.2d 875, 876–77 (1974).

checked for validity by the respective county board of voter registration and elections against the signatures of the voters on the original applications for registration on file in the board office." S.C. Code Ann. § 7-11-85. Thus, when the General Assembly wanted to require signature matching, it knew how to do so. The General Assembly did not adopt a similar signature-matching requirement for absentee ballots. *See* S.C. Code Ann. § 7-15-420.

### B. The Commission does not instruct county boards to match signatures.

Andino has testified that she is aware of no "statutes, regulations, rules, handbooks, memoranda, or other documents regarding standards for 'signature-matching procedures.'" ECF 58 at 3. Indeed, in her 17 years as executive director, the Commission "has not published or provided to County Boards any materials regarding 'signature-matching procedures'" for absentee ballots. ECF 58 at 3.

Consistent with Andino's testimony, the Commission's current handbook provides no instructions to match signatures on absentee ballots when they are returned. *See* ECF 48-1 at 70–71. By contrast (and consistent with section 7-11-85), the handbook does instruct county boards to match signatures—and tells them how to do so—when reviewing signatures collected by petition candidate. *See* ECF 48-1 at 92–93.

### C. The Court must presume county boards will comply with the directive not to match signatures.

Some county boards were confused about signature matching for absentee ballots, as the survey showed. *See* ECF 66-1. Within hours of having those survey

4

results, Andino issued Directive No. 2020-001 on October 26, 2020. The Directive ordered any county board that was matching signatures on absentee ballots to "stop doing so immediately" and to count any absentee ballots that had been rejected on that basis. ECF 71-1. The Directive therefore clears up any confusion among county boards about whether state law permits signature matching.[2]

With no more possible confusion as of October 26, there is no reason to believe any signature matching will happen. The law is clear: Courts must presume that public officials will act in good faith and perform their duties as the law requires. *See, e.g., S.C. Nat'l Bank v. Florence Sporting Goods, Inc.*, 241 S.C. 110, 115–16, 127 S.E.2d 199, 202 (1962) ("In the absence of any proof to the contrary, public officers are presumed to have properly discharged the duties of their offices and to have faithfully performed the duties with which they are charged."); *Howell v. Littlefield*, 211 S.C. 462, 468, 46 S.E.2d 47, 49 (1947) ("The presumption is always in favor of the correct performance of his duty by an officer . . . . The presumption is that no official person, acting under oath of office, will do aught which is against his official duty to do, or will omit aught which his official duty requires to be done." (internal quotation mark and citation omitted)). In other words, the presumption is that county boards will comply with the Directive and not match signatures.

---

[2] Even if state law were ambiguous, deference must be given to the Commission's interpretation of section 7-15-420, so signature matching is still not permitted. *See Kiawah Dev. Partners, II v. S.C. Dep't of Health & Envtl. Control*, 411 S.C. 16, 33, 766 S.E.2d 707, 717 (2014).

And with that presumption, Plaintiffs are not likely—in fact, they are *un*likely—to prevail on the merits. Their claims could succeed only if county boards matched signatures. If no county board is going to do that, then Plaintiffs claims will fail.

## II.     Plaintiffs cannot prove any irreparable harm.

For the same reason they are not likely to prevail on the merits, Plaintiffs cannot show any threat of irreparable harm. The only conceivable harm would be not having their absentee ballots counted based on signature matching. But for at least two reasons, they will not suffer that harm.

First, as just discussed in Part I, no county board will be matching signatures in light of the Directive and the fact that the General Assembly has not authorized signature matching with respect to absentee ballots.

Second, it is unclear if any Plaintiff is going to vote in any election during the pendency of this litigation. As for the November 2020 General Election, the law presumes county election officials complied with the Directive, and there is nothing in the record that any absentee ballot was rejected for signature matching in that election. As for elections that follow that one, although there are many elections across South Carolina in 2021, they are local elections only (such as city council or school boards). *See* 2021 Election Calendar, S.C. Election Commission, https://tinyurl.com/ydsvyc9y. The next statewide elections are the 2022 June primaries. The League of Women Voters says it has 1,288 members in South Carolina, but it never alleges where any of those members live. *See* ECF 53 at 4–5. It

6

therefore has not established that any member lives in a town or county holding an election this year. (Recall Plaintiffs bear the burden on their preliminary injunction motion.) Same thing with The Family Unit. *See* ECF 53 at 5–6. As for the individual Plaintiffs, Albertus Clea alleges he lives in Sumter County, but there is no Sumter County election this year, and there is no allegation he lives in the one town (Mayesville) that has an election in 2021. *See* ECF 53 at 6–7. Similarly, George Hopkins lives in Charleston County, but there is no 2021 countywide election, and Hopkins does not allege he lives in any municipality that is holding an election. *See* ECF 53 at 7.

## Conclusion

Viewing only on the facts as they existed on October 26, 2020 after the Directive was issued, this Court should conclude that the preliminary injunction should be vacated, and the motion for a preliminary injunction should be denied.

Respectfully Submitted,

s/Wm. Grayson Lambert
Wm. Grayson Lambert
Fed. ID No. 11761
M. Elizabeth Crum
Fed. ID No. 372
Jane W. Trinkley
Fed. ID No. 4143
BURR & FORMAN LLP
Post Office Box 11390
Columbia, SC 29211
(803) 799-9800

*Counsel for Election Defendants*

Susan P. McWilliams
smcwilliams@nexsenpruet.com
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, SC 29201
(803) 253-8221

*Counsel for Speaker of the House of
Representatives James H. Lucas*

M. Todd Carroll
Kevin A. Hall
todd.carroll@wbd-us.com
kevin.hall@wbd-us.com
WOMBLE BOND DICKINSON (US)
LLP
1221 Main Street, Suite 16
Columbia, SC 29201
(803) 454-6504

*Counsel for Senate President Harvey
Peeler*

8